IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WELLPATH, LLC,** *et al*. | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| | : | NO. 20-4885 |
| **v.** | : | |
| | : | |
| **EVANSTON INSURANCE COMPANY** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                           AUGUST 30, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

      This is a civil action for declaratory judgment, breach of contract, breach of the duty of good faith and fair dealing, and bad faith under 42 Pa. Cons. Stat. Ann. § 8371, based on allegations, *inter alia*, of wrongful denials of insurance coverage. [ECF 1].

      Before this Court is a motion filed by Defendant Evanston Insurance Company ("Defendant") to *dismiss pursuant to Federal Rule of Civil Procedure 12(6)(b) and/or to transfer venue* to the United States District Court for the Middle District of Tennessee on the basis of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a).[1] [ECF 5]. Plaintiffs oppose the motion. [ECF 10]. The issues raised in the motion have been fully briefed and are ripe for disposition.[2] For the reasons set forth herein, Defendant's motion to transfer venue is granted.

---

[1] In the underlying motion, Defendant seeks dismissal of some of Plaintiffs' claims on various grounds. Because this Court concludes that this matter is more conveniently and appropriately litigated in the Middle District of Tennessee, this Court will leave the merits of Defendant's motion to dismiss for that Court.

[2] In adjudicating Defendant's motion to transfer, this Court has also considered Defendant's reply, [ECF 11], and Plaintiffs' sur-reply, [ECF 14].

**BACKGROUND**[3]

Plaintiffs consist of six (6) related entities that provide private probation services under contracts with local municipalities and/or private healthcare services under contracts with state and local governmental agencies that operate correctional facilities. All six entities were incorporated in the State of Delaware. Five of the six entities maintain their principal places of business in Nashville, Tennessee. The sixth entity, Plaintiff JCS, was previously wholly owned by Plaintiff CHC Companies which maintains its principal place of business in Nashville, Tennessee. Plaintiff JCS maintains its principal place of business in Florida. As such, none of the Plaintiffs is incorporated in or maintains a principal place of business in Pennsylvania.

Defendant is an insurance company incorporated in and maintaining its principal place of business in Illinois.

Plaintiffs are each either a policyholder or insured under one or more of six general and/or professional liability insurance policies issued by Defendant. The four most recent insurance policies were negotiated in Nashville, Tennessee, where Plaintiffs are located. The other two polices were issued to the named insured (Plaintiff Correctional Healthcare Holding Company, Inc.) at a former business address in Colorado.

As noted, in their complaint, Plaintiffs assert claims for, *inter alia*, breach of contract and bad faith against Defendant premised on Defendant's denial of coverage for numerous underlying lawsuits filed against Plaintiffs, which fall into two categories: Medical Cases and JCS Probation Cases. The Medical Cases were all filed in federal courts in Pennsylvania and involved allegations of negligent medical treatment of individuals at correctional facilities. The JCS Probation Cases

---

[3] The facts set forth herein are taken from Plaintiffs' complaint and the declarations, and from other evidence submitted with each party's respective briefs.

were filed in various state and federal courts in Alabama and Georgia and involved allegations of false arrest, abuse of process, and constitutional violations related to probation-related services Plaintiffs provided to municipalities and courts.

Defendant filed the underlying motion to transfer venue pursuant to 28 U.S.C. § 1404(a) for *forum non conveniens*, in the alternative, arguing that venue is more convenient and appropriate in the Middle District of Tennessee, where Plaintiffs reside. This Court agrees.

**LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of transferring venue under § 1404(a) "is to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In determining whether transfer is appropriate, "the district court is vested with wide discretion." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).

The analysis of a request for transfer under § 1404(a) generally has two components. First, both the original venue and the requested venue must be proper. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). As such, venue is proper "(1) where the defendant resides, (2) where a substantial part of the events giving rise to the claim occurred, or (3) where personal jurisdiction may be had over any defendant if no other venue is proper." *Park Inn Intern., LLC v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 375 (D.N.J. 2000) (summarizing the statutory venue requirements of 28 U.S.C. § 1391(a)). If venue is proper, the court must then undertake a balancing test to decide whether the convenience of the parties and witnesses and the interest of justice would

be better served by a transfer to a different forum. *Jumara*, 55 F.3d at 879; *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197 (E.D. Pa. 2008). Although there is no definitive formula or specific list of the factors to consider, when determining whether a transfer is warranted, a court weighs existing relevant private and public interests in its decision process. These interests are the following:

> The private interests include[]: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests include[]: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted).

The party seeking the transfer of venue bears the burden of establishing the need for the transfer. *Id.* at 879.[4] "Transfer is not warranted, however, if the result is merely to shift the inconvenience from one party to the other." *DermaMed, Inc. v. Spa de Soleil, Inc.*, 152 F. Supp. 2d 780, 783 (E.D. Pa. 2001). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" *Penn Mut. Life Ins. Co. v.*

---

[4] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." *Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).

*BNC Nat. Bank*, 2010 WL 3489386, at *8 (E.D. Pa. Sept. 2, 2010) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

**DISCUSSION**

As noted, Defendant seeks transfer of this matter to the Middle District of Tennessee pursuant to the *forum non conveniens* provision of 28 U.S.C. § 1404(a). Specifically, Defendant contends that the "complaint seeks coverage under Tennessee-governed insurance policies issued to Tennessee-based Plaintiff, whose principal place of business is within minutes of the Middle District courthouse. The majority of events or omissions giving rise to Plaintiffs' claims arose in the Middle District of Tennessee."

As to the threshold inquiries required under § 1404(a), this Court finds that venue is proper in this District because Defendant has effectively waived any argument that venue in this District is improper.[5] Nevertheless, this matter could have been brought in the Middle District of Tennessee, since "a substantial part of the events or omissions giving rise to the claim occurred" in Nashville, Tennessee, which is located in the Middle District of Tennessee. 28 U.S.C. § 1391(b)(2). Notably, in their response, Plaintiffs do not dispute that this case could have been brought in the Middle District of Tennessee. Plaintiffs' claims against Defendant in this case arise out of injuries Plaintiffs suffered in Nashville, Tennessee, as a result of Defendant's handling of Plaintiffs' insurance claims under insurance policies negotiated in and delivered to Plaintiffs and

---

[5] Improper venue is a waivable defense. Fed. R. Civ. P. 12(h). To preserve a challenge regarding improper venue, a defendant must raise the issue in a responsive pleading. *Id*. at 12(b)(3). If the responsive pleading does not challenge improper venue, the defense is waived. *Id*. at 12(h). Further, where a defendant does not "interpose timely and sufficient objection to the venue," the district court retains jurisdiction, even if the venue would otherwise be improper. 28 U.S.C. § 1406(b). Here, though Defendant filed a Rule 12 motion, it has not moved to dismiss this matter for improper venue pursuant to Rule 12(b)(3). Instead, Defendant filed the underlying motion to transfer venue pursuant to § 1404(a) for *forum non conveniens*, in which it properly outlines the legal prerequisite that venue be proper in the original forum. Under these circumstances, this Court finds that Defendant has waived improper venue, thereby, making venue as to Defendant in this District proper. *See Farley v. Cernak*, 2016 WL 162238, at *2–3 (E.D. Pa. Jan. 13, 2016).

premiums paid in Nashville, Tennessee. *See Cincinnati Ins. Co. v. Jerry Ellis Const.*, 2016 WL 3211991, at *5 (W.D. Pa. June 9, 2016) ("[I]t is well settled that '[a]n insurance contract is made in the state where it is delivered.'") (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d Cir. 2007)). As such, because "a substantial part of the events or omissions giving rise to [Plaintiffs'] claims occurred" in the Middle District of Tennessee, venue is also proper in that District.

Having made this initial determination that venue is proper in both districts, this Court will consider all relevant *Jumara* private and public factors to determine whether the convenience of the parties and witnesses, and the interest of justice weigh in favor of transfer.

## PRIVATE FACTORS

As indicated, the *Jumara* private factors include the plaintiff's forum preference as manifested in the original choice; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

### *Plaintiffs' Choice of Forum*

Although a plaintiff's choice of venue is generally given deference, the plaintiff's choice is not dispositive and receives less weight when none of the operative facts occurred in the selected forum. *Coppola*, 250 F.R.D. at 197–98; *Rowles v. Hammermill Paper Co., Inc.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988) (holding that "plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum"). When "the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with

the interests in efficiency and convenience, other private interests are afforded less weight." *Cancer Genetics, Inc. v. Kreatech Biotechnology B.V.*, 2007 WL 4365328, at *5 (D.N.J. Dec. 11, 2007). A plaintiff's forum choice also receives "considerably less weight" where "the plaintiff chooses a forum which is not his home." *Siegel v. Homestore, Inc.*, 255 F. Supp. 2d 451, 456 (E.D. Pa. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

Here, the Eastern District of Pennsylvania is not Plaintiffs' home forum; rather, Plaintiffs maintain their principal places of business in Nashville, Tennessee, which is located in the Middle District of Tennessee. In addition, the operative facts relevant to Plaintiffs' insurance coverage-based claims against Defendant occurred in Nashville, Tennessee. Plaintiffs argue, however, that this Court should consider the location of some of the underlying litigation against them to deny transfer. Plaintiffs' argument is misplaced. This action concerns coverage under the insurance policies and Defendant's handling of the claims made by Plaintiffs under those policies. Those policies were negotiated and delivered to Plaintiffs in Nashville, Tennessee. Defendant's communications with respect to those policies, on which Plaintiffs' claims are at least partially based, were delivered to Plaintiffs in Nashville, Tennessee. The harm alleged by Plaintiffs attributable to Defendant's handling of their insurance claims was felt by Plaintiffs in Nashville, Tennessee. The facts underlying the various lawsuits against Plaintiffs (other than as alleged in the underlying complaints) are largely irrelevant to *this insurance coverage action*. *See, e.g.*, *Axis Specialty Ins. Co. v. Brickman Grp. Ltd., LLC*, 2010 WL 376784, at *6 (E.D. Pa. Jan. 28, 2010) (finding private-interest factors weighed against transfer to New Jersey, even though the underlying action was pending in New jersey, and "Axis paid the [underlying] settlement in New Jersey," because the action was "not about the settlement agreement in the [underlying] action; it [was] about the Axis insurance policy that provided excess insurance coverage to fund a portion

7

of the settlement," and "the insurance policy was delivered to Brickman in Langhorne, Pennsylvania"); *State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.*, 2018 WL 3995956, at *4 (E.D. Pa. Aug. 21, 2018) (concluding insurance coverage action arose in Pennsylvania, where policy was "issued and delivered to" insured, and not in New Jersey where insured's work and underlying action were located).

Since this forum does not have any connection with the operative facts of this lawsuit, and Plaintiffs do not reside in this District, Plaintiffs' choice of venue in this District is not afforded the usual strong preference or weight. *Id.* at 457; *see also Koken v. Lexington Ins. Co.*, 2004 WL 2473432, at *4 (E.D. Pa. Nov. 2, 2004) (finding that where "the policy was negotiated in New York . . . [t]his factor thus points in favor of transfer and weakens the deference that must be allotted to the plaintiff's choice of forum").

*Defendant's Forum Preference*

Defendant has identified the Middle District of Tennessee as its preferred forum. Though Defendant is not located in Nashville, Tennessee, Plaintiffs are since they maintain their principal places of business in Nashville. In addition, Defendant issued the underlying insurance policies to insureds located in Nashville, Tennessee, and many of the facts underlying Plaintiffs' insurance coverage claims occurred in Nashville, Tennessee. Defendant also argues that the Middle District of Tennessee is geographically more convenient for Defendant; therefore, more convenient for both parties. As such, in light of the significant relationship between the Middle District of Tennessee and the facts underlying Plaintiffs' alleged claims against Defendant, as well as Plaintiffs' having their principal places of business in Nashville, and Defendant's closer geographical location to the Middle District of Tennessee as compared to the Eastern District of Pennsylvania, this particular factor weighs in favor of transfer.

*Whether the Claim Arose Elsewhere*

The third factor—where a majority of events giving rise to the claim arose—also weighs in favor of transfer. As set forth above, most of the events underlying Plaintiffs' insurance coverage claims against Defendant occurred in the Middle District of Tennessee, where Plaintiffs are located. Specifically, the policies at issue were negotiated in and delivered to Plaintiffs in Nashville, Tennessee. Plaintiffs' alleged injuries were felt in Nashville. As discussed above, Plaintiffs' reliance on the location of the underlying lawsuits is misplaced. Accordingly, this factor weighs in favor of transfer to the Middle District of Tennessee.

*Convenience of the Parties as Indicated by Their
Relative Physical and Financial Condition*

Though Defendant does not reside in the Middle District of Tennessee, Plaintiffs do. Moreover, Defendant has expressed a preference for the litigation of this action in the Middle District of Tennessee. As noted, there is a significant relationship between the Middle District of Tennessee and the facts underlying Plaintiffs' claims, including Plaintiffs' principal places of business are in Nashville. Collectively, these considerations favorably impact the convenience of the parties and reduce the anticipated financial expenditures to try this case. Therefore, this factor also weighs in favor of transfer.

*Convenience of Witnesses*

The convenience of witnesses "is a particularly significant factor in a court's decision whether to transfer." *Idasetima v. Wabash Metal Prods., Inc*., 2001 WL 1526270, *2 (E.D. Pa. Nov. 29, 2001). Fact witnesses "'who possess[] firsthand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily in the 'balance of convenience' analysis.'" *Coppola*, 250 F.R.D. at 199 (quoting *Affymetrix, Inc. v. Synteni, Inc*., 28 F. Supp. 2d 192, 203 (D.

Del. 1998)). However, under *Jumara*, this factor is only to be considered to the extent the witnesses may actually be unavailable for trial in one of the fora. *Jumara*, 55 F.3d at 879.

Considering that Plaintiffs' claims depend primarily, if not exclusively, on Defendant's conduct in allegedly denying Plaintiffs' insurance coverage claims, few witnesses, if any, will be located in Pennsylvania. To the contrary, most of the witnesses will be corporate witnesses located in Tennessee, where Plaintiffs are principally based, where those employees received and reviewed the insurance policies at issue, and where communications from Defendant about those claims were sent, received, and reviewed. Moreover, in an insurance coverage action, the issues are primarily legal, requiring a court to compare the allegations contained in the underlying complaints to the operative insurance policies' coverage provisions to determine whether there is coverage. *See Transportation Insurance Company v. Heathland Hospitality Group, LLC*, 2017 WL 5593363, at *5–6 (E.D. Pa. Nov. 20, 2017), *aff'd*, 783 F. App'x 186 (3d Cir. 2019). Plaintiffs' repeated reliance on the locations where the underlying lawsuits were filed is again misplaced. Any witness pertaining to those lawsuits would have little if any relevance to this insurance coverage matter. Thus, under these circumstances, this factor weighs in favor of transfer.

*Location of Books and Records*

As to the final private factor, the location of books and records, "[t]echnical advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis . . . ." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003). Thus, unless hard copies of documents are necessary to this litigation, this factor has a neutral effect.

**PUBLIC FACTORS**

*Jumara* describes the public interest factors for consideration whether transfer to another district is appropriate to include: the enforceability of the judgment; practical considerations that

could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Enforceability of Judgment*

Because any judgment rendered by this Court would be equally enforceable against all of the parties, as would a judgment by the Middle District Court of Tennessee, this factor is neutral.

*Practical Considerations That Could Make the Trial Easy, Expeditious or Inexpensive*

As set forth above, most, if not all, of the facts underlying Plaintiffs' alleged insurance coverage claims occurred in the Middle District of Tennessee. As a result, most of the witnesses, particularly, those for Plaintiff, are likely to be located in or around the Middle District of Tennessee, making a trial in that forum easier, more expeditious, and less expensive. Likewise, Defendant's witnesses would also have less travel to the Middle District of Tennessee.. Thus, this factor weighs in favor of transfer.

*Relative Administrative Difficulty in the Two Fora Resulting From Court Congestion*

"Although the relative congestion of court dockets may be evaluated in a motion to transfer, it generally is not a factor worth of great weight." *Penda Corp. v. STK, LLC*, 2004 WL 2004439, at *3 (E.D. Pa. Sept. 7, 2004). Here, neither party has suggested that one of the fora is more or less congested than the other. Thus, this factor is deemed neutral.

*Local Interest in Deciding Controversies at Home and the Public Policies of the Fora*

Because Plaintiffs reside in the Middle District of Tennessee and the majority of the operative facts underlying Plaintiffs' claims occurred in the Middle District of Tennessee, that court has a greater interest in deciding the underlying controversy. *See Johnson v. Equifax Inf.*

11
Case 3:21-cv-00675   Document 16   Filed 08/30/21   Page 11 of 13 PageID #: 2097

*Servs, LLC*, 2017 WL 2779568, at *6 (E.D. Pa. 2017) ("Courts have a local interest in having localized controversies decided at home.") (citations omitted). Moreover, Tennessee's public interest in protecting its resident insureds, as indicated by its passage of its own bad faith statute, Tenn. Code. Ann. § 55-7-105, is clearly implicated here. *See Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, 2018 WL 3741890, at *8 (M.D. Tenn. Aug. 7, 2018) ("The Tennessee General Assembly . . . has supplemented a policy holder's common law rights with certain additional statutory protections targeted at specific insurance industry practices . . . . Among those additional protections is Tennessee's statute authorizing additional damages for bad faith refusal to pay . . . ."). Pennsylvania, on the other hand, does not have this same interest. *See., e.g.*, *Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379–80 (3d Cir. 1992) ("Pennsylvania has little interest in . . . protection of a New York insured . . . . New York law should regulate the relations between these parties."); *Kilmer v. Conn. Indem. Co.*, 189 F. Supp. 2d 237, 246–47 (M.D. Pa. 2002) ("[T]he 'policy behind 42 Pa. C.S.A. § 8371 . . . is that the Pennsylvania legislature was concerned about protecting its own residents/insured from overreaching insurance companies.'") (citations omitted). Consequently, this factor weighs in favor of transfer.

*Familiarity of the Trial Judge With the Applicable State Law in Diversity Cases*

Given that Tennessee law more likely applies to Plaintiffs' insurance coverage and bad faith claims than Pennsylvania law,[6] judges in the Middle District of Tennessee will be more familiar with the applicable law. This factor weighs in favor of transfer.

---

[6] "Where federal jurisdiction is based on diversity of citizenship, as it is here, we apply the choice of law rules of the state in which the District Court [sits]." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004). "[U]nder Pennsylvania choice-of-law rules, and insurance contract is governed by the law of the state in which the contract was made." *Id*. at 361. "'An insurance contract is 'made' in the state in which the last act legally necessary to bring the contract into force takes place.'" *Id*. (quoting *Crawford v. Manhattan*, 221 A.2d 877, 880 (Pa. Super. Ct. 1969)). Generally, the "last act is delivery of the policy

**CONCLUSION**

After weighing all of the *Jumara* private and public factors, this Court finds that the factors weigh in favor of a transfer. Therefore, for the convenience of the parties and witnesses and in the interest of justice, a transfer to the Middle District of Tennessee is warranted. Accordingly, Defendant's motion to transfer venue is granted. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

to the insured and the payment of the first premium by him." *Id.* (citations omitted). Here, the insurance policies were delivered to Plaintiffs in Nashville, Tennessee. Accordingly, it appears that Tennessee law will apply.