# EXHIBIT D

# EVANSTON INSURANCE COMPANY

**MARKEL®**

**DECLARATIONS**  **SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) - OCCURRENCE COVERAGE**

**SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY CLAIMS MADE COVERAGE**

There are both occurrence coverages and claims made coverages in this policy.

**NO FLAT CANCELLATION**

**Occurrence Coverage:**  The General Liability Coverage afforded by this policy is limited to liability for Occurrences or offenses which take place during the Policy Period.

**Claims Made Coverage:**  The Professional Liability Coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

**Notice:**  This is a duty to defend policy. Additionally, this policy contains provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

1.   **NAMED INSURED:**  CCS INTERMEDIATE HOLDINGS, LLC

2.   **BUSINESS ADDRESS:**
1283 MURFREESBORO ROAD SUITE 500
NASHVILLE, TN  37217

3.   **POLICY PERIOD:**  From November 15, 2014 to November 15, 2015
12:01 A.M. Standard Time at address of Insured stated above

4.   A.  **SPECIFIED PRODUCTS, GOODS, OPERATIONS AND PREMISES COVERED:**

Correctional Healthcare; all related premises and operations of the Insured

B.  **PROFESSIONAL SERVICES:**

Correctional Healthcare Services performed by an Insured in the treatment or care of any patient including: medical, dental, nursing, psychiatric, osteopathic, chiropractic or other professional care or service; furnishing or dispensing of medications, pharmaceuticals, blood and blood products, medical or surgical supplies, equipment or appliances; furnishing of food or beverages in connection with medical treatment or care; and the handling of post-mortem examinations on human bodies;

5.   **LIMITS OF LIABILITY:**

A.  For General Liability:

1.  For Coverage A. (Bodily Injury and Property Damage Liability):

(i)  Each Occurrence:                              See Endorsement #20

(ii)  Damage to Premises    Any One Premises:              See Endorsement #20

2.  For Coverage B. (Personal Injury and Advertising Injury Liability):

Each Person or Organization:                     See Endorsement #20

3.  For Coverage C. (Medical Payments):

(i)  Each Injured Person:                           See Endorsement #20

Case 3:21-cv-00675    Document 56-5    Filed 09/31/22    Page 2 of 132 PageID #: 2573

    4.   Aggregate   All Coverages:        See Endorsement #20

  B.  For Professional Liability:

    Each Claim:        See Endorsement #20

    Aggregate:        See Endorsement #20

6.  **DEDUCTIBLE:**

  A.  For General Liability:

    1.  For Coverage A (Bodily Injury and Property Damage Liability):

      Each Occurrence:        $  500,000

    2.  For Coverage B (Personal Injury and Advertising Injury Liability):

      Each Person or Organization:    $  500,000

  B.  For Professional Liability:

    Each Claim:        $  500,000

7.  **RETROACTIVE DATE:**

  For Professional Liability: November 15, 2013

8.  **RATE:**   FLAT

  **PREMIUM BASE:**   FLAT

9.  **PREMIUM FOR POLICY PERIOD:**

  Minimum        $ 1,800,954.00
  Deposit        $ 1,800,954.00

10.  **PREMIUM FOR EXTENDED REPORTING PERIOD:**

  For Professional Liability: 150% for 12 months; 175% for 24 months; or 200% for 36 months

11.  The Insured is not a proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, or any business enterprise not named in Item 1. hereinabove, except as follows:

    None

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____ Kendra S Schaendorf _____
Address: _ PO Box 111, Grand Rapids, MI 49501-0111 _____

| | |
|---|---|
| Tennessee Premium: | $1,800,954.00 |
| Fees: | n/a |
| Surplus Lines Tax: | $90,047.70 |

12.     **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

| | | |
|---|---|---|
| 1. EIC 4115-01 | 25% Minimum Earned Premium Endorsement |
| 2. EIC 832-01 | Asbestos Exclusion |
| 3. ZZ-44002-01 | Mold Exclusion |
| 4. MEIL 5229 09 10 | Longer Duration Extended Reporting Period Availability |
| 5. EIC 4638-02 | Certified Acts of Terrorism Endorsement |
| 6. MEIL 1323 09 13 | Conditional Exclusion of Terrorism |
| 7. MPIL 1069 09 13 | Notice to Policyholders Potential Restriction of Terrorism Coverage |
| 8. MEIL 5410 02 12 | Amendment of Definitions and Exclusions - Electronic Data and Distribution of Material in Violation of Statutes |
| 9. MEIL 1313 02 12 | Amendment of Definitions and Exclusions - Electronic Data and Distribution of Material in Violation of Statutes |
| 10. Manuscript | Non-Stacking Limitation When Two Or More Policies Apply |
| 11. MESM 2030 05 14 | Amendatory Endorsement - Civil Rights Violation |
| 12. Manuscript | Amendatory Endorsement - Civil Rights Violation General Liability |
| 13. Manuscript | Sexual Acts Liability Endorsement |
| 14. MESM 2087 05 12 | Defense of License Reimbursement Coverage |
| 15. Manuscript | Supplementary Payments Endorsement - Trial Attendance |
| 16. EIC 4652 | Employee Benefits Liability Coverage - Coverage D. |
| 17. Manuscript | Self Insured Retention Endorsement |
| 18. EIC 4645 | Claim Expenses in Addition to Per Claim Limit |
| 19. EIC 4819 | Claim Expenses in Addition to the Each Claim Limit of Liability |
| 20. Manuscript | Limits of Liability Per Location |
| 21. IL 12 01 11 85 | Policy Changes (Additonal Named Insured) |
| 22. Manuscript | Additional Insured Endorsement - Professional Liability |
| 23. Manuscript | Additional Insured Endorsement - General Liability |
| 24. Manuscript | Additional Insured Endorsement - Professional Liability |
| 25. Manuscript | Additional Insured Endorsement - General Liability |
| 26. EIC 4660 | Additional Insured Endorsement for Landlords, Sponsors or Lessors |
| 27. MESM 2083 01 11 | Health Insurance Portability and Accountability Act (HIPAA) - Civil Monetary Penalty Endorsement |
| 28. EIC 4601 | Amendment of Cancellation |
| 29. Manuscript | Amendment of the Insured B |
| 30. Manuscript | Amendment of the Insured G |
| 31. MESM 2098 04 14 | Good Samaritan Endorsement |
| 32. Manuscript | Notice of Claim Endorsement |
| 33. Manuscript | Utilization, Quality Assurance, Accreditation, Committee and Peer Review Activities |
| 34. MESM 2093 01 14 | Crisis Management Emergency Response Expense Reimbursement Coverage |
| 35. MESM 2055 01 14 | Risk Management Services Expense Reimbursement |
| 36. Manuscript | Aggregate Policy Limit |
| 37. Manuscript | Amendment of Definitions    Punitive Damages |
| 38. EIC4758 | Changes in Conrol of Named Insured |
| 39. MEIL 1235 04 14 | Wisconsin Restriction Endorsement |
| 40. Manuscript | Patient Compensation Fund Restriction Endorsement |
| 41. Manscript | Addition of Contracts Endorsement |
| 42. Manuscript | Cross Liability Self Insured Retention Endorsement |
| 43. EIC 4660 04/07 | Additional Insured Endorsement For Landlords, Sponsors or Lessors |
| 44. EIC 4745 04/08 | Amendment of Exclusion H. |

13. **NOTICES**:

Notices required to be provided to the Company under this policy shall be addressed to:

| CLAIM NOTICES: | ALL OTHER NOTICES: |
|---|---|
| Claims Service Center | MARKEL MIDWEST |
| MARKEL SERVICE, INCORPORATED | a division of Markel Service, Incorporated |
| Ten Parkway North | Ten Parkway North |
| Deerfield, Illinois 60015 | Deerfield, IL 60015 |
| | |
| Fax: (855) 662-7535 | Fax: (866) 730-2526 |
| E-mail: newclaims@markelcorp.com | |

_____
Authorized Representative

Policy Form: SM-20001-01 04/08
Dec: SM-10001-01 04/08
Date Printed: May 17, 2015

Page 4

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:    Policy Number: SM904110
       Insured:   CCS INTERMEDIATE HOLDINGS, LLC
       Insurer:   EVANSTON INSURANCE COMPANY
       Risk ID. No.:  3455243

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2007 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term  act of terrorism  means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States   to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires EVANSTON INSURANCE COMPANY to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally pays 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this terrorism coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers  liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.  You should also know that under federal law you are NOT required to purchase terrorism coverage.

Certified Acts of Terrorism coverage is provided for no additional premium.



**Markel s Designed Protection®
Risk Management Resources Allied Health Care
(Specified Medical) Professionals,**

<u>Welcome</u> to Markel s Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at *no additional cost.*

**HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:**

<u>Step 1.</u>    Go onto our website, www.markelcorp.com/riskmanagement.

<u>Step 2</u>.    Select the Designed Protection services that apply to your policy, to get to the Login screen.

<u>Step 3</u>    Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is SM904110.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

**Available Risk Management Resource:**

**Designed Protection® Risk Management Telephone Hotlines for:**

This confidential telephone hotline is staffed by health care professional defense attorneys that are available to answer general risk management questions.

# EVANSTON INSURANCE COMPANY

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:     SM904110<br>Endorsement No.:     1<br>Effective Date of Endorsement:   November 15, 2014 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675     Document 56-5     Filed 01/31/22     Page 8 of 132 PageID #: 2579

# EVANSTON INSURANCE COMPANY

**MARKEL®**

---

## Endorsement

---

| | |
|---|---|
| Named Insured: | Attached to and forming |
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: SM904110 |
| | Endorsement No.: 2 |
| | Effective Date of Endorsement: November 15, 2014 |

---

### ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

All other provisions of the policy shall remain unchanged.

EIC 832-01 10/02

# EVANSTON INSURANCE COMPANY

MARKEL®

---

**Endorsement**

---

| | | |
|---|---|---|
| Named Insured: | Attached to and forming | |
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: | SM904110 |
| | Endorsement No.: | 3 |
| | Effective Date of Endorsement: | November 15, 2014 |

---

## MOLD EXCLUSION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

Solely for the purposes of this endorsement:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

All other provisions of the policy shall remain unchanged.

ZZ-44002-01                                                                                            Page 1 of 1



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LONGER DURATION EXTENDED REPORTING PERIOD AVAILABILITY

This endorsement modifies insurance provided under the following:

PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
  COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
  COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that in addition to the availability of the Extended Reporting Period for the period of months stated in Item 10. of the Declarations, an Extended Reporting Period of the following duration shall also be available:

48 months;
60 months;
72 months; or
84 months.

The Named Insured must make a written request for the longer duration Extended Reporting Period received by the Company within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. The Company will determine the additional premium to be charged for such Extended Reporting Period.

The Company will provide to the Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

All other terms and conditions of the Section Extended Reporting Period shall apply with regard to the Named Insured's exercise of any such longer duration Extended Reporting Period.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART    OCCURRENCE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
  COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
  COMPLETED OPERATIONS LIABILITY) COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.   The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the Company has met the Company's deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

**Markel Midwest Region**
a division of Markel Service, Incorporated
Ten Parkway North, Deerfield, IL 60015  (800) 462-5539
www.markelcorp.com
All other provisions of the policy shall remain unchanged.



**MARKEL**®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONDITIONAL EXCLUSION OF TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM
## RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY INSURANCE POLICY
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS
    MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE  COVERAGE PART -
    OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITYINSURANCE COVERAGE PART - CLAIMS MADE
    COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART    OCCURRENCE
    COVERAGE
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS LIABILITY INSURANCE POLICY
SPECIFIED PROFESSIONAL AND SPECIFIED GENERAL LIABILITY POLICY    COVERAGE B. ONLY

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**A.** Applicability of the Provisions of This Endorsement

   **1.** The provisions of this endorsement shall become applicable commencing on the date when one or more of the following first happens or the inception date of this policy if the Policy Period in which this endorsement applies begins after such date:

   **a.** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or policy; or

   **b.** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available and with revisions that:

   **(1)** Increase the Company s statutory percentage deductible under the Program for terrorism losses;

   **(2)** Decrease the United States Government's statutory percentage share in potential terrorism losses above such deductible; or

   **(3)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   **2.** If the provisions of this endorsement become applicable, such provisions:

Case 3:21-cv-00675     Document 56-5     Filed 01/31/22     Page 13 of 132 PageID #: 2584

**a.** For Claims Made Coverage Parts, or policies supersede any terrorism endorsement already endorsed to this policy that addresses Certified Acts of Terrorism, but only with respect to an incident of terrorism (however defined) that results in a Claim first made on or after the date when the provisions of this endorsement become applicable; or

**b.** For Occurrence Coverage Parts, supersede any terrorism endorsement already endorsed to this policy that addresses Certified Acts of Terrorism, but only with respect to an incident of terrorism (however defined) that results in a Bodily Injury or Property Damage and an Occurrence, the entirety of which happens on or after the date when the provisions of this endorsement become applicable; and

**c.** Remain applicable unless the Company notifies the first Named Insured of changes in these provisions, in response to federal law.

**3.** If the provisions of this endorsement do not become applicable, any terrorism endorsement already endorsed onto this policy, that addresses Certified Acts of Terrorism, will continue in effect unless the Company notifies the first Named Insured of changes to that endorsement in response to federal law.

**B.** Section Definitions is amended by the addition of the following:

**1. Terrorism** means any activity against any natural person, organization or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence;

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express or express opposition to a philosophy or ideology.

**C.** Section The Exclusions is amended by the addition of the following:

This Coverage Part or policy does not apply to any Claim based upon, arising out of, directly or indirectly caused by Terrorism, including action in hindering or defending against an actual or expected incident of Terrorism. Any such Claim is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such incident of Terrorism.

This exclusion shall apply only when one or more of the following are attributed to an incident of Terrorism:

**1.** The Terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

**2.** Radioactive material is released, and it appears that one purpose of the Terrorism was to release such material;

**3.** The Terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials;

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the Terrorism was to release such materials;

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured damage sustained by property of all natural persons and organizations affected by the Terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusion; or

**6.** Fifty (50) or more persons sustain death or Serious Physical Injury.

**MEIL 1323 09 13**          Includes copyrighted material of Insurance Services Office, Inc.          **Page 2 of 3**
with its permission.

Case 3:21-cv-00675     Document 56-5     Filed 01/31/22     Page 14 of 132 PageID #: 2585

For the purposes of this exclusion, Serious Physical Injury means:

**a.** Physical injury that involves a substantial risk of death;

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of Terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Items C.5. or C.6. are exceeded.

With respect to this exclusion Items C.5. and C.6. describe the threshold used to measure the magnitude of an incident of Terrorism and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of Terrorism, there is no coverage under this Coverage Part or policy.

All other provisions of the policy shall remain unchanged.

**MEIL 1323 09 13**          Includes copyrighted material of Insurance Services Office, Inc.          **Page 3 of 3**
with its permission.

Case 3:21-cv-00675      Document 56-5      Filed 01/31/22      Page 15 of 132 PageID #: 2586



# EVANSTON INSURANCE COMPANY

# NOTICE TO POLICYHOLDERS
# POTENTIAL RESTRICTION OF TERRORISM COVERAGE

The federal Terrorism Risk Insurance Act established the federal Terrorism Risk Insurance Program ( Program ) within the Department of the Treasury, under which the United States Government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Program is subject to a termination date of December 31, 2014 unless extended by the United States Government. If the Program terminates, or is extended with certain changes prior to or during the term of this policy, then the treatment of terrorism under this policy will change. If the Program is terminated, the definition of  Certified Act of Terrorism  will no longer apply and the limit on the Company s liability pursuant to the federal Terrorism Risk Insurance Act will no longer apply. If the Program is extended with changes, the definition of  Certified Act of Terrorism  may change and the limit on the Company s liability pursuant to the federal Terrorism Risk Insurance Act may change.

**THIS POLICY DURING TENURE OF THE TERRORISM RISK INSURANCE PROGRAM AS THE PROGRAM EXISTS PURSUANT TO THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2007:**

Contains either:

**a.** A Certified Acts of Terrorism Exclusion which excludes any claim or portion thereof based upon, arising out of, or in any way involving a  Certified Act of Terrorism ; or

**b.** A Certified Acts of Terrorism Endorsement which indicates that this policy does not contain an exclusion of any claim based upon, arising out of, or in any way involving a "Certified Act of Terrorism . The endorsement states that such claims are subject to a limit on the Company s liability pursuant to the federal Terrorism Risk Insurance Act.

The absence of a terrorism exclusion does not create coverage for any injury or damage that would otherwise be excluded under the policy.

**POTENTIAL CHANGES TO THIS POLICY:**

Endorsement MEIL 1323 09 13 Conditional Exclusion of Terrorism is attached to this policy. The provisions of the endorsement only become applicable to the policy if one or more of the following happens:

**a.** The Program established by the federal Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under the policy; or

**b.** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available and with revisions that:

**(1)** Increase the Company s statutory percentage deductible under the Program for terrorism losses;

**(2)** Decrease the United States Government's statutory percentage share in potential terrorism losses above such deductible; or

**(3)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under the policy.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS AND EXCLUSIONS    ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART    CLAIMS MADE
  COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE
  COVERAGE
PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS AND PROFESSIONAL LIABILITY INSURANCE POLICY


Section The Exclusions is amended by the addition of the following:

any Claim based upon or arising out of any violation of:

**(a)** the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

**(b)** the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

**(c)** any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.


All other terms and conditions remain unchanged.

**MEIL 5410 02 12**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF DEFINITIONS AND EXCLUSIONS ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) COVERAGE PART OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART CLAIMS MADE COVERAGE

**1.** Section Definitions is amended by the addition of the following:

**Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

**2.** Section Definitions, Property Damage, is deleted and replaced as follows:

**Property Damage** means:

  **1.** physical injury to or destruction of tangible property, including consequential loss of use thereof; or

  **2.** loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence;

    provided, however, tangible property shall not include Electronic Data.

**3.** Section The Exclusions A. is amended by the addition of the following:

any Claim based upon or arising out of any violation of:

  **(a)** the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

  **(b)** the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

  **(c)** any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

All other terms and conditions remain unchanged.



**MARKEL**®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-STACKING LIMITATION WHEN TWO OR MORE POLICIES APPLY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART    CLAIMS MADE COVERAGE

In consideration of the premium paid, it is understood and agreed that the following is added to both Other Conditions B., Other Insurance of the General Liability Coverage Parts and to Other Insurance of the Professional Liability Coverage Parts:

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

1.  The Limit of Liability available under this policy will be equal to the percentage that this policy s available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

2.  The total Limit of Liability available for such Claim shall not exceed the greater/est available Limit of Liability remaining on all such policies and its payment shall extinguish the Company s and its affiliated companies' liability on all such policies for such Claim.

Nothing contained in this endorsement shall be construed to increase the Limits of Liability of this Policy.

All other terms and conditions remain unchanged.

**MEIL 1228 02 14**                                                                                                                    **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT    CIVIL RIGHTS VIOLATION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** Section Definitions D. is amended by the addition of the following:

4. an allegation of a civil rights violation pursuant to the Civil Rights Act of 1871 (42 U.S.C. § 1983 *et seq*.) and amendments thereto, provided that such allegation is the result of any natural person receiving Professional Services.

**2.** Section Limits of Liability E. is deleted and replaced with the following:

E. **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.B. of the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions, including Professional Services to a woman and/or her unborn child or children during the course of pregnancy, including pre-natal, delivery and post-natal care, shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

**3.** Section The Exclusions F. is deleted and replaced with the following:

F. any Claim based upon or arising out of any unlawful discrimination by any Insured; provided, however, this exclusion shall not apply to any civil rights violation alleged pursuant to the Civil Rights Act of 1871 (42 U.S.C. § 1983 *et seq*.) and amendments thereto, provided that such civil rights violation arises out of a Professional Service for which the Insured is legally liable.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT    CIVIL RIGHTS VIOLATION GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

1.  Section Definitions F. is deleted and replaced with the following:

    F.  **Claim** means notice received by the Insured of an intention to hold the insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; (4) a Personal Injury; or (5) an allegation of a Bodily Injury as a result civil rights violation pursuant to the Civil Rights Act of 1871 (42 U.S.C. §1983 *et seq.*) and amendments thereto, provided that such allegation arises out of an Occurrence involving either an inmate in a correctional facility in which services are provided by an Insured or a patient of an Insured or client of the Insured; involving this Coverage Part and shall include the service of suit or institution of arbitration proceedings against the Insured.

2.  Section, The Exclusions A.4. is deleted and replaced with the following:

    4.  any Claim based upon or arising out of any unlawful discrimination by any Insured; this exclusion shall not apply to any civil rights violation alleged pursuant to the Civil Rights Act of 1871 (42 U.S.C. §1983 *et seq.*) and amendments thereto, provided that such civil rights violation arises out of an Occurrence for which the Insured is legally liable.

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**

# EVANSTON INSURANCE COMPANY

MARKEL®

---

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.: SM904110<br>Endorsement No.: 13<br>Effective Date of Endorsement: November 15, 2014 |

---

### SEXUAL ACTS LIABILITY ENDORSEMENT
#### (use with policy form SM-20001)

This endorsement modifies insurance provided under the following:

**Specified Medical Professions Professional Liability Insurance Coverage Part**
**Specified Medical Professions General Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the Specified Medical Professions Professional Liability Insurance Coverage Part is amended as follows:

1.  Section Insuring Agreement is amended by the addition of the following:

    **Sexual Acts Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.B. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

    A.   such Sexual Act arises out of the conduct of the Insured's Professional Services;

    B.   such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date as stated in Item 7. of the Declarations and before the end of the Policy Period; and

    C.   prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may result in a Claim under this policy.

2.  Section Definitions is amended by the addition of the following:

    **Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured s Professional Services.

    **Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 22 of 132 PageID #: 2593



## Endorsement

3.      Section The Exclusions I. is deleted.

4.      Section The Exclusions is amended by the addition of the following exclusions:

     T.      to any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

     U.      to any manager, supervisor, officer, director, trustee or partner who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

     V.      to any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, officer, director, trustee or partner has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

     W.      to any Claim based upon or arising out of Sexual Injury to any employee of the Insured.

5.      Section Limits of Liability is amended by the addition of the following:

     F.      **Limit of Liability - Sexual Acts Liability Coverage**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury is limited to:

          1.      $1,000,000      All Claims Made by Each Claimant

          2.      $15,000,000    All Claims under Sexual Acts Liability Coverage

     Multiple Sexual Acts: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

## Endorsement

6. Section Limits of Liability B. is amended by the addition of the following:

Subject to Section Limits of Liability F., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the amount stated in Item 5.B. of the Declarations, Policy Aggregate Limit of Liability, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

It is further understood and agreed that the Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

1. Section Definitions is amended by the addition of the following:

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured s Products and Completed Operations.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

2. Section The Exclusions A. under the under the Specified Medical Professions General Liability Insurance Coverage Part is amended by the addition of the following exclusions:

(i) any Claim based upon or arising out of any Sexual Injury; or

(ii) to any Claim based upon or arising out of any allegations that the Insured was negligent in hiring, training or supervising any person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFENSE OF LICENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART   CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART   CLAIMS MADE
  COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that policy is amended as follows:

**1.**     Section Supplementary Payments is added as follows:

**SUPPLEMENTARY PAYMENTS**

**A.   Defense of License Coverage:**  Upon submission to the Company of satisfactory written proof of payment, the Company shall reimburse the Named Insured for reasonable and necessary Legal Fees and Legal Expenses incurred in the defense of the Insured in response to a Disciplinary Proceeding first initiated during the Policy Period,

provided:

**1.**   the act, error or omission in Professional Services giving rise to the Disciplinary Proceeding happens during the Policy Period or on or after November 15, 2013 and before the end of the Policy Period; and

**2.**   prior to the effective date of this policy the Insured had no knowledge of such act, error or omission  or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured s position to conclude that a Disciplinary Proceeding was likely;

Such reimbursement shall be in excess of a deductible of $$0 for each Disciplinary Proceeding and shall be subject to:

**a.**   a limit of liability of $25,000 for each Insured for each Disciplinary Proceeding; and

**b.**   a policy aggregate limit of liability of $75,000 for all Insureds for all Disciplinary Proceedings covered herein.

It is a condition precedent to coverage afforded by this policy under this Section Supplementary Payments A., Defense of License Coverage, that the Named Insured shall give the Company written notice as stated in the Notice item of the Declarations as soon as practicable of any Disciplinary Proceeding first initiated during the Policy Period.

The Named Insured must submit to the Company satisfactory written proof of payment of such Legal Fees and Legal Expenses within one (1) year after the expiration or cancellation of this policy. Proof of payment shall including an itemized statement with documentary evidence which supports and explains each item, including fully itemized attorney billings.

No payment pursuant to this Section shall be made for the Named Insured s payment of or obligation to pay any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; costs required to comply with non-monetary conditions imposed upon any Insured as a condition of licensure; any monetary judgment, award or settlement of any kind; or any Legal Fees and Legal Expenses incurred by the Named Insured in a proceeding associated with the foregoing.

Any amount the Company shall reimburse pursuant to this Section, Supplementary Payments A., shall be in addition to the Limits of Liability stated in the Declarations and shall be subject to a Deductible.

2. Section Definitions is amended by the addition of the following:

**Disciplinary Proceeding** means the Insured s receipt of notice of:

**(1)** any state or federal regulatory or disciplinary action, inquiry or review involving the Insured's professional licensure, with the purpose of adversely affecting the Insured's license;

**(2)** any professional disciplinary action, inquiry, or review taken against the Insured by any health care organization which affects the Insured's professional privileges or membership with such organization;

however, Disciplinary Proceeding shall not include:

**(a)** any dispute involving timely completion of medical records;

**(b)** any application for initial placement on a medical staff;

**(c)** any criminal proceeding;

**(d)** any dispute involving allegations of fraud or willful non-compliance with any regulations or procedures or Medicare, Medicaid or any similar federal or state program; or

**(e)** any appeal of a Disciplinary Proceeding concluded against the Insured.

**Legal Fees and Legal Expenses** means attorney's fees charged by legal counsel selected by the Named Insured, and expert witness fees, and related legal and/or associated investigation costs and expenses incurred by the Insured with the written consent of the Named Insured. This does not include reimbursement for any Insured's salary or loss of other billing or income. The Company shall have the final decision as to the reasonableness of Legal Fees and Legal Expenses.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SUPPLEMENTARY PAYMENTS ENDORSEMENT   TRIAL ATTENDANCE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART   CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART   CLAIMS MADE
  COVERAGE
SPECIFIED MEDICAL PROFESIONS GENERAL LIABLITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART   OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**Trial Attendance Supplementary Payments:**  The Company shall pay a $250 per diem trial attendance allowance to any Insured who attends the trial, mediation or arbitration of a Claim or deposition in furtherance of discovery in a Claim; but only if (a) the Claim is against the Insured or alleges negligent acts, errors or omissions performed by or at the direction of the Insured; and (b) the Claim is covered by this policy; and (c) the Insured attends the trial, mediation or arbitration at the written request of the Company.

Payments to the Named Insured pursuant to this Supplementary Payment shall be in addition to the Limits of Liability applicable and shall not be subject to the Deductible. Payments to the Named Insured pursuant to this Supplementary Payment shall be limited to $5,000 per claim and $10,000 total for all claims made under this policy

All other provisions of the policy shall remain unchanged.

# EVANSTON INSURANCE COMPANY

**MARKEL®**

---

## Endorsement

---

| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming | |
|---|---|---|
| | a part of Policy No.: | SM904110 |
| | Endorsement No.: | 16 |
| | Effective Date of Endorsement: | November 15, 2014 |

---

### EMPLOYEE BENEFITS LIABILITY COVERAGE - COVERAGE D.

### THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE

This endorsement modifies insurance provided under the following:

**Specified Medical Professions General Liability Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Item 7. of the Declarations, Retroactive Date, is amended by the addition of the following:

    For Employee Benefits Liability Coverage: November 15, 2013

2.  Item 5.A. of the Declarations, Limits of Liability, is amended by the addition of the following:

    5.  For Coverage D. (Employee Benefits Liability):

        (i)  Each Claim:                                        $1,000,000

        (ii) Aggregate:                                        $3,000,000

3.  Item 6.A. of the Declarations, Deductible, is amended by the addition of the following:

    3.  For Coverage D. (Employee Benefits Liability):

        Each Claim:                                            $1,000

4.  Item 10. of the Declarations, Premium for Extended Reporting Period, the words  For Professional Liability  are amended to read  For Professional Liability and Employee Benefits Liability.

5.  Section The Insured is amended by the addition of the following:

    As respects Employee Benefits Liability Coverage only:

    the Named Insured and any principal, partner, officer, director or Employee of the Named Insured; provided that such Employee is authorized to act in the Administration of the Named Insured s Employee Benefits Program.

6.  Section Insuring Agreements is amended by the addition of the following:

    D.  **Coverage D. - Employee Benefits Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amounts stated in Item 6.A.3. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to

# EVANSTON INSURANCE COMPANY

## Endorsement

Section Claim Reporting Provision, by Employees or their legal representatives, which arise out of any act, error or omission in the Administration of the Named Insured s Employee Benefits Program provided:

1. the act, error or omission happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 7. of the Declarations and before the end of the Policy Period; and

2. prior to the effective date of this endorsement the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured s position to conclude that a Claim was likely.

7. Solely for purposes of this endorsement, the following definitions shall apply:

**Administration** means conduct of the Insured, or of any person for whose acts, errors or omissions the Insured is legally responsible, with respect to:

(a) providing information to Employees, or their dependents and beneficiaries, regarding the Named Insured s Employee Benefit Program;

(b) handling of records in connection with the Named Insured s Employee Benefits Program; or

(c) effecting enrollment, termination or cancellation of Employees, or their dependents and beneficiaries, in the Named Insured s Employee Benefits Program;

Provided, however, Administration does not include handling payroll deductions.

**Employees** means Employees or former Employees.

**Employee Benefits Program** means any program providing some or all of the following benefits to Employees of the Named Insured:

1. group life, accident or health insurance, dental, vision and hearing plans; and flexible spending accounts provided that only Employees may subscribe to such benefits and that such benefits are generally made available solely to those Employees who fulfill the plan s eligibility requirements;

2. profit sharing plans, employee stock subscription plans, employee stock ownership plans, employee savings plans and pension plans; provided that only Employees may subscribe to such benefits and that such benefits are generally made available solely to those Employees who fulfill the plan s eligibility requirements;

3. unemployment insurance, social security benefits, workers compensation or disability benefits; and

4. vacation plans and leave of absence programs.

8. Section Definitions, Claim, is deleted for purposes of this endorsement only and replaced solely with respect to Coverage D. Employee Benefits Liability:

**Claim** means a demand received by the Insured for compensation for Damages, including service of suit or institution of arbitration proceedings against the Insured.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 29 of 132 PageID #: 2690

| Endorsement |
| --- |

9.  Section The Exclusions is amended by the addition of the following:

   E.  With respect to Coverage D. Employee Benefits Liability only, this Coverage Part does not apply to:

   1.  any Claim based upon or arising out of any dishonest, fraudulent, criminal, or malicious or knowingly wrongful acts, errors or omissions;

   2.  any Claim based upon or arising out of Bodily Injury, Property Damage, Personal Injury or Advertising Injury;

   3.  any Claim based upon or arising out of unlawful discrimination;

   4.  any Claim based upon or arising out of wrongful termination or other employment related practices;

   5.  any Claim based upon or arising out of the Insured s failure to comply with workers  compensation, unemployment compensation, social security or disability benefits laws or any similar law;

   6.  any Claim based upon or arising out of the Insured s activities as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law;

   7.  any Claim based upon or arising out of the investment or non-investment of any Employee Benefits Program funds;

   8.  any Claim based upon or arising out of failure of any investment or security to perform;

   9.  any Claim for failure of performance of contract by any insurer;

   10. any Claim based upon or arising out of insufficient funds to meet any obligations under any Employee Benefits Program;

   11. any Claim based upon or arising out of the failure or inability of any entity to make any payments or provide any benefits due under any Employee Benefits Program;

   12. any Claim for benefits under any Employee Benefits Program to the extent that such benefits, with reasonable effort and cooperation of the Insured, are available from the applicable benefit funds or other available and collectible insurance;

   13. any Claim based upon or arising out of advice given or which should have been given to any Employees to participate or not to participate in any Employee Benefits Program;

   14. criminal or civil fines, taxes, or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

   15. any Claim based upon or arising out of the selection, design, planning, development, creation, formation, or structure of any Employee Benefits Program; or

   16. any Claim based upon or arising out of any change in availability, eligibility or cost of any Employee Benefits Program.

## Endorsement

10. Solely for purposes of this endorsement, Section Limits of Liability is amended by the addition of the following:

    H.  **Coverage D. - Employee Benefits Liability**

        1.  **Limit of Liability - Each Claim**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, for each Claim insured herein shall not exceed the Limits of Liability stated in Item 5.A.5.(i) of the Declarations applicable to Each Claim.

        2.  **Limit of Liability - Coverage Aggregate:** Subject to the above Limits of Liability H.1., the total liability of the Company shall not exceed the Coverage Aggregate Limit of Liability as stated in Item 5.A.5.(ii) of the Declarations for all Damages and Claim Expenses under Coverage D.

11. Solely for purposes of this endorsement, the first paragraph of Section Limits of Liability F. is deleted and replaced with the following:

    F.  **Deductible:** The Deductible amount stated in Item 6.A.3.of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages are paid.

12. Solely with respect to this endorsement, Section Limits of Liability G., Multiple Insureds, Claims, Occurrences, Offenses and Claimants, is amended by the addition of the following:

More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be considered first made on the date on which the earliest Claim arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company pursuant to Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

13. Solely with respect to this endorsement, Section Defense, Settlements and Claim Expenses is amended by the addition of the following:

The Company shall have the right to defend and investigate any Claim to which this endorsement applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5. A. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limits of Liability stated in Item 5.A. of the Declarations have been exhausted.

14. Solely for purposes of the coverage provided by this endorsement, Section Claim Reporting Provision is amended by the addition of the following:

**MARKEL®**

---

## Endorsement

The Insured shall give to the Company written notice as stated in Item 13. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

15. Solely for purposes of the coverage provided by this endorsement, the following is added:

**Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific act, error or omission which may result in a Claim within the scope of the coverage provided for in this endorsement, then the Insured may provide written notice as stated in Item 13. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error or omission shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. the description of the specific act, error or omission;

2. the date on which such act, error or omission took place;

3. the injury or damage which has or may result from such act, error or omission;

4. the identity of any injured persons; and

5. the circumstances by which the Insured first became aware of such act, error or omission.

16. Solely for purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or if this endorsement is attached to a claims made General Liability Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

A. The Named Insured s right to exercise the Extended Reporting Period under this endorsement shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

Nothing contained herein shall afford the Named Insured the right to exercise an Extended Reporting Period in any Insuring Agreement in the policy providing coverage on an occurrence basis.

B. If the Named Insured nonrenews this policy in it entirety or cancels this policy in its entirety pursuant to Common Policy Conditions, Section Other Conditions A., Cancellation, or if the Company nonrenews this policy or cancels this policy pursuant to Common Policy Conditions, Section Other Conditions A., Cancellation, for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right to exercise the Extended Reporting Period under this endorsement subject to Extending Reporting Period A. above, as regards all Insuring Agreements included under this policy, other than any Insuring Agreements affording coverage on an occurrence basis, upon

## Endorsement

payment of an additional premium calculated at the percentage stated in Item 10. of the Declarations of the annual deposit premium for the policy, subject to adjustment as per Common Policy Conditions, Section Other Conditions G., Premium and Audit, but in no event less than the percentage set forth in Item 10. of the Declarations of the annual minimum premium for the policy to extend the coverage granted under this endorsement to Claims first made against the Insured during the period of months stated in Item 10. of the Declarations as elected by the Named Insured, and reported to the Company pursuant to, Section Claims A., Claim Reporting Provision, following immediately upon the effective Date of such cancellation or nonrenewal, for any act, error or omission negligently committed in the Administration of the Insured's Employee Benefit Program rendered on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this endorsement. This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this endorsement as the Extended Reporting Period.

C.   As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:  (1) all deductibles when due; (2) all premiums due for the Policy Period; and (3) all premiums due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement must have been paid.

The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in Item 13. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of election and payment of additional premium are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

D.   The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

E.   In the event of the purchase of the Extended Reporting Period the entire premium therefrom shall be fully earned at its commencement.

F.   The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 5A. of the Declarations.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Item 6. of the Declarations is deleted and replaced as follows:

   6.　　　　**SELF-INSURED RETENTION:**
     A.　　　　For General Liability:
       1.　　　For Coverage A (Bodily Injury and Property Damage Liability):
   　　　　　　Each Occurrence:　　　　　　　　　$500,000
       2.　　　For Coverage B (Personal Injury and Advertising Injury Liability):
   　　　　　　Each Person or Organization:　　　　$500,000

     B.　　　　For Professional Liability:
   　　　　　　Each Claim:　　　　　　　　　　　$500,000

2. Whenever used in the Specified Medical Professions Professional Liability Insurance Coverage Part and the Specified Medical Professions General Liability Insurance Coverage Part, the word  Deductible  is deleted and replaced with  Self-Insured Retention .

3. Specified Medical Professions Professional Liability Insurance Conversation Part, Section Limits of Liability D., Deductible, is deleted and replaced with the following:

   **D.  Self-Insured Retention:**  The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

   Such amounts shall, upon written demand by the Company, be paid by the Named Insured, CCS Intermediate Holdings, LLC (the  Named Insured ) within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 34 of 132 PageID #: 2605

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

At its sole discretion, the Company reserves the right to independently audit the Insured s claim files and records for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured s right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured s inability to pay shall not relieve the Insured of its obligations hereunder.

**4.** Specified Medical Professions Professional Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

**Defense, Investigation and Settlement of Claims:** It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, its own expense to defend, investigate and settle any Claim against any Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company s opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

**1.** Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

**2.** The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

    **a.**    providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

    **b.**    providing any other reasonable information requested;

    **c.**    providing fully itemized billing on a periodic basis; and

    **d.**    cooperating with the Company and the Insured in resolving any and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

Upon exhaustion of the Self-Insured Retention, the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

**5.**    Specified Medical Professions Professional Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

    **A.**    **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

        **1.**    in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

        **2.**    which the Insured s estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

        **3.**    which involves:

            **a.**    Death;

            **b.**    Brain or spinal injury;

            **c.**    Amputation;

            **d.**    Loss of use of arm, leg, sight or hearing;

            **e.**    Severe burns;

            **f.**    Serious loss of use of any bodily function

            **g.**    Paralysis;

            **h.**    Reflex Sympathy Dystrophy;

            **j.**    Complex Regional Pain Syndrome;

            **k.**    Multiple factures, multiple areas;

            **l.**    Sexual molestation; or

            **m.**    Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the Self-Insured Retention. Quarterly bordereaux reports containing the Claimant s name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.

6. Specified Medical Professions General Liability Insurance Coverage Part, Section Limits of Liability F., Deductible, is deleted and replaced with the following:

F. **Self-Insured Retention:** The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

At its sole discretion, the Company reserves the right to independently audit the Insured s claim files and records for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured s right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured s inability to pay shall not relieve the Insured of its obligations hereunder.

7. Specified Medical Professions General Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

A. **Defense, Investigation and Settlement of Claims:** It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, at its own expense to defend, investigate and settle any Claim against an Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company s opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the

Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

**a.** providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** providing any other reasonable information requested;

**c.** providing fully itemized billing on a periodic basis; and

**d.** cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

Upon exhaustion of the Self-Insured Retention the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

**8.** Specified Medical Professions General Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

**A.** **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

**1.** in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

**2.** which the Insured s estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

**3.** which involves:

**a.** Death;

**b.** Brain or spinal injury;

**c.** Amputation;

**d.** Loss of use of arm, leg, sight or hearing;

**e.** Severe burns;

**f.** Serious loss of use of any bodily function

**g.** Paralysis;

**h.** Reflex Sympathy Dystrophy;

**j.** Complex Regional Pain Syndrome;

**k.** Multiple factures, multiple areas;

**l.** Sexual molestation; or

**m.** Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the self-insured retention. Quarterly bordereaux reports containing the Claimant s name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.

discrepancies;

# EVANSTON INSURANCE COMPANY

**MARKEL®**

---

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:     SM904110<br>Endorsement No.:     18<br>Effective Date of Endorsement:   November 15, 2014 |

---

### CLAIM EXPENSES IN ADDITION TO THE EACH CLAIM LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

**Specified Medical Professions Professional Liability Coverage Part — Claims Made Coverage**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section Limits of Liability A. is deleted and replaced with the following:

    A. **Limit of Liability-Each Claim:** The total liability of the Company for Damages for each Claim first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in Item 5.B. of the Declarations as applicable to Each Claim.

2. Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

    ### DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

    The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies. Subject to Section Limits of Liability C., the Company may make such investigation and settlement of any Claim as it deems expedient.

    Claim Expenses incurred in defending and investigating a Claim shall be in addition to the applicable Limits of Liability stated in Item 5.B. of the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 5.B. of the Declarations have been exhausted.

All other provisions of the policy shall remain unchanged.

# EVANSTON INSURANCE COMPANY

MARKEL®

---

## Endorsement

---

| Named Insured: | Attached to and forming | |
|---|---|---|
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: | SM904110 |
| | Endorsement No.: | 19 |
| | Effective Date of Endorsement: | November 15, 2014 |

---

### CLAIM EXPENSES IN ADDITION TO THE EACH CLAIM LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

**Specified Medical Professions General Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    Section Limits of Liability A., B. and C. are deleted and replaced with the following:

    A.    **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for Damages for all Claims because of all Bodily Injury or Property Damage sustained by one or more persons or entities as the result of any one Occurrence shall not exceed the Limit of Liability stated in Item 5.A.1.(i) of the Declarations as applicable to Each Occurrence.

    B.    **Coverage A. - Limit of Liability-Damage to Premises:**  The total liability of the Company for Damages for all Claims, including those subject to the above provision regarding the Coverage A - Limit of Liability    Each Occurrence, because of Property Damage to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 5.A.1.(ii) of the Declarations as applicable to Damage to Premises    Any One Premises.

    C.    **Coverage B. - Limit of Liability-Each Person or Organization:**  The total liability of the Company for Damages for all Claims under Coverage B. because of all Personal Injury and all Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 5.A.2. of the Declarations as applicable to Each Person or Organization.



## Endorsement

2.     Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

The Company shall have the right and duty to defend and investigate any Claim to which Coverage A. and/or B. under this Coverage Part applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be in addition to the applicable Limits of Liability stated in Item 5.A. of the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 5.A. of the Declarations have been exhausted.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITS OF LIABILITY PER LOCATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
OPERATIONS) COVERAGE PART    OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERERAGE PART    CLAIMS
MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.      Item 5.A of the Declarations, Limits of Liability, is deleted and replaced by the following:

    5.  **LIMITS OF LIABILITY:**

        A.  For General Liability    Each Location:

            1. For Coverage A. (Bodily Injury and Property Damage Liability):

| | |
|---|---|
| (i)  Each Occurrence: | $1,000,000 |
| (ii)  Damage to Premises    Any One Premises: | $300,000 |

            2. For Coverage B. (Personal Injury and Advertising Injury Liability):

| | |
|---|---|
| Each Person or Organization: | $1,000,000 |

            3. For Coverage C. (Medical Payments):

| | |
|---|---|
| (i)  Each Injured Person: | $10,000 |

            4. Aggregate:

| | |
|---|---|
| (i)  Each Location: | $3,000,000 |
| (ii)  All Coverages, All Locations: | $15,000,000 |

        B.  For Professional Liability:

| | |
|---|---|
| Each Claim: | $1,000,000 |
| Aggregate, Each Location: | $3,000,000 |
| Aggregate, All Locations: | $15,000,000 |

All other provisions of the policy shall remain unchanged.

2. The Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

Section Limits of Liability is amended by the addition of the following:

**Limit of Liability- Aggregate- All Coverages, All Locations:** Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate, All Locations as stated in Item 5.B.. of the Declarations.

2. The Specified Medical Professions Professional Liability Coverage Part is amended as follows:

Section Limits of Liability is amended by the addition of the following:

**Limit of Liability- Aggregate- All Coverages, All Locations:** Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate All Coverages, All Locations as stated in Item 5.A.4.ii. of the Declarations.

All other provisions of the policy shall remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 21

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>November 15 ,2014 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |
| COVERAGE PARTS AFFECTED<br><br>DECLARATIONS | | |

CHANGES

**ADDITONAL NAMED INSURED**

It is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:

| Additional Named Insured | Retroactive Date |
|---|---|
| CCS Group Holdings, LLC | November 15, 2013 |
| CCS Intermediate Holdings, LLC, | November 15, 2013 |
| CCS-CHC Holdings, LLC | June 24, 2014 |
| Conmed Healthcare Management, Inc. | November 15, 2013 |
| Conmed Texas, Inc. | November 15, 2013 |
| Conmed, Inc. | November 15, 2013 |
| Correct Care Solutions, LLC | November 15, 2013 |
| Correctional Mental Health Services, LLC | November 15, 2014 |
| Physicians Network Association | November 15, 2014 |
| Salus LLC | February 20, 2014 |
| California CCS, P.A. | November 15, 2013 |
| CCS Arkansas Medical Services, P.A. | January 1, 2014 |
| CCS-Zoldessy Arkansas Dental Services, P.A. | January 1, 2014 |
| CCS Colorado Medical Services, P.C. | November 15, 2013 |

Case 3:21-cv-00675    Document 56-9    Filed 01/31/22    Page 45 of 132 PageID #: 2616

| Additional Named Insured | Retroactive Date |
|---|---|
| CCS Delaware Medical Services, P.A. | November 15, 2013 |
| CCS Florida Medical Services, P.A. | November 15, 2013 |
| CCS Georgia Medical Services, P.C. | November 15, 2013 |
| CCS Illinois Medical Services, S.C. | November 15, 2013 |
| CCS Indiana Medical Services, P.C. | November 15, 2013 |
| CCS-Kansas Physicians, P.A. | November 15, 2013 |
| CCS Kentucky Medical Services, P.S.C. | November 15, 2013 |
| CCS Michigan Medical Services, P.C. | November 15, 2013 |
| CCS Nebraska Medical Services, P.C. | November 15, 2013 |
| CCS-Kastre Nevada, P.C. | November 15, 2013 |
| CCS New Jersey Medical Services Professional Corporation | November 15, 2013 |
| New York Correct Care Solutions Medical Services, P.C. | November 15, 2013 |
| CCS North Carolina Medical Services, P.C. | November 15, 2013 |
| CCS South Carolina Medical Services, P.C. | November 15, 2013 |
| CCS South Dakota Medical Services, P.C. | November 15, 2013 |
| CCS  TN Physicians, P.C. | November 15, 2013 |
| CCS Texas Medical Services, P.A. | November 15, 2013 |
| CCS Vermont Medical Services, P.C. | November 15, 2013 |
| CCS Virginia Medical Services, P.C. | November 15, 2013 |
| CCS Wisconsin Medical Services, S.C. | November 15, 2013 |

_____
Authorized Representative

All other terms and conditions remain unchanged.

Case 3:21-cv-00675     Document 56-9     Filed 01/31/22     Page 46 of 132 PageID #: 2617



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT    PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART    CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section The Insured is amended by the addition of the following:

    Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.  **Additional Insured** means, whenever used in this endorsement, the following:

    Any organization that the Insured is required to include under the policy as an Additional Insured by a written contract or written agreement in effect during this policy period and executed prior to the occurrence of the Professional Personal Injury.

3.  Coverage provided to any Additional Insured as defined herein shall apply solely to an act, error or omission involving the Professional Services covered by this Coverage Part.

4.  The person or organization is only an Additional Insured with respect to liability arising out of the Professional Services performed by the Named Insured.

5.  No coverage shall be afforded to the above Additional Insured for Professional Personal Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

6.  In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written  contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

7. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy s terms and conditions. Failure to comply with this provision may, at the Company s option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured.  It is further agreed that where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT    GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section The Insured is amended by the addition of the following:

    O.  Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. **Additional Insured** means, whenever used in this endorsement, the following:

    Any organization that the Insured is required to include under the policy as an Additional Insured by a written contract or written agreement in effect during this policy period and executed prior to the Occurrence of the Bodily Injury or Property Damage.

3. Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence or offense involving the products, goods, operations or premises covered by this Coverage Part.

4. No coverage shall be afforded to the above Additional Insured for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

5. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

6 Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

7. The person or organization is only an Additional Insured with respect to liability arising out of the Specified Products, Goods, Operations or Premises of the Named Insured.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 49 of 132 PageID #: 2620

8.   In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy s terms and conditions. Failure to comply with this provision may, at the Company s option, result in the claim or suit being denied.

9.   The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10.  Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured.  It is further understood that, where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT    PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART    CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section The Insured is amended by the addition of the following:

    Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.  **Additional Insured** means, whenever used in this endorsement, the following:

    Board of County Commissioners of Frederick Maryland

    City of Newport News, VA

    Spectrum Health Systems, Inc.
    10 Mechanic Street, Suite 302
    Worcester, MA   01608

4.  Coverage provided to any Additional Insured as defined herein shall apply solely to an act, error or omission involving the Professional Services covered by this Coverage Part.

4.  The person or organization is only an Additional Insured with respect to liability arising out of the Professional Services performed by the Named Insured.

5.  No coverage shall be afforded to the above Additional Insured for Professional Personal Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 51 of 132 PageID #: 2622

6.    In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

7.    Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

8.    In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy s terms and conditions. Failure to comply with this provision may, at the Company s option, result in the claim or suit being denied.

9.    The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10.    Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured.  It is further agreed that where required by contract, the Company waives all rights of subrogation against the Additional Insured.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT    GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.   Section The Insured is amended by the addition of the following:

O.  Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.   **Additional Insured** means, whenever used in this endorsement, the following:

Board of County Commissioners of Frederick Maryland

City of Newport News, VA

Spectrum Health Systems, Inc.
10 Mechanic Street, Suite 302
Worcester, MA   01608

3.   Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence or offense involving the products, goods, operations or premises covered by this Coverage Part.

4.   No coverage shall be afforded to the above Additional Insured for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

5.   In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

6. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

7. The person or organization is only an Additional Insured with respect to liability arising out of the Specified Products, Goods, Operations or Premises of the Named Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy s terms and conditions. Failure to comply with this provision may, at the Company s option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured. It is further understood that, where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 54 of 132 PageID #: 2625

# EVANSTON INSURANCE COMPANY

**MARKEL®**

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:   SM904110<br>Endorsement No.:   26<br>Effective Date of Endorsement:  November 15, 2014 |

### ADDITIONAL INSURED ENDORSEMENT FOR LANDLORDS, SPONSORS OR LESSORS

This endorsement modifies insurance provided under the following:

**Specified Medical Professions General Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    Section The Insured is amended by the addition of the following:

Whenever used in this policy, the unqualified word Insured shall also mean Additional Insured.

2.    **Additional Insured**, whenever used in this endorsement, shall mean the following:

any landlord, owner, or property manager of the Designated Premises; or any tradeshow or convention sponsor or operator; or any lessor of equipment.

3.    **Designated Premises**, whenever used in this endorsement, shall mean the following:

all premises leased or rented to the Named Insured, premises temporarily occupied by the Named Insured for a tradeshow or convention and/or equipment leased to the Named Insured.

4.    Coverage provided to any Additional Insured as defined herein shall apply solely:

(a)    for Claims arising out of the Named Insured's occupancy of, or failure to maintain, the Designated Premises, but solely with respect the products, goods or operations of the Named Insured and only if liability for such Claim is determined to be solely the negligence or responsibility of the Named Insured; and

(b)    for Occurrences at, on or upon that portion of the Designated Premises which is occupied by the Named Insured and taking place during the term of the Named Insured s lease/occupancy of such Designated Premises.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) CIVIL MONETARY PENALTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART   - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART   - CLAIMS MADE
 COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.     The policy is amended by the addition of the following:

**SUPPLEMENTARY PAYMENTS**

**A.     HIPAA Civil Monetary Penalty Coverage:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as a Civil Monetary Penalty as a result of a HIPAA Civil Violation first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, arising out of any HIPAA Civil Violation committed or alleged to have been committed by the Insured or by any person for whose actions the Insured is legally responsible provided:

1.     such HIPAA Civil Violation:

**a.**     arises out of the conduct of the Insured's Professional Services; and

**b.**     is committed or alleged to have been committed during the Policy Period or on or after the Retroactive Date as stated in the Declarations; and

2.     prior to the effective date of this policy the Insured had no knowledge of such HIPAA Civil Violation or any fact, circumstance, situation or incident which may result in a HIPAA Civil Violation.

**Limits of Liability - HIPAA Civil Monetary Penalty**: The total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for each HIPAA Civil Violation first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to Each HIPAA Civil Violation. Subject to the foregoing, the total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for all HIPAA Civil Violations first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to All HIPAA Civil Violations.

1.     $250,000          Each HIPAA Civil Violation

2.     $250,000          All HIPAA Civil Violations

The Insured shall give the Company written notice as stated in the Declarations within ten (10) days of the Insured receiving a notice of HIPAA Civil Violation and in any event such written notice shall be provided prior to the Insured incurring any legal fees or legal expenses related to such matter.

The Company shall have the right and duty to defend and investigate any HIPAA Civil Violation to which coverage under this Coverage Part applies. The Company may make such investigation and settlement of any HIPAA Civil Violation as it deems expedient. Legal Expenses incurred in defending and investigating a HIPAA Civil Violation shall be a part of and shall not be in addition to the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. Such Legal Expenses shall reduce the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage and shall be applied against the Deductible. The Company shall have no obligation to pay any Civil Monetary Penalty or to defend or to continue to defend any HIPAA Civil Violation or to pay Legal Expenses for HIPAA Civil Violations after the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage have been exhausted.

Payments pursuant to this Section shall be in addition to the Limits of Liability stated in the Declarations.

**2.** Section Definitions is amended by the addition of the following:

**Civil Monetary Penalty** means a civil monetary penalty imposed by the Secretary of the United States Department of Health and Human Services, or his or her designee, under 42 U.S.C. §1320d-5 and 45 C.F.R. §160.404.

**Health Insurance Portability and Accountability Act ( HIPAA )** means the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

**HIPAA Civil Violation** means a notice received by the Insured for failure to comply with the HIPAA Standards for Privacy of Individually Identified Health Information (Privacy Rule) which protects the privacy of individual health information, including maintaining the confidentiality of information regarding medical services and limiting the release or use of such information in conformance with state or federal law, including any allegation that the Insured was negligent in hiring, training or supervising any Insured person who failed or is alleged to have failed to comply with the Privacy Rule.

**Legal Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any HIPAA Civil Violation for which coverage is afforded under this Coverage Part, including costs of investigation and costs of appeals; provided, however, Legal Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**3.** Section The Exclusions is amended by the addition of the following exclusions:

With respect to Supplementary Payments, HIPAA Civil Monetary Penalty Coverage, such coverage does not apply to any HIPAA Civil Violation:

**1.** based upon, arising out of, or in any way involving:

    **a.** any HIPAA Civil Violation or any claim, fact, circumstance, situation or incident which has or may result in a HIPAA Civil Violation that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

    **b.** any HIPAA Civil Violation, whenever occurring, which is logically or causally connected to another HIPAA Civil Violation by reason of any common fact, circumstance, situation, event or transaction that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

**2.** based upon, arising out of, or in any way involving any litigation, demand, investigation, administrative or regulatory proceeding or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to the inception date of this policy, or the same or any substantially similar HIPAA Civil Violation or any fact, circumstance, situation or incident underlying or alleged therein.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 57 of 132 PageID #: 2628

4.  Section Limits of Liability is amended by the addition of the following:

**Multiple Insureds, HIPAA Civil Violations and Protected Health Information Records Released:** The inclusion herein of more than one Insured in any HIPAA Civil Violation shall not operate to increase the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. More than one HIPAA Civil Violation arising out of a single release of protected health information or a series of related releases of protected health information shall be considered a single HIPAA Civil Violation. All such HIPAA Civil Violations, whenever made, shall be treated as a single HIPAA Civil Violation. Such single HIPAA Civil Violation, whenever made, shall be deemed to be first made on the date on which the earliest HIPAA Civil Violation arising out of such release of protected health information is made.

All other terms and conditions remain unchanged.

# EVANSTON INSURANCE COMPANY

MARKEL®

---

## Endorsement

---

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:      SM904110<br>Endorsement No.:      28<br>Effective Date of Endorsement:   November 15, 2014 |

---

### AMENDMENT OF CANCELLATION

**This endorsement modifies the COMMON POLICY CONDITIONS.**

In consideration of the premium paid, it is hereby understood and agreed that the second paragraph of Section Other Conditions A., Cancellation, is deleted and replaced with the following:

> This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective. However, if the policy is cancelled because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF THE INSURED B.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART    CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE
   COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the Specified Medical Professions Professional Liability Coverage Part, Section the Insured B. is deleted and replaced as follows:

   B.   any principal, partner, officer, director, Employee, Volunteer Worker, or Independent Contractor or any former principal, partner, officer, director, Employee, Volunteer Worker or Independent Contractor of the Named Insured, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such;

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF THE INSURED G

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the Specified Medical Professions General Liability Insurance Coverage Part, Section the Insured G. is deleted and replaced as follows:

G.   any Employee or Independent Contractor of the Named Insured, other than the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company, solely while acting within the scope of his/her duties as such;

provided, however, that coverage afforded to such Employee or Independent Contractor does not apply to:

1.   Bodily Injury, Personal Injury or Advertising Injury:

(i)   to the Named Insured, the Named Insured s partners, the Named Insured s members or to a co-Employee or co-Independent Contractor while in the course of his/her employment or performing duties related to the conduct of the Named Insured s business;

(ii)   to the spouse, child, parent, brother or sister of that co-Employee or co-Independent Contractor as a consequence of subparagraph 1.(i) hereinabove;

(iii)   for which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

(iv)   arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

2.   Property Damage to property:

(i)   owned, occupied or used by; or

(ii)   rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured or any Volunteer Worker, Employee or Independent Contractor of the Named Insured or any partner or member;

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GOOD SAMARITAN ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section DEFINITIONS, Professional Personal Injury, is amended by the addition of the following:

    4.  An act, error or omission in rendering a Good Samaritan Act.

2.  Section DEFINITIONS is amended by the addition of the following:

    **Good Samaritan Act** means emergency health care, emergency medical care, or emergency treatment provided to a patient without compensation or expectation of compensation at the scene of any emergency.

All other terms and conditions remain unchanged.

**MESM 2098 04 14**                                                            **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NOTICE OF CLAIM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERTIONS) COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that Specified Medical Professions Professional Liability Coverage Part, Section INSURING AGREEMENT**,** is amended to include the following:

A Claim or Suit shall be considered to be first made against the Insured at the earlier of the following:

    1.    When notice of Claim or suit is received by General Counsel or the Risk Management or Legal Department of the Insured; or,

    2.    When the General Counsel or the Risk Management or Legal Department of the Insured knew about or should reasonable have known a circumstance was likely to result in a Claim or suit; or,

    3.    When a Claim or suit is reported in writing directly to the Company or one of its agents.

It is further understood and agreed that Specified Medical Professions General Liability Insurance Coverage Part, Section Insuring Agreements is amended to include the following:

A Claim or Suit shall be considered to be first made against the Insured at the earlier of the following:

    1.    When notice of Claim or suit is received by General Counsel or the Risk Management or Legal Department of the Insured; or,

    2.    When the General Counsel or the Risk Management or Legal Department of the Insured knew about or should reasonable have known a circumstance was likely to result in a Claim or suit; or,

    3.    When a Claim or suit is reported in writing directly to the Company or one of its agents.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTILIZATION, QUALITY ASSURANCE, ACCREDITATION COMMITTEE AND PEER REVIEW ACTITIVIES ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

> The coverage afforded by this Coverage Part extends to Claims made against an Insured arising out an act, error or omission in services rendered as a member of a formal accreditation or similar professional board or committee, utilization review committee, quality assurance committee, peer review committee, or standards review board or committee  of which he/she is a member

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS MANAGEMENT EMERGENCY RESPONSE EXPENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

**Crisis Management Emergency Response Expense Reimbursement Limit:** $25,000

**2.** Section SUPPLEMENTARY PAYMENTS, Crisis Management Emergency Response Expense Reimbursement, is added as follows:

**SUPPLEMENTARY PAYMENTS**

**Crisis Management Emergency Response Expense Reimbursement:** In the event that:

    **a.** during the Policy Period, the Named Insured incurs Crisis Management Emergency Response Expenses with the prior written approval of the Company; and

    **b.** during the Policy Period or within six (6) months following the date the Crisis was initiated, the Named Insured submits a request for reimbursement of such Crisis Management Emergency Response Expenses by providing an itemized accounting of such Crisis Management Emergency Response Expenses, which is submitted in writing to the Company by completion of the Company's Crisis Management Emergency Response Expense Reimbursement Form which must be submitted to the Company addressed to Medical Professional Team, Markel Service Incorporated, 10 Parkway North, Deerfield, IL 60015 (Fax: (847) 572-6377);

the Company will reimburse the Named Insured for such Crisis Management Emergency Response Expenses up to the Crisis Management Emergency Response Expense Reimbursement Limit set forth in Item 1. of this endorsement.

Reimbursement to the Named Insured pursuant to this provision shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to the Deductible.

**3.** Section DEFINITIONS is amended by the addition of the following:

**Crisis** means the public announcement that an Incident occurred on the Named Insured s premises or at an event sponsored by the Named Insured.

**Crisis Management Emergency Response Expenses** mean those expense incurred by the Named Insured for services provided by a Crisis Management Firm. However, Crisis Management Emergency Response Expenses shall not include:

1. Compensation, fees, benefits, overhead, charges or expense of any person or organization included in the definition of Insured;

2. Any expenses that are payable on the Named Insured s behalf or reimbursable to the Named Insured under any other insurance, whether collectible or not;

3. Claim adjustment costs incurred by the Named Insured, such as fees incurred by retaining a public adjuster or appraiser.

**Crisis Management Firm** means any service provider requested by the Named Insured and approved by the Company to provide Crisis management emergency response services. The Company s approval shall not be unreasonably withheld.

**Incident** means an accident or other event, including the accidental discharge of pollutants, resulting in death or Serious Bodily Injury to three (3) or more persons.

**Serious Bodily Injury** means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RISK MANAGEMENT SERVICES
# EXPENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

> **Risk Management Services Expense Reimbursement Limit:** $25,000

**2.** Section SUPPLEMENTARY PAYMENTS, Risk Management Services Expense Reimbursement, is added as follows:

> **SUPPLEMENTARY PAYMENTS**
>
> **Risk Management Services Expense Reimbursement: In the event that:**
>
> **a.** during the Policy Period, the Named Insured incurs Risk Management Services Expense with the prior written approval of the Company; and
>
> **b.** during the Policy Period or within six (6) months following the expiration or earlier cancellation or termination of this policy, the Named Insured submits a request for reimbursement of such Risk Management Services Expense by providing an itemized accounting of such Risk Management Services Expense, which is submitted in writing to the Company by completion of the Company's Risk Management Service Expense Reimbursement Form which must be submitted to the Company addressed to Medical Professional Team, Markel Service Incorporated, 10 Parkway North, Deerfield, IL 60015 (Fax: (847) 572-6377);
>
> the Company will reimburse the Named Insured for such Risk Management Services Expense up to the Risk Management Services Expense Reimbursement Limit set forth in Item 1. of this endorsement.
>
> Reimbursement to the Named Insured pursuant to this provision shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to the Deductible.

**3.** Section DEFINITIONS is amended by the addition of the following:

> **Risk Management Services Expense** means expense incurred with the prior written approval of the Company for risk management seminars, publications, risk management training, onsite risk consulting and training, risk management audit services or other risk management related services provided by a Risk Management Services Firm and related to the risks of professional and/or general liability, data privacy and security. However, Risk Management Services Expense shall not include:
>
> **1.** Compensation, fees, benefits, overhead, charges or expense of any person or organization included in the definition of Insured;

MESM 2055 02 13

2. Any expenses that are payable on the Named Insured s behalf or reimbursable to the Named Insured under any other insurance, whether collectible or not;

3. Any amounts related to any existing or anticipated claim or suit, including but not limited to legal fees, fees of a public adjuster or appraiser, court costs, and expert witness fees;

4. Meal and beverages expenses, and travel expenses including but not limited to airfare, transportation, and lodging.

**Risk Management Services Firm** means any service provider requested by the Named Insured and approved by the Company to provide risk management services. The Company s approval shall not be unreasonably withheld.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AGGREGATE POLICY LIMIT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
   COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) COVERAGE PART   OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Item 5. of the Declarations, Limits of Liability, is amended by the addition of the following:

   C. Policy Aggregate: $15,000,000

2. The Specified Medical Professions Professional Liability Insurance Coverage Part is amended as follows:

   Section Limits of Liability is amended by the addition of the following:

   **Limit of Liability - Policy Aggregate:** Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy for Damages shall not exceed the Policy Aggregate Limit of Liability as stated in Item 5.C. of the Declarations.

3. The Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

   Section Limits of Liability is amended by the addition of the following:

   **Limit of Liability - Policy Aggregate:** Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy for Damages shall not exceed the Policy Aggregate Limit of Liability as stated in Item 5.C. of the Declarations.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675   Document 56-5   Filed 01/31/22   Page 69 of 132 PageID #: 2640



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS    PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that:

The Definitions, A. Damages, is deleted and replaced with the following:

A.   **Damages** means the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.

All other provisions of the policy shall remain unchanged.

Page 1 of 1

# EVANSTON INSURANCE COMPANY

**MARKEL®**

---

## Endorsement

---

| | | |
|---|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:<br>Endorsement No.:<br>Effective Date of Endorsement: | SM904110<br>38<br>November 15, 2014 |

---

### CHANGE IN CONTROL OF NAMED INSURED
#### (use with policy form SM-20001; SM-20003)

**This endorsement modifies the Common Policy Conditions.**

In consideration of the premium paid, it is hereby understood and agreed that Common Policy Conditions is amended by the addition of the following:

**Change in Control of Named Insured:** If after the inception date of the policy:

1. the Named Insured is merged into or consolidated with another organization such that it is not the surviving organization, or sells all or substantially all of its assets to another entity or person or group of entities and/or persons acting in concert;

2. another organization or person or group of organizations and/or persons acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting rights for the election or appointment of directors or trustees of the Named Insured, or acquires the voting rights of such an amount of such interest; or

3. a receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

no coverage shall be afforded under this policy unless:

(i) written notice of such event is given to the Company by the Named Insured as soon as practicable, but in no event later than thirty (30) days after such transaction or event, including complete details of the nature of such transaction or event and the other organization, person, group of organizations, persons acting in concert, receiver, liquidator, conservator, trustee and/or similar official appointed with respect to the Named Insured;

(ii) the Named Insured submits such additional information in connection therewith as the Company may deem necessary;

(iii) the Company, at its sole discretion, agrees to continue coverage by written endorsement to the policy; and

(iv) the Named Insured agrees to accept any special terms, conditions, exclusions or additional premium charge as may be required by the Company.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 71 of 132 PageID #: 2642



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WISCONSIN RESTRICTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that no coverage is provided for individual physicians or Certified Registered Nurse Anesthetists:

1. For whom the State of Wisconsin is his/her principal place of practice and who works more than 240 hours during the annual period July 1 through June 30 in the State of Wisconsin;

2. **a.** For whom the State of Wisconsin is his/her state of residence;

   **b.** For whom the State of Michigan is his/her principal place of practice;

   **c.** Who works more than 240 hours during the annual period of July 1 through June 30 in the State of Wisconsin, the State of Michigan or both states combined; and

   **d.** Performs more procedures in a hospital located in the State of Michigan that is an affiliate of a corporation organized under the laws of the State of Wisconsin and with its principal office and at least one hospital in the State of Wisconsin, than in any other hospital; or

3. For whom the State of Wisconsin is: (1) not his/her principal place of practice; or (2) for whom the State of Wisconsin is his/her principal place of practice and who works 240 or fewer hours during the annual period of July 1 through June 30 in the State of Wisconsin; and who elects to participate in the Wisconsin Health Care Liability and Injured Patients and Families Compensation Fund.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PATIENT COMPENSATION FUND RESTRICTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE
    COVERAEGE

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this coverage part shall not apply to any Claim because of Professional Personal Injury made against any insured who is a participant in the Patient Compensation Fund in the states of Indiana or Louisiana or in the Commonwealth of Pennsylvania.

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITION OF CONTRACTS ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium, paid, it is hereby understood and agreed:

In the event that a Named Insured enters into one or more new contracts during the policy period which require that the Named Insured provide Professional Services to a total additional inmate population in excess of 16,875 Average Daily Population, the Named Insured will provide the Company notice of such contract(s) and provide the Company with information needed to underwrite the additional risk associated with the contract(s). The Company reserves the right to charge additional premium on a pro rata basis for the additional risk associated with any such contract(s).

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CROSS LIABILITY SELF INSURED RETENTION ENDORSEMENT

In consideration of the premium paid, it is hereby agreed that in the event that a Claim is made and coverage is afforded under this policy and any of the Designated Policies on the schedule below or any policy issued as a renewal or replacement thereof, the Named Insured s total retention under all applicable policies shall not exceed $500,000.

**DESIGNATED POLICY**

| Carrier | Policy Number |
|---|---|
| Evanston Insurance Company | SM904115 |

All other terms and conditions remain unchanged.

**Manuscript**

# EVANSTON INSURANCE COMPANY

**MARKEL®**

---

## Endorsement

---

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.: SM904110<br>Endorsement No.: 43<br>Effective Date of Endorsement: November 15, 2014 |

---

### ADDITIONAL INSURED ENDORSEMENT FOR LANDLORDS, SPONSORS OR LESSORS

This endorsement modifies insurance provided under the following:

**Specified Medical Professions General Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section The Insured is amended by the addition of the following:

    Whenever used in this policy, the unqualified word Insured shall also mean Additional Insured.

2.  **Additional Insured**, whenever used in this endorsement, shall mean the following:

    General Electric Capital Corp
    Ares Capital Corp
    Credit Suisse AG.

3.  **Designated Premises**, whenever used in this endorsement, shall mean the following:

    all premises leased or rented to the Named Insured, premises temporarily occupied by the Named Insured for a tradeshow or convention and/or equipment leased to the Named Insured.

4.  Coverage provided to any Additional Insured as defined herein shall apply solely:

    (a)  for Claims arising out of the Named Insured's occupancy of, or failure to maintain, the Designated Premises, but solely with respect the products, goods or operations of the Named Insured and only if liability for such Claim is determined to be solely the negligence or responsibility of the Named Insured; and

    (b)  for Occurrences at, on or upon that portion of the Designated Premises which is occupied by the Named Insured and taking place during the term of the Named Insured s lease/occupancy of such Designated Premises.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675   Document 56-5   Filed 01/31/22   Page 76 of 132 PageID #: 2647

# EVANSTON INSURANCE COMPANY

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:     SM904110<br>Endorsement No.:     44<br>Effective Date of Endorsement:   November 15, 2014 |

### AMENDMENT OF EXCLUSION H.

This endorsement modifies insurance provided under the following:

**Specified Medical Professions Professional Liability Insurance Coverage Part**
**Specified Medical Professions General Liability (including Products and Completed Operations Liability) Occurrence Coverage**

In consideration of the premium paid, it is hereby understood and agreed that Section The Exclusions H. is deleted and replaced with the following:

> H.      liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft; provided, however, this exclusion shall not apply to any Claim arising out of the loading or unloading of any patient, person, inmate, client or resident of a healthcare facility receiving Professional Services;

All other provisions of the policy shall remain unchanged.

**Specified Medical Professions General Liability (Including Products and Completed Operations Liability)    Occurrence Coverage**

**Specified Medical Professions Professional Liability Policy Claims Made Coverage**

THERE ARE BOTH OCCURRENCE COVERAGES AND CLAIMS MADE COVERAGES IN THIS POLICY.

## COMMON POLICY CONDITIONS

In consideration of the premium paid, the undertaking of the Named Insured to pay the applicable Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

Various provisions in the Common Policy Conditions restrict coverage.

All Coverage Parts included in this policy are subject to the following conditions.

## DEFINITIONS

A.   **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include: (1) punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or attorney s fees or other  penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.

B.   **Employee** means any person while in the regular service of the Named Insured in the ordinary course of the Named Insured s business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

C.   **Leased Worker** means a person leased to the Named Insured by a labor leasing firm, under an agreement between the Named Insured and the labor leasing firm, to perform duties related to the conduct of the Named Insured s business and which are at the Insured s direction. Leased Worker does not include a Temporary Worker.

D.   **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

E.   **Professional Services** means those services described in Item. 4.B. of the Declarations.

F.   **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

G.   **Volunteer Worker** means any person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## CLAIMS

A. **Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

B. **False or Fraudulent Claims:** If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

## OTHER CONDITIONS

A. **Cancellation:** This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in Item 13. of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the policy is cancelled because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

B. **Representations:** By acceptance of this policy, the Insureds agree as follows:

1. that the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2. that the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

C. **Entire Agreement:** This policy, the Declarations, the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

D. **Changes:** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

E.    **Assignment of Interest:**  Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

F.    **Subrogation:**  In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person, firms or corporations included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such Insured.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the Insured in excess of any Deductible(s); third, to any loss and expense payments by any excess carrier on behalf of the Insured; fourth, to any loss and expense payments by any primary carrier on behalf of the Insured; and, last, to repayment of the Insured s Deductible.

G.    **Premium and Audit:**  Upon expiration of this policy, the Named Insured shall furnish to the Company or its underwriting manager, on behalf of the Company, a statement of the Named Insured's actual total premium base as stated in Item 8. of the Declarations for the Policy Period. The actual earned premium shall be computed thereon at the premium rate stated in Item 8. of the Declaration. If the actual earned premium is more than the deposit premium stated in Item 9. of the Declarations, the Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the Named Insured except that the Company shall be entitled to the minimum premium as stated in Item 9. of the Declarations. The Company or its underwriting manager, on behalf of the Company, shall have the right to require of the Named Insured, at any time within the said Policy Period or one (1) year thereafter, a sworn statement of the entire amount (or number) of such premium base during the whole or any specified part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured as respects such premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

H.    **Action Against the Company:**  No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the Claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

I.    **Authorization:**  By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

J.   **Service of Suit:**  Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company s rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Midwest, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.


**IN WITNESS WHEREOF**, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations by a duly authorized representative of the Company.


Secretary                                                    President

# NUCLEAR ENERGY LIABILITY
# EXCLUSION (BROAD FORM)

This exclusion modifies the provisions of this policy.

It is agreed that:

**1. This policy does not apply:**

    A.  Under any Liability Coverage, to **bodily** injury or property damage

        (1)  with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by **Nuclear** Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2)  resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C.  Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        (1)  the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        (2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        (3)  the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

**2. As used in this exclusion:**

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

    (a)  any nuclear reactor,

    (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25

grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

# Specified Medical Professions General Liability (Including Products and Completed Operations Liability) Coverage Part   Occurrence Coverage

THIS COVERAGE PART PROVIDES OCCURRENCE COVERAGE ONLY. PLEASE READ IT CAREFULLY.

## THE INSURED

The unqualified word  Insured , either in the singular or plural, means:

A.    the Named Insured specified in Item 1. of the Declarations;

B.    if the Named Insured specified in Item 1. the Declarations is an individual, the person so named and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

C.    if the Named Insured specified in Item 1. the Declarations is a partnership or joint venture, the partnership or joint venture so named and any partner or member thereof or his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

D.    if the Named Insured specified in Item 1. the Declarations is a limited liability company, the limited liability company so named, any manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

E.    if the Named Insured specified in Item 1. the Declarations is other than an individual, partnership, joint venture or limited liability company, the organization so designated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

F.    any person (other than an Employee of the Named Insured) or organization while acting as real estate manager for the Named Insured;

G.    any Employee of the Named Insured, other than the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company, solely while acting within the scope of his/her duties as such;

provided, however, that coverage afforded to such Employee does not apply to:

1.    Bodily Injury, Personal Injury or Advertising Injury:

(i)    to the Named Insured, the Named Insured s partners, the Named Insured s members or to a co-Employee while in the course of his/her employment or performing duties related to the conduct of the Named Insured s business;

(ii)   to the spouse, child, parent, brother or sister of that co-Employee as a consequence of subparagraph 1.(i) hereinabove;

(iii)  for which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

(iv)   arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

2.    Property Damage to property:

(i)    owned, occupied or used by; or

(ii)   rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured or any Volunteer Worker or Employee of the Named Insured or any partner or member;

H.   with respect to the operation, for the purpose of locomotion upon a public highway, of Mobile Equipment registered in the name of the Named Insured under any motor vehicle registration law:

   1.   an Employee of the Named Insured while operating any such equipment in the course of his/her employment by the Named Insured; or

   2.   any other person while operating with the permission of the Named Insured any such equipment and any person or organization legally responsible for such person but only with respect to liability arising out of such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

   provided, however, that no person or organization shall be an Insured under this paragraph H. with respect to:

   (i)   Bodily Injury to any co-Employee of such person operating any such equipment; or

   (ii)   Property Damage to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person described in subparagraph 2. hereinabove;

I.   any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

   provided, however that:

   1.   coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

   2.   Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

   3.   Coverage B. does not apply to Personal Injury or Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

J.   any supervisor, administrator, medical director, department head or head of medical staff solely while acting on behalf of the Named Insured and solely within the scope of his/her duties as such;

K.   any student enrolled in a training program in connection with the Named Insured s Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured s direction;

L.   any Volunteer Worker other than a healthcare provider of the Named Insured, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such and at the direction of the Named Insured;

M.   the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the Insured's estate.

N.   any member of the Named Insured s boards or committees, solely for conduct arising out of his/her duties as board or committee members and any person who executes orders from the Named Insured s boards or committees solely while in the course and scope of executing such orders.

This Coverage Part does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the conduct of any partnership, joint venture or limited liability company which is not named in the Declarations as a Named Insured.

## INSURING AGREEMENTS

A.   **Coverage A. - Bodily Injury and Property Damage Liability:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.A.1. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision,

for Bodily Injury or Property Damage to which this Coverage Part applies caused by an Occurrence, provided:

1. the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period; and

2. such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 4.A. of the Declarations.

B. **Coverage B. - Personal Injury and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.A.2. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Personal Injury or Advertising Injury to which this Coverage Part applies caused by an offense, provided:

1. the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period; and

2. such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 4.A. of the Declarations.

C. **Coverage C.   Medical Payments**

The Company will pay medical expenses for Bodily Injury caused by an accident:

1. On premises the Named Insured owns or rents;

2. On ways next to premises the Named Insured owns or rents; or

3. Because of the Named Insured s operations;

provided that:

(i) The accident takes place in the United States of America, its territories or possessions or Puerto Rico and during the Policy Period;

(ii) The expenses are incurred and reported to the Company within one (1) year of the date of the accident; and

(iii) The injured person submits to examination, at the Company s expense, by physicians of the Company s choice as often as the Company reasonably requires.

The Company will make these payments regardless of fault. The Company will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices, and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## DEFINITIONS

A. **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement.

B. **Advertising Injury** means injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person s or organization s products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured s Advertisement.

C.   **Aircraft Products** means any aircraft whether or not heavier than air (including spacecraft and missiles) and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of any aircraft product.

D.   **Automobile** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any attached machinery or equipment); provided, however, it does not include Mobile Equipment.

E.   **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

F.   **Claim** means a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this Coverage Part and shall include the service of suit or institution of arbitration proceedings against the Insured.

G.   **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

1.   liability to such party for, or the cost of, that party s defense has also been assumed in the same Insured Contract; and

2.   such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

H.   **Completed Operations Hazard** means Bodily Injury and Property Damage arising out of only those operations specified in Item 4.A. of the Declarations, after such operations have been completed or abandoned by the Insured and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products, goods and operations specified in Item 4.A. of the Declarations and the providing or failure to provide instructions related thereto. Operations shall be deemed completed at the earliest of the following times:

1.   when all operations to be performed by or on behalf of the Insured under a contract with the Insured have been completed;

2.   when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed; or

3.   when the portion of the work out of which the Bodily Injury or Property Damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement, but which are otherwise complete, shall be deemed complete.

The Completed Operations Hazard does not include Bodily Injury or Property Damage arising out of:

(i) operations in connection with the transportation of property, unless the Bodily Injury or Property Damage arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

(ii) The existence of tools, uninstalled equipment or abandoned or unused materials.

I. **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

J. **Insured Contract** means:

1. a contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Insured or temporarily occupied by the Insured with the permission of the owner shall not be an Insured Contract;

2. any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

3. an obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

4. a sidetrack agreement;

5. an elevator maintenance agreement; or

6. that part of any other contract or agreement pertaining to the Named Insured s business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party; provided, however, Insured Contract shall not include that part of any contract or agreement:

    (i) that indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    (ii) that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a) preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

        (b) supervision, inspection, failure to supervise or inspect or architectural, engineering or surveying services; or

    (iii) under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in subparagraph (ii) hereinabove or any supervision, inspection, failure to supervise or inspect or architectural, engineering or survey services.

K. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, on which are permanently mounted:

    (i) power cranes, shovels, loaders, diggers, or drills; or

    (ii) road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(i) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(ii) cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Automobiles:

    (i) equipment designed primarily for:

        (a) snow removal;

        (b) road maintenance, but not construction or resurfacing; or

        (c) street cleaning;

    (ii) cherry pickers and similar devices mounted on Automobile or truck chassis and used to raise or lower workers; and

    (iii) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

L. **Named Insured's Products** means goods or products, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured s name, including any container thereof (other than a vehicle); provided, however, that Named Insured s Products shall not include a vending machine or any other property rented to or located for use of others but not sold.

M. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

N. **Personal Injury** means injury arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment or malicious prosecution;

2. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor; or

3. oral or written publication of material that violates a person s right of privacy.

O. **Products Hazard** means Bodily Injury or Property Damage arising out of only those products or goods specified in Item 4.A. of the Declarations which are the Named Insured's Products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products or goods specified in Item 4.A. of the Declarations and the providing or failure to provide instructions related thereto, occurring away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

P. **Property Damage** means:

1. physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2. loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence.

## THE EXCLUSIONS

A. With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to:

1. any Claim based upon or arising out of:

    (i) the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

(a) the Products Hazard or Completed Operations Hazard;

(b) damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured;

(ii) Bodily Injury or Property Damage arising out of the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

(a) at or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

(b) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

(iii) any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement;

Pollutants means any solid, liquid, gaseous or thermal irritants or contaminants including, smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. any Claim based upon or arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

3. any Claim based upon or arising out of the Insured s activities as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

4. any Claim based upon or arising out of any unlawful discrimination by any Insured; or

5. any Claim brought under any other Coverage Part of this policy.

B. With respect to Coverage A., this Coverage Part does not apply to:

1. any Claim based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

2. any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

(i) that the Insured would have in the absence of the contract or agreement; or

(ii) assumed in a contract or agreement that is an Insured Contract, provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

3. any Claim based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

(i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

(ii) a defect, deficiency, inadequacy or dangerous condition in the products, goods or operations of the Named Insured;

provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products

or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

4. any Claim based upon or arising out of Property Damage to the Named Insured's Products arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

5. any Claim for damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

    (i) any Automobile, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

    (ii) any other Automobile, aircraft or watercraft operated by any person in the course of his/her employment or activities on behalf of the Named Insured;

    provided, however, this exclusion shall not apply to:

    (a) the parking of an Automobile on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Automobile is not owned by or rented or loaned to any Insured;

    (b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

    (c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

7. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of:

    (i) the ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

    (ii) the operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

8. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Automobile owned or operated by or rented or loaned to any Insured;

9. any Claim based upon or arising out of Property Damage to:

    (i) property owned, occupied or rented to the Insured;

    (ii) property loaned to the Insured;

    (iii) personal property in the care, custody or control of the Insured;

    (iv) that particular part of any property,

        (a) upon which operations are being performed by or on behalf of the Insured if the Property Damage arises out of those operations; or

        (b) the restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Completed Operations Hazard or the Products Hazard;

(v) premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

(vi) to work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Completed Operations Hazard;

provided, however, Items (ii), (iii), and (iv) of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

10. any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

11. any Claim based upon or arising out of Bodily Injury to any Employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured s business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the Employee;

this exclusion shall apply:

(i) whether the Insured may be liable as an employer or in any other capacity; and

(ii) to any obligation to share damages with or repay someone else who must pay damages because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

12. any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

(i) causing or contributing to the intoxication of any person;

(ii) the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

(iii) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

provided, however, this exclusion shall apply only if the Named Insured:

(a) manufactures or distributes alcoholic beverages;

(b) serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

(c) serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. any Claim based upon or arising out of Bodily Injury or Property Damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing with respect to liability assumed by the Insured under an Insured Contract;

14. any Claim based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

15. any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

16. any Claim for Bodily Injury arising out of Personal Injury or Advertising Injury.

17. any Claim based upon or arising out of Bodily Injury sustained by any patient, person or resident of a healthcare facility receiving Professional Services of any Insured or any such Claim brought

by or on behalf of the spouse, child, parent, grandparent, brother, sister or partner of such patient, person or resident of a healthcare facility.

Exclusions 3. through 16. shall not apply to damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability - Damage to Premises.

C. With respect to Coverage B., this Coverage Part does not apply to:

1. any Claim based upon or arising out of Personal Injury or Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury or Advertising Injury;

2. any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity;

3. Personal Injury or Adverting Injury arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period.

4. any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5. any Claim based upon or arising out of Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6. any Claim based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7. any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;

8. any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

9. any Advertising Injury committed by any Insured whose business is:

    (i) advertising, broadcasting, publishing, or telecasting;

    (ii) designing or determining content for websites for others; or

    (iii) an Internet access, content search or service provider;

10. any Claim based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another s advertising idea in the Named Insured s Advertisement;

11. any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured s Advertisement; or

12. any Claim based upon or arising out of the refusal to employ, terminate employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges.

D. With respect to Coverage C., the Company will not pay any expenses for Bodily Injury:

1. to any Insured;

2. to a person hired to do work for or on behalf of the Insured or a tenant of the Named Insured

3. to a person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

4. to a person, whether or not an Employee of an Insured, if benefits for the Bodily Injury are payable or must be provided under any workers compensation or disability benefits law or under any similar law;

5. to a person injured while taking part in athletics;

6. included in the Products Hazard or the Completed Operations Hazard;

7. excluded under Coverage A.;

8. to any patient, person or resident of a healthcare facility receiving Professional Services; or

9. due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## LIMITS OF LIABILITY

A. **Coverage A. - Limit of Liability-Each Occurrence:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims because of all Bodily Injury or Property Damage sustained by one or more persons or entities as the result of any one Occurrence shall not exceed the Limit of Liability stated in Item 5.A.1.(i) of the Declarations as applicable to Each Occurrence.

B. **Coverage A. - Limit of Liability-Damage to Premises:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A - Limit of Liability Each Occurrence, because of Property Damage to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 5.A.1.(ii) of the Declarations as applicable to Damage to Premises Any One Premises.

C. **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage B. because of all Personal Injury and all Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 5.A.2. of the Declarations as applicable to Each Person or Organization.

D. **Coverage C. Medical Payments: Limit of Liability Each Injured Person:** The total liability of the Company for medical expenses under Coverage C. because of Bodily Injury sustained by any one person shall not exceed the Limit of Liability stated in Item 5.A.3.(i) as applicable to Each Injured Person.

E. **Limit of Liability Aggregate:** Subject to the above Limits of Liability A., B., C. and D., the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 5.A.4. of the Declarations for all Damages and Claim Expenses for Coverage A. and B. and all medical expenses for Coverage C.

F. **Deductible:** The applicable Deductible amount stated in Item 6.A. of the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence or each person or organization shall not exceed the applicable Deductible amount stated in Item 6.A. of the Declarations. Solely for the purpose of determining the Company's limit of liability, the applicable Deductible amount shall be deemed to be applied first to the Damages.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

G. **Multiple Insureds, Claims, Occurrences, Offenses and Claimants:** The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than

one person or organization shall not operate to increase the Limits of Liability stated in Item 5.A. of the Declarations.

More than one Bodily Injury and/or Property Damage, including any continuation, change or resumption of such Bodily Injury or Property Damage, arising out of a single Occurrence shall be considered a single Occurrence. All such Bodily Injury or Property Damage shall be deemed to take place on the date on which the earliest Bodily Injury or Property Damage happens.

All Damages and Claim Expenses sustained because of one or more Personal Injury, Advertising Injury and/or offense by any one person or organization shall be subject to the Limit of Liability stated in Item 5.A.2. of the Declarations as applicable to Each Person or Organization. All such Personal Injury or Advertising Injury shall be deemed to take place on the date on which the earliest Personal Injury or Advertising Injury happens.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any Claim to which Coverage A. and/or B. under this Coverage Part applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 5.A. of the Declarations have been exhausted.

## CLAIM REPORTING PROVISION

The Insured shall give to the Company written notice as stated in Item 13. of the Declarations as soon as practicable of any Occurrence or offense that happens during the Policy Period which may give rise to a Claim against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

## OTHER CONDITIONS

A. **Prevention of Loss:**  In the event of an Occurrence or an offense involving the products, goods, operations or premises covered by this Coverage Part, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage, Personal Injury or Advertising Injury from arising out of the same or similar conditions.

B. **Other Insurance:** With respect to Coverages A. and B., this insurance shall be in excess of the applicable Deductible stated in Item 6.A. of the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Coverage Part.

C. **Inspection:**  Any of the Company's authorized representatives shall have the right and opportunity, whenever the Company so desires, to inspect at any reasonable time the Insured's products, goods, operations and premises, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof. The Insured agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

D. **Reporting of Changes in Products, Goods, Operations and Premises:**  The premium charged for this Coverage Part is based on those products, goods, operations and premises identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those products, goods, operations or premises as described below, and the Company shall have the right to adjust the

premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

1.  any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

2.  any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

3.  any change in operations which are not accurately described by the description as specified in Item 4A. of the Declarations.

# Specified Medical Professions Professional Liability Coverage Part Claims Made Coverage

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE ONLY. PLEASE READ IT CAREFULLY.

## THE INSURED

The unqualified word  Insured , either in the singular or plural, means:

A.   the Named Insured specified in Item 1. of the Declarations;

B.   any principal, partner, officer, director, Employee, Volunteer Worker or any former principal, partner, officer, director, Employee, or Volunteer Worker of the Named Insured, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such; provided, however, this insurance shall not apply to any Claim made against any Insured who is a physician, surgeon or dentist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon or dentist;

C.   if the Named Insured specified in Item 1. of the Declarations is a limited liability company, any manager thereof or any past member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of the limited liability company and any member thereof or any past member thereof, but only with respect to the conduct of the business of the limited liability company;

D.   any medical director solely while acting on behalf of the Named Insured and solely within the scope of his/her Administrative Duties as such; provided, however, this insurance shall not apply to any Claim made against any medical director who is a physician, surgeon or dentist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon or dentist;

E.   any student enrolled in a training program in connection with the Named Insured s Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured s direction;

F.   the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the Insured's estate.

## INSURING AGREEMENT

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.B. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to the Section A., Claim Reporting Provision, for Professional Personal Injury to which this Coverage Part applies by reason of any act, error or omission in Professional Services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's Professional Services provided:

A.   the act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

B.   prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may result in a Claim under this Coverage Part.

## DEFINITIONS

A.   **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Named Insured; provided, however, Administrative Duties shall not include:

1.  rendering or failure to render to a patient, person or resident of a healthcare facility Professional Services by a medical director which results in Professional Personal Injury; or

2.  rendering or failure to render patient specific medical direction via telecommunications to other healthcare professionals.

B.  **Claim** means a demand received by the Insured for monetary damages or services and shall include the service of suit or institution of arbitration proceedings against the Insured.

C.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

D.  **Professional Personal Injury** means:

1.  any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, person, or resident of a healthcare facility receiving Professional Services;

2.  false arrest, detention or imprisonment, or malicious prosecution except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification; or

3.  the publication or utterance of a libel or slander or a publication or an utterance in violation of a patient s right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification.

## THE EXCLUSIONS

This Coverage Part does not apply to:

A.  any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions intentionally committed by or at the direction of the Insured;

B.  liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner, trustee or Employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, business enterprise, or any governmental body, sub-division or agency not named as an Insured under this policy unless such activities are disclosed in the application and listed in Item 11. of the Declarations;

C.  any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

D.  Professional Personal Injury to, or sickness, disease or death of any Employee of the Insured arising out of, and in the course of his/her employment by the Insured;

E.  any Claim based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

F.  any Claim based upon or arising out of any unlawful discrimination by any Insured;

G.  injury arising out of the performance of a criminal act or caused by a person while under the influence of intoxicants or narcotics;

H.   liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft;

I.   any Claim based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature; provided, however, the Company shall defend the Named Insured for such a Claim for the strictly vicarious liability of the Named Insured, unless a manager, supervisor, officer, director, trustee or partner of the Named Insured:

   1.   knew or should have known about the sexual act allegedly committed by the Insured but failed to prevent or stop it; or

   2.   knew or should have known that the Insured who allegedly committed the sexual act had a prior history of such sexual misconduct act;

   The Company shall not pay Damages on behalf of the Named Insured for such a Claim.

J.   any Claim arising out of general liability or products liability;

K.   any Claim made against the Insured:

   1.   by any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an Insured or parent company or any subsidiary, division or affiliated organization; or

   2.   by or on behalf of any Insured under this policy; provided, however, this exclusion shall not apply to any Claim made against any Insured arising out of the rendering of or failure to render Professional Services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, if such Insured is a patient or client of the Insured;

L.   any Claim based upon or arising out of any employment dispute;

M.   any Claim based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of advertisement;

N.   any Claim based upon or arising out of the dispensing of or the use of any drug or device whose approval for use was withdrawn by the Food and Drug Administration (FDA) at the time such drug or device was used or dispensed;

O.   any Claim based upon or arising out of any actual or alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law;

P.   any Claim based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.;

Q.   any Claim based upon or arising out of any allegations of price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship, or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

R.   any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an Insured by the United States Department of Health & Human Services (HHS) or by an utilization or quality review organization under contract with HHS; provided, however, this exclusion shall not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act; or

S.   any Claim brought under any other Coverage Part of this policy.

## LIMITS OF LIABILITY

A.  **Limit of Liability-Each Claim:**  The total liability of the Company for the combined total of Damages and Claim Expenses for each Claim first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in Item 5.B. of the Declarations as applicable to Each Claim.

B.  **Limit of Liability - Aggregate:**  Subject to the above Limits of Liability A., the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 5.B. of the Declarations for all Damages and Claim Expenses arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised.

C.  **Limit of Liability - Reduction for Refusal to Settle:**  The Company shall not settle any Claim without the consent of the Insured. If, however, the Insured is a partnership, professional association, professional corporation or limited liability company, the written consent of an Insured who was formerly but is no longer a member of the partnership, professional association or limited liability company or director, officer, stockholder or Employee of a professional corporation will not be required, provided the written consent of the corporate directors, officers, stockholders or Employees of a professional corporation, or their duly appointed representatives, has been obtained. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled including Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the above Limits of Liability A. and B.

D.  **Deductible:**  The Deductible amount stated in Item 6.B. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in Item 6.B. of the Declarations. Solely for the purpose of determining the Company's limit of liability, the Deductible amount shall be deemed to be applied first to the Damages.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

E.  **Multiple Insureds, Claims and Claimants:**  The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.B. of the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies. Subject to Section Limits of Liability C., the Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.B. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 5.B. of the Declarations have been exhausted.

## CLAIMS

A. **Claim Reporting Provision:** The Insured shall give to the Company written notice as stated in Item 13. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B. **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific act, error or omission in Professional Services which may result in a Claim within the scope of the coverage for this Coverage Part, then the Insured may provide written notice as stated in Item 13. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error or omission in Professional Services shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. the description of the specific act, error or omission;

2. the date on which such act, error or omission took place;

3. the injury or damage which has or may result from such act, error or omission;

4. the identity of any injured persons; and

5. the circumstances by which the Insured first became aware of such act, error or omission.

## EXTENDED REPORTING PERIOD

A. If the Named Insured nonrenews this policy or cancels this policy pursuant to Common Policy Conditions, Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Common Policy Conditions, Section Other Conditions A., Cancellation, for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in Item 10. of the Declarations of the annual deposit premium for the policy, subject to adjustment as per Common Policy Conditions, Section Other Conditions G. Premium and Audit, but in no event less than the percentage set forth in Item 10. of the Declarations of the annual minimum premium for the policy to extend the coverage granted under this Coverage Part, to Claims first made against the Insured during the period of months stated in Item 10. of the Declarations; as elected by the Named Insured, and reported to the Company pursuant to, Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any act, error or omission in Professional Services rendered on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this policy. This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any Insured's license or right to practice his/her profession is revoked, suspended or surrendered.

B.    As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:  (1) all Deductibles when due; (2) all premiums due for the Policy Period; and (3) all premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement must have been paid.

The right to purchase the Extended Reporting Period shall terminate unless a written notice as stated in Item 13. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of election and payment of additional premium are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.    The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

D.    In the event of the purchase of the Extended Reporting Period the entire premium therefrom shall be fully earned at its commencement.

E.    The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 5B. of the Declarations.

## OTHER INSURANCE

This insurance shall be in excess of the Deductible stated in Item 6.B. of the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this Coverage Part.

# POLICY CHANGES

Policy Change
Number 45

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>January 1, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |
| COVERAGE PARTS AFFECTED<br>DECLARATIONS | | |

CHANGES

**ADDITONAL NAMED INSURED**

In consideration of the additional premium of $1,727,292, it is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:

| Additional Named Insured | Retroactive Date |
|---|---|
| Correctional Healthcare Companies fka CHC Companies, LTD | January 1, 2015 |
| Correctional Healthcare Companies | January 1, 2015 |
| Judicial Correction Services, Inc. | January 1, 2015 |
| Jessamine Healthcare Holdings, LLC | January 1, 2015 |
| Jessamine Healthcare. Inc | January 1, 2015 |
| Correctional Healthcare Holding Company, Inc. fka Jessamine-Peyton Purchaser, Inc. | January 1, 2015 |
| Correctional Healthcare Holdings, Inc. | January 1, 2015 |
| Correctional Healthcare Management, Inc. | January 1, 2015 |
| Health Professionals, Ltd | January 1, 2015 |
| Correctional Healthcare Management of Oklahoma, Inc. | January 1, 2015 |
| Correctional Staffing Solutions, Inc. | January 1, 2015 |
| CHC Pharmacy Services, Inc | January 1, 2015 |
| Correctional Healthcare Physicians, P.C. | January 1, 2015 |
| Correctional Healthcare Physicians II, P.C. | January 1, 2015 |
| Correctional Healthcare Physicians III, P.C. | January 1, 2015 |

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

| | |
|---|---|
| Justice Services Holding, LLC | January 1, 2015 |
| Hase and Associates System, Inc. | January 1, 2015 |
| Physicians Network Association, Inc. | January 1, 2015 |
| PNA of New Mexico, Inc. | January 1, 2015 |
| PNA of Arizona, Inc. | January 1, 2015 |
| CAF Enterprises, Inc. | January 1, 2015 |
| CHC Healthcare Inc. | January 1, 2015 |
| Correctional Healthcare Dentists, P.C. | January 1, 2015 |
| Darlene L. Clark, DMD, P.C. dba Correctional Healthcare Dentists II, P.C. | January 1, 2015 |
| Correctional Healthcare Dentists III, P.C. | January 1, 2015 |
| Joseph E. Hancock, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Lawrence I. Wolk, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Health Professionals, LTD | January 1, 2015 |
| Advanced Counseling Center, LLC | January 1, 2015 |
| Secure Care, Inc. | January 1, 2015 |
| CHC Companies, Inc. fka Correctional Healthcare Companies, Inc | January 1, 2015 |
| Correctional Healthcare Consultants, Inc. | January 1, 2015 |
| Correctional Mental Health Professionals I, P.C. | January 1, 2015 |
| Raymond K. Herr, M.D., A Professional Medical Corporation d/b/a Correctional Healthcare Physicians IV, P.C. | January 1, 2015 |

Tennessee Premium: $1,727,292.00

Fees: n/a

Surplus Lines Tax: $86,364.60

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

Surplus Lines Broker:

Name: Kendra S Schaendorf

Address: PO Box 111, Grand Rapids, MI 49501-0111

Authorized Representative

All other terms and conditions remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 46

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>March 1, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE SERVICES,<br>LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE  PART
CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
OPERATIONS LIABILITY)   OCCURRENCE COVERAGE

CHANGES

ADDITION OF ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that SELF-INSURED RETENTION
ENDORSEMENT, is being added as attached effective as of the date stated above.

This insurance contract is with an insurer not licensed to
transact insurance in this state and is issued and delivered as
a surplus line coverage pursuant to the Tennessee insurance
statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

**IL 12 01 11 85**          Copyright, Insurance Services Office, Inc., 1983          **Page 1 of 1**
                  Copyright, ISO Commercial Risk Services, Inc., 1983



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
 COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
 OPERATIONS LIABILITY) COVERAGE PART   OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended but only with respects to the Valuscia County Contract as follows:

1.  Item 6. of the Declarations is deleted and replaced as follows:

| | | | |
|---|---|---|---|
| 6. | | **SELF-INSURED RETENTION:** | |
| | A. | For General Liability: | |
| | | 1. | For Coverage A (Bodily Injury and Property Damage Liability): |
| | | | Each Occurrence: $25,000 |
| | | 2. | For Coverage B (Personal Injury and Advertising Injury Liability): |
| | | | Each Person or Organization: $25,000 |
| | B. | For Professional Liability: | |
| | | | Each Claim: $25,000 |

2.  Whenever used in the Specified Medical Professions Professional Liability Insurance Coverage Part and the Specified Medical Professions General Liability Insurance Coverage Part, the word Deductible  is deleted and replaced with  Self-Insured Retention .

3.  Specified Medical Professions Professional Liability Insurance Conversation Part, Section Limits of Liability D., Deductible, is deleted and replaced with the following:
    **D. Self-Insured Retention:**  The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

    Such amounts shall, upon written demand by the Company, be paid by the Named Insured, CCS Intermediate Holdings, LLC (the  Named Insured ) within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

At its sole discretion, the Company reserves the right to independently audit the Insured s claim files and records for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured s right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured s inability to pay shall not relieve the Insured of its obligations hereunder.

4. Specified Medical Professions Professional Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

**Defense, Investigation and Settlement of Claims:** It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, its own expense to defend, investigate and settle any Claim against any Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company s opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 107 of 132 PageID #: 2678

    **a.** providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

    **b.** providing any other reasonable information requested;

    **c.** providing fully itemized billing on a periodic basis; and

    **d.** cooperating with the Company and the Insured in resolving any and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

Upon exhaustion of the Self-Insured Retention, the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

**5.** Specified Medical Professions Professional Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

    **A.** **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

        **1.** in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

        **2.** which the Insured s estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

        **3.** which involves:

            **a.** Death;

            **b.** Brain or spinal injury;

            **c.** Amputation;

            **d.** Loss of use of arm, leg, sight or hearing;

            **e.** Severe burns;

            **f.** Serious loss of use of any bodily function

            **g.** Paralysis;

            **h.** Reflex Sympathy Dystrophy;

            **j.** Complex Regional Pain Syndrome;

            **k.** Multiple factures, multiple areas;

            **l.** Sexual molestation; or

            **m.** Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the Self-Insured Retention. Quarterly bordereaux reports containing the Claimant s name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.

6.  Specified Medical Professions General Liability Insurance Coverage Part, Section Limits of Liability F., Deductible, is deleted and replaced with the following:

    **F.  Self-Insured Retention:** The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

    Such amounts shall, upon written demand by the Company, be paid by Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

    The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

    At its sole discretion, the Company reserves the right to independently audit the Insured s claim files and records for any Claim that is within the Self-Insured Retention.

    Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured s right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured s inability to pay shall not relieve the Insured of its obligations hereunder.

7.  Specified Medical Professions General Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

    **A.  Defense, Investigation and Settlement of Claims:** It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, at its own expense to defend, investigate and settle any Claim against an Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

    Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company s opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

    Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

    1.  Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

    2.  The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the

Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

**a.** providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** providing any other reasonable information requested;

**c.** providing fully itemized billing on a periodic basis; and

**d.** cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

Upon exhaustion of the Self-Insured Retention the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

**8.** Specified Medical Professions General Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

**A.** **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

**1.** in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

**2.** which the Insured s estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

**3.** which involves:

    **a.** Death;

    **b.** Brain or spinal injury;

    **c.** Amputation;

    **d.** Loss of use of arm, leg, sight or hearing;

    **e.** Severe burns;

    **f.** Serious loss of use of any bodily function

    **g.** Paralysis;

    **h.** Reflex Sympathy Dystrophy;

    **j.** Complex Regional Pain Syndrome;

    **k.** Multiple factures, multiple areas;

    **l.** Sexual molestation; or

    **m.** Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

Case 3:21-cv-00675   Document 56-5   Filed 01/31/22   Page 110 of 132 PageID #: 2681

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the self-insured retention. Quarterly bordereaux reports containing the Claimant s name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.
discrepancies;

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 48

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>March 31, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE SERVICES,<br>LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
DECLARATIONS
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE  PART
CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
OPERATIONS LIABILITY)   OCCURRENCE COVERAGE

CHANGES

**ADDITION OF ENDORSEMENT**

In consideration of the premium paid, it is hereby understood and agreed that the following three endorsements
are being added as attached effective as of the date stated above:
    Additional Named Insured
    Pesticide or Herbicide Applicator Coverage   General Liability Coverage Only
    Special Notice of Cancellation

This insurance contract is with an insurer not licensed to
transact insurance in this state and is issued and delivered as
a surplus line coverage pursuant to the Tennessee insurance
statutes.
Surplus Lines Broker:
Name:      Kendra S Schaendorf
Address:  PO Box 111, Grand Rapids, MI 49501-0111

_____
Authorized Representative

All other terms and conditions remain unchanged.

**IL 12 01 11 85**          Copyright, Insurance Services Office, Inc., 1983          **Page 1 of 1**
                         Copyright, ISO Commercial Risk Services, Inc., 1983

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 49

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>March 31, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |
| COVERAGE PARTS AFFECTED<br>DECLARATIONS | | |

## CHANGES
### ADDITONAL NAMED INSURED

In consideration of the additional premium of $66,773, it is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:

| Additional Named Insured | Retroactive Date |
|---|---|
| Correct Care, LLC f/k/a Geo Care Entities | January 1, 2015 |
| Geo Care, LLC and its subsidiaries | December 31, 2012 |
| Geo Care, LLC | December 26, 2012 |
| Geo Care, Inc. | December 31, 2012 |
| Geo Care of South Carolina, LLC | December 31, 2012 |
| Correct Care Holdings, LLC f/k/a GEO Care Holdings, LLC | August 26, 2014 |
| Correct Care of South Carolina, LLC f/k/a GEO Care of South Carolina, LLC | August 26, 2014 |
| Correct Care, LLC f/k/a GEO Care, LLC | August 26, 2014 |
| Just Care, LLC | December 31, 2012 |
| Just Care, Inc. d/b/a Columbia Regional Care Center | December 31, 2012 |
| Florida Civil Commitment Center | December 31, 2012 |
| Montgomery County Mental Health Treatment Facility | December 31, 2012 |
| Palm Beach County Jail | December 31, 2012 |
| South Florida Evaluation and Treatment Center | December 31, 2012 |
| South Florida State Hospital Financing Corporation | December 31, 2012 |
| Treasure Coast Forensic Treatment Center | December 31, 2012 |
| Arapahoe County Detention Facility | November 4, 2013 |

Case 3:21-cv-00675   Document 56-5   Filed 01/31/22   Page 113 of 132 PageID #: 2684

| | |
|---|---|
| Justice Services Holding, LLC | January 1, 2015 |
| Hase and Associates System, Inc. | January 1, 2015 |
| Physicians Network Association, Inc. | January 1, 2015 |
| PNA of New Mexico, Inc. | January 1, 2015 |
| PNA of Arizona, Inc. | January 1, 2015 |
| CAF Enterprises, Inc. | January 1, 2015 |
| CHC Healthcare Inc. | January 1, 2015 |
| Correctional Healthcare Dentists, P.C. | January 1, 2015 |
| Darlene L. Clark, DMD, P.C. dba Correctional Healthcare Dentists II, P.C. | January 1, 2015 |
| Correctional Healthcare Dentists III, P.C. | January 1, 2015 |
| Joseph E. Hancock, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Lawrence I. Wolk, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Health Professionals, LTD | January 1, 2015 |
| Advanced Counseling Center, LLC | January 1, 2015 |
| Secure Care, Inc. | January 1, 2015 |
| CHC Companies, Inc. fka Correctional Healthcare Companies, Inc | January 1, 2015 |
| Correctional Healthcare Consultants, Inc. | January 1, 2015 |
| Correctional Mental Health Professionals I, P.C. | January 1, 2015 |
| Raymond K. Herr, M.D., A Professional Medical Corporation d/b/a Correctional Healthcare Physicians IV, P.C. | January 1, 2015 |

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

Surplus Lines Broker:
Name: _____ Kendra S Schaendorf _____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_

Tennessee Premium: $66,773
Fees: n/a
Surplus Lines Tax: $3,338.65

Authorized Representative

All other terms and conditions remain unchanged.

**IL 12 01 11 85**  Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Case 3:21-cv-00675   Document 56-5   Filed 01/31/22   Page 114 of 132 PageID #: 2685



## EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PESTICIDE OR HERBICIDE APPLICATOR COVERAGE
## GENERAL LIABILITY COVERAGE ONLY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART   OCCURRENCE COVERAGE

In consideration of the premium charged, it is hereby agreed that, solely with respect to the following operations:

Application of herbicides and pesticides to the greenhouse located at the Columbia Regional Medical Center by the Manager of the Horticulture Program.

The Exclusions A.1. shall not apply to exclude coverage under the General Liability Insuring Agreement of this Policy if the operations listed meet all of the standards of any stature, ordinance, regulation or license requirement of any federal, state or local government or regulatory authority which applies to such operations.

The most the Insurer shall pay for all Loss and Defense Expenses from Claims for which coverage is provided under the General Liability Insuring Agreement of this Policy and arising out of the listed operations above is $50,000 per Claim and $100,000 in the aggregate for all Claims.

All other terms and conditions of this Policy shall remain unchanged.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name:           Kendra S Schaendorf
Address: PO Box 111, Grand Rapids, MI 49501-0111

All other provisions of the policy shall remain unchanged.

Page 1 of 1



**MARKEL®**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL NOTICE OF CANCELLATION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
  COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
OPERATIONS LIABILITY) INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy will not be
cancelled until 30 days written notice has been given by the party effecting such cancellation to the other
party and to:

Montgomery County, Texas
Alan B Sadler Commissioners  Court Building
Purchasing Department
501 N Thompson, Suite 401
Conroe, TX  77301

Provided, however, that if such cancellation is due to non-payment of premium and/or deductible, ten (10) days written
notice will be given.

> This insurance contract is with an insurer not licensed to
> transact insurance in this state and is issued and delivered as
> a surplus line coverage pursuant to the Tennessee insurance
> statutes.
> Surplus Lines Broker:
> Name: _____ Kendra S Schaendorf _____
> Address: PO Box 111, Grand Rapids, MI 49501-0111 _____

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675   Document 56-5   Filed 01/31/22   Page 116 of 132 PageID #: 2687



**MARKEL**®

ORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 52

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>November 15, 2014 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE SERVICES,<br>LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY COVERAGE PART    OCCURRENCE
COVERAGE
COMMON POLICY CONDITIONS

### CHANGES

### ADDITION OF ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that Nose Coverage Endorsement and Amendment of Cancellation, is being added as attached effective as of the date stated above.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

Surplus Lines Broker:
Name:                    Kendra S Schaendorf
Address:  PO Box 111, Grand Rapids, MI 49501-0111

Authorized Representative

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NOSE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.      Section Definitions is amended by the additions of the following:

        **Nose Period** shall mean the period from November 15, 2013 to November 15, 2014.

2.      The insurance provided under this Coverage Part shall apply to those Claims because of Bodily Injury, Property Damage, Advertising Injury or Personal Injury to which this insurance applies which occurred or were committed during the Nose Period. Such Bodily Injury, Property Damage, Advertising Injury or Personal Injury must happen on or after the effective date of the Nose Period stated herein above and before the end of the Nose Period stated herein above.

        Provided, however, the insurance provided by this endorsement shall apply solely when there is no other insurance that applies to such Claim or that would apply but for the exhaustion of the limits of liability applicable to such Claim.

3.      The Limits of Liability for all Claims under the Nose Period shall be part of and not in addition to the applicable Limits of Liability stated in Item 5.A. of the Declarations for the Policy Period.

4.      A Self-Insured Retention will apply to each Claim reported to the Company which is subject to the Nose Period. The amount of the Self-Insured Retention is $500,000

5.      The Nose Period coverage provided under this endorsement shall terminate on November 15, 2020 at 12:01A.M. Standard Time or at the time of non-renewal, whichever is later, at the address of the Insured Stated in Item 2 .of the Declarations.

                        This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
                        Surplus Lines Broker:
                        Name:       Kendra S Schaendorf
                        Address:  PO Box 111, Grand Rapids, MI 49501-0111

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF CANCELLATION

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

**Cancellation:** Upon 30 days written notice to City of Newport News at 2400 Washington Avenue in Newport News, VA 23607, whom, by written contract the Named Insured is required to provide notice of cancellation, this policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in Item 13. of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, and to City of Newport News at 2400 Washington Avenue in Newport News, VA 23607, whom, by written contract the Named Insured is required to provide notice of cancellation, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the policy is cancelled because the Named Insured has failed to pay a premium or Deductible when due, including premium and/or Deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

No Coverage Part shall be independently cancellable by the Named Insured or by the Company or its underwriting manager. Cancellation of a Coverage Part if affected by the Named Insured or the Company or its underwriting manager, shall constitute a cancellation of this policy in its entirety.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

All other provisions of the policy shall remain unchanged.

# POLICY CHANGES

Policy Change
Number 55

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>January 1, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE<br>SERVICES, LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |
| COVERAGE PARTS AFFECTED<br>DECLARATIONS | | |

CHANGES

**AMENDMENT OF DECLARATIONS**

In consideration of the premium paid, it is hereby understood and agreed that Item 4. of the Declarations, Specified Products, Good, Operations and Premises Covered and Professional Services, is deleted and replaced with the following:

4. A. SPECIFIED PRODUCTS, GOOD, OPERATIONS AND PREMISES COVERED:
Correctional Healthcare including probationary services, counseling, and monitoring services inside and outside the prison or jail clinic environment; all related premises and operations of the Insured

4. B. PROFESSIONAL SERVICES:
Correctional Healthcare Services performed by an Insured in the treatment or care of any patient including: medical, dental, nursing, psychiatric, osteopathic, chiropractic or other professional care or service; furnishing or dispensing of medications, pharmaceuticals, blood and blood products, medical or surgical supplies, equipment or appliances; furnishing of food or beverages in connection with medical treatment or care; and the handling of post-mortem examinations on human bodies; probationary services, counseling and monitoring services inside and outside of the prison or jail clinic environment;

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

Surplus Lines Broker:

Name: _____Kendra S Schaendorf_____

Address: _PO Box 111, Grand Rapids, MI 49501-0111_

_____
Authorized Representative

All other terms and conditions remain unchanged.

Copyright ISO Commercial Risk Services, Inc., 1983

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 56

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>November 15, 2014 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDIATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE SERVICES,<br>LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
DECLARATIONS

CHANGES

**DELETION and ADDITION OF ENDORSEMENT**

In consideration of the premium paid, it is hereby understood and agreed that Limits of Liability Per Location Endorsement, Endorsement #20, is deleted and replaced with a revised Limits of Liability Per Location Endorsement, Endorsement #57.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

**IL 12 01 11 85**      Copyright, Insurance Services Office, Inc., 1983

# EVANSTON INSURANCE COMPANY

**MARKEL®**

## Endorsement

| | | |
|---|---|---|
| Named Insured: | Attached to and forming | |
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: | SM904110 |
| | Endorsement No.: | 57 |
| | Effective Date of Endorsement: | November 15, 2014 |

### LIMITS OF LIABILITY PER LOCATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERERAGE PART CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Item 5. of the Declarations, Limits of Liability, is deleted and replaced by the following:

5. LIMITS OF LIABILITY:
  A. For General Liability – Each Location:
1. For Coverage A. (Bodily Injury and Property Damage Liability):

  (i) Each Occurrence:                                   $1,000,000

  (ii) Damage to Premises – Any One Premises:         $300,000

2. For Coverage B. (Personal Injury and Advertising Injury Liability):
  Each Person or Organization:                      $1,000,000

3. For Coverage C. (Medical Payments):

  (i) Each Injured Person:                           $10,000
4. Aggregate:

  (i) Each Location:                                 $3,000,000

  (ii) All Coverages, All Locations:              $15,000,000

B. For Professional Liability in states other than New York, Virginia, Indiana for Named Insureds who are participants in the Indiana Patient Compensation Fund, Louisiana for Named Insureds who are participants in the Louisiana Patient Compensation Fund or Pennsylvania Named Insureds who are participants in the Pennsylvania Patient Compensation Fund:

All other provisions of the policy shall remain unchanged.

| Each Claim: | $1,000,000 |
| Aggregate, Each Location: | $3,000,000 |

For Professional Liability in New York:

| Each Claim: | $1,300,000 |
| Aggregate, Each Location: | $3,900,000 |

For Professional Liability in Virginia as defined in VA Code § Code 8.01 – 581.1:

| Each Claim: | $2,150,000 |

| Aggregate, Each Location: | $6,450,000 |

| Aggregate, All Locations: | $15,000,000 |

2. The Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

Section Limits of Liability is amended by the addition of the following:

Limit of Liability- Aggregate- All Coverages, All Locations: Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate, All Locations as stated in Item 5.B.. of the Declarations.

2. The Specified Medical Professions Professional Liability Coverage Part is amended as follows:

Section Limits of Liability is amended by the addition of the following:

Limit of Liability- Aggregate- All Coverages, All Locations: Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate All Coverages, All Locations as stated in Item 5.A.4.ii. of the Declarations.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____ Kendra S Schaendorf _____
Address: PO Box 111, Grand Rapids, MI 49501-0111 _____

All other provisions of the policy shall remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 58

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>FEBRUARY 24, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE SERVICES, LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |
| COVERAGE PARTS AFFECTED<br>DECLARATIONS | | |

## CHANGES

**ADDITION OF ENDORSEMENT**

In consideration of the premium paid, it is hereby understood and agreed that Amendment of Declaration is being added as attached effective as of the date stated above.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

Case 3:21-cv-00675    Document 56-9    Filed 01/31/22    Page 124 of 132 PageID #: 2695

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 59

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>FEBRUARY 24, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE<br>SERVICES, LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |
| COVERAGE PARTS AFFECTED<br>DECLARATIONS | | |

CHANGES

**AMENDMENT OF DECLARATIONS**

In consideration of the premium paid, it is hereby understood and agreed that Item 4.B. of the Declarations, Professional Services, is deleted and replaced with the following:

4.B. PROFESSIONAL SERVICES:

Correctional Healthcare Services performed by an Insured in the treatment or care of any patient including:  medical, dental, nursing, psychiatric, osteopathic, chiropractic or other professional care or service; furnishing or dispensing of medications, pharmaceuticals, blood and blood products, medical or surgical supplies, equipment or appliances; furnishing of food or beverages in connection with medical treatment or care; and the handling of post-mortem examinations of human bodies; probationary services, counseling and monitoring services inside and outside of the prison or jail clinic environment; and, telemedicine and telehealth services

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

Surplus Lines Broker:

Name: _____Kendra S Schaendorf_____

Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

IL 12 01 11 85      Copyright, Insurance Services Office, Inc., 1983      **Page 1 of 1**
Copyright, ISO Commercial Risk Services, Inc., 1983

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 60

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>AUGUST 1, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS BROKERAGE<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART –
   CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE

CHANGES

**ADDITION OF ENDORSEMENT**

In consideration of the additional premium of $12,099, it is hereby understood and agreed that Additional Named Insured is being added as attached effective as of the date stated above.

Tennessee Premium: $12,099.00
Fees: n/a
Surplus Lines Tax: $604.95

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 61

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>AUGUST 1, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS BROKERAGE<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART –
   CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE

CHANGES

**ADDITIONAL NAMED INSURED**

It is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to
include the following:

| **Named Insured** | **Retroactive Date** |
|---|---|
| League Medical Concepts, LLC | August 1, 2013 |

This insurance contract is with an insurer not licensed to
transact insurance in this state and is issued and delivered as
a surplus line coverage pursuant to the Tennessee insurance
statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 127 of 132 PageID #: 2698

.

# POLICY CHANGES

Policy Change
Number 62

| POLICY NUMBER<br>SM904110 | POLICY CHANGES<br>EFFECTIVE<br>AUGUST 10, 2015 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE SERVICES,<br>LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART –
   CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE

CHANGES

**ADDITION OF ENDORSEMENT**

In consideration of the premium paid, it is hereby understood and agreed that Additional Insured Endorsement –
Professional and General Liability, Policy Change Number 63, is being added as attached effective as of the
date stated above.

This insurance contract is with an insurer not licensed to
transact insurance in this state and is issued and delivered as
a surplus line coverage pursuant to the Tennessee insurance
statutes.
Surplus Lines Broker:
Name: _____Kendra S Schaendorf_____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

_____
Authorized Representative

All other terms and conditions remain unchanged.

Copyright, ISO Commercial Risk Services, Inc., 1983



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section The Insured is amended by the addition of the following:

   Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. **Additional Insured** means, whenever used in this endorsement, the following:

|  | Effective Date |
|---|---|
| County of McHenry, a body politic<br>220 N. Seminary Avenue<br>Woodstock, IL  60098 | August 10, 2015 |
| Columbia County, its officers, agents and employees<br>230 Strand, Room 31B<br>Saint Helens, OR  97051 | October 1, 2015 |
| Worchester County Sherriff's Office<br>5 Paul X Tivnan Drive<br>West Boylston, MA  05183 | October 5, 2015 |

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name:    Kendra S Schaendorf
Address:  PO Box 111, Grand Rapids, MI 49501-0111

All other terms and conditions remain unchanged.

IL 12 01 11 85              Copyright, Insurance Services Office, Inc., 1983              **Page 1 of 1**
Copyright, ISO Commercial Risk Services, Inc., 1983

Case 3:21-cv-00675    Document 56-5    Filed 01/31/22    Page 129 of 132 PageID #: 2700

.
3. Coverage provided to any Additional Insured as defined herein shall apply solely to an act, error or omission involving the Professional Services covered by this Coverage Part.

4. The person or organization is only an Additional Insured with respect to liability arising out of the Professional Services performed by the Named Insured.

5. No coverage shall be afforded to the above Additional Insured for Professional Personal Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

6. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

7. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy's terms and conditions. Failure to comply with this provision may, at the Company's option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured.  It is further agreed that where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other provisions of the policy shall remain unchanged.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT – GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
    OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    Section The Insured is amended by the addition of the following:

    N.  Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.    **Additional Insured** means, whenever used in this endorsement, the following:

|  | <u>Effective Date</u> |
|---|---|
| County of McHenry, a body politic<br>220 N. Seminary Avenue<br>Woodstock, IL  60098 | August 10, 2015 |
| Columbia County, its officers, agents and employees<br>230 Strand, Room 31B<br>Saint Helens, OR  97051 | October 1, 2015 |
| Worchester County Sherriff's Office<br>5 Paul X Tivnan Drive<br>West Boylston, MA  05183 | October 5, 2015 |
| Benton County Jail<br>Attention:  Josh Shelton, Lieutenant<br>7122 W. Okanogna Place Bld. B<br>Kennewick, WA  99336 | January 1, 2015 |

3.  Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence or offense involving the products, goods, operations or premises covered by this Coverage Part.

4.  No coverage shall be afforded to the above Additional Insured for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

5.  In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

6.  Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

7.  The person or organization is only an Additional Insured with respect to liability arising out of the Specified Products, Goods, Operations or Premises of the Named Insured.

8.  In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy's terms and conditions. Failure to comply with this provision may, at the Company's option, result in the claim or suit being denied.

9.  The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured. It is further understood that, where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other provisions of the policy shall remain unchanged.