# EXHIBIT E



# EVANSTON INSURANCE COMPANY

## DECLARATIONS

**LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE    CLAIMS MADE COVERAGE**

**LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) OCCURRENCE COVERAGE**

**Claims Made:**  The coverage afforded by the Professional Liability Coverage Part is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

**Notice:**  This is a duty to defend policy. Additionally, each Coverage Part contains provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the Coverage Part is amended by endorsement. Please read the policy carefully.

POLICY NUMBER: SM904115                    RENEWAL OF POLICY: NEW

**1.    NAMED INSUREDS:**

    **I.**  For Professional Liability:    <span style="color:red">NO FLAT CANCELLATION</span>

        **A.**  Coverage A. Individual Professional Liability Coverage:  Coverage A. Named Insured(s):

        Employed and Contracted Physicians and Allied Healthcare professionals providing Medical Services through the Coverage B Named Insured and participate in the Indiana Patient Compensation Fund, the Louisiana Patient Compensation Fund or the Pennsylvania Compensation Fund

        **B.**  Coverage B. Organization Liability Coverage:  Coverage B. Named Insured:

        CCS INTERMEDIATE HOLDINGS, LLC

    **II.**  For General Liability:

        **A.**  Named Insured:  CCS INTERMEDIATE HOLDINGS, LLC

**2.    BUSINESS ADDRESS:**    1283 MURFREEBORO RD
                             NASHVILLE, TN  37217

**3.    POLICY PERIOD:**    From November 15, 2014 to November 15, 2015
                             12:01 A.M. Standard Time at address of Insured stated above

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Producer Name and Address | This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes. |
|---|---|
| MH200<br>AMWINS ACCESS INSURANCE SERVICES, LLC<br>2851 CHARLEVOIX DRIVE, SE,Suite 220<br>Grand Rapids, MI  49546 | Surplus Lines Broker:<br>Name: _____ Kendra S Schaendorf _____<br>Address: PO Box 111, Grand Rapids, MI 49501-0111 |

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 2 of 88 PageID #: 2709

4.     **SPECIFIED PRODUCTS, GOODS, OPERATIONS AND PREMISES COVERED:**

    **I.**   For General Liability:

        Correctional Healthcare; all related premises and operations of the Insured

5.     **LIMITS OF LIABILITY:**

    **I.**   For Professional Liability:

        **A.**   For Coverage A. Individual Professional Liability:

| | |
|---|---|
| **i.**   Each Claim: | See Endorsement #13 |
| **ii.**   Aggregate: | See Endorsement #13 |

        **B.**   For Coverage B. Organization Liability:

| | |
|---|---|
| **i.**   Each Claim: | See Endorsement #13 |
| **ii.**   Aggregate: | See Endorsement #13 |

        **C.**   Coverage A., Coverage B. or both Coverage A. and B. combined:

| | |
|---|---|
| **i.**   Single Per Patient Claim: | See Endorsement #13 |

        **D.**   Coverage Part Aggregate:     See Endorsement #13

    **II.**   For General Liability:

        **A.**   For Coverage A. Bodily Injury and Property Damage Liability:

| | |
|---|---|
| **i.**   Each Occurrence: | See Endorsement #14 |
| **ii.**   Fire Damage   Any One Fire: | See Endorsement #14 |

        **B.**   For Coverage B. Personal and Advertising Injury Liability:

| | |
|---|---|
| **i.**   Each Person or Organization: | See Endorsement #14 |

        **C.**   For Coverage C. Medical Payments:

| | |
|---|---|
| **i.**   Each Injured Person: | See Endorsement #14 |

        **D.**   Coverage Part Aggregate:     See Endorsement #14

6.     **DEDUCTIBLE:**

    **I.**   For Professional Liability:

        **A.**   Each Claim:     See Endorsement #15

    **II.**   For General Liability:

        **A.**   For Coverage A. Bodily Injury and Property Damage Liability:

| | |
|---|---|
| **i.**   Each Occurrence: | See Endorsement #15 |

        **B.**   For Coverage B. Personal and Advertising Injury Liability:

| | |
|---|---|
| **i.**   Each Person or Organization: | See Endorsement #15 |

7.     **RETROACTIVE DATE:**

    **I.**   For Professional Liability:

        **A.**   Coverage A. Individual Professional Liability:     September 1, 2014

        **B.**   Coverage B. Organization Liability:     September 1, 2014

8.     **PREMIUM FOR POLICY PERIOD:**

| | | |
|---|---|---|
| Minimum | $ | 808,800.00 |
| Deposit | $ | 808,800.00 |

**RATE:**     Flat

Tennessee Premium:  808,800.00

Fees:  n/a

9.    **PREMIUM FOR EXTENDED REPORTING PERIOD:**

    **I.**    For Professional Liability:  150% for 12 months; 175% for 24 months; or 200% for 36 months

10.    **FORMS AND ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

    See MDIL 1001 08 10 attached.

11.    **NOTICES**:

    Notices required to be provided to the Company under this policy shall be addressed to:

| **CLAIM OR DISCOVERY CLAUSE NOTICES:** | **ALL OTHER NOTICES:** |
|---|---|
| Claims Service Center<br>MARKEL SERVICE, INCORPORATED<br>Ten Parkway North<br>Deerfield, Illinois 60015 | MARKEL MIDWEST<br>a division of Markel Service, Incorporated<br>Ten Parkway North<br>Deerfield, IL 60015 |
| Fax: (855) 662-7535<br>E-mail: newclaims@markelcorp.com | Fax: (866) 730-2526 |

**These declarations, together with the Common Policy Conditions, Coverage Part(s), any Endorsement(s) and any application(s), complete the above numbered policy.**

| Countersigned: November 14, 2014 | By: | *Gerard Albanese* |
|---|---|---|
| (Date) | | Authorized Representative |



# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| Form Number | Form Name |
|---|---|
| MELT 2200 07 11 | Common Policy Conditions |
| MELT 0001 07 11 | Locum Tenens and Contract Staffing Professional Liability Insurance Coverage Part |
| MELT 0003 07 12 | Locum Tenens and Contract Staffing General Liability Insurance (Including Products and Completed Operations Liability) Coverage Part - Occurrence Coverage |
| 1. MEIL 5409 09 10 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 2. MELT 2223 01 14 | Longer Duration Extended Reporting Period Availability |
| 3. EIC 832-01 | Asbestos Exclusion |
| 4. Manuscript | Mold Exclusion |
| 5. EIC 4638-02 | Certified Acts of Terrorism Endorsement |
| 6. MEIL 5410 02 12 | Amendment of Definitions and Exclusions - Electronic Data and Distribution of Material in Violation of Statutes |
| 7. MELT 2218 02 14 | Non-Stacking Limitation When Two or More Policies Apply |
| 8. MEIL 1323 09 13 | Conditional Exclusion of Terrorism |
| 9. MPIL 1069 09 13 | Notice to Policyholders Potential Restriction of Terrorism Coverage |
| 10. IL 09 10 12 03 | Pennsylvania Notice |
| 11. MELT 2213 07 11 | Civil Rights Violation Amendatory Endorsement |
| 12. Manuscript | Amendatory Endorsement   Civil Rights Violations General Liability |
| 13. Manuscript | Professional Liability   State Limits of Liability and State Compensation Fund Amendatory Endorsement |
| 14. Manuscipt | General Liability   Limits of Liability Per Location |
| 15. Manuscript | Self Insured Retention Endorsement |
| 16. MELT 2205 07 11 | Defense of License Reimbursement Coverage |
| 17. Manuscript | Additional Insured Endorsement for Landlords, Sponsors or Lessors |
| 18. Manuscript | Sexual Acts Liability Endorsement |
| 19. MELT 2221 09 12 | Claim Expenses in Addition to the Each Occurrence/Each Person or Organization Limit of Liability |
| 20. Manuscript | Additional Insured Endorsement   Professional Liability |
| 21. Manuscript | Additional Insured Endorsement   General Liability |
| 22. MEIL 5304-IN 07 11 | Indiana   Consent to Settlement |
| 23. MELT 2214 04 12 | Good Smaritan Endorsement |
| 24. MELT 2201 07 11 | Amendment of Definitions D. |
| 25. MELT 2224 05 14 | Crisis Management Emergency Response Expense Reimbursement Coverage |
| 26. Manuscript | Notice of Claim Endorsement |
| 27. Manuscript | Utilization, Quality Assurance, Accreditation Committee and Peer Review Activities Endorsement |
| 28. IL 12 01 11 85 | Additional Named Insured |
| 29. MESM 2083 01 11 | Health Insurance Portability and Accountability Act (HIPAA)   Civil Monetary Penalty Endorsement |
| 30. Manuscript | Supplementary Payments Endorsement   Trial Attendance |
| 32. EIC 4601 10/06 | Amendment of Cancellation |
| 33. EIC 4115-01 | 25% Minimum Earned Premium Endorsement |
| 34. Manuscript | Additional Insured Endorsement   Professional Liability |
| 35. Manuscript | Additional Insured Endorsement   General Liability |
| 36. Manuscript | Change in Control of Named Insured |

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 5 of 88 PageID #: 2708



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

It is agreed that:

**1.** This policy does not apply:

    **A.** Under any Liability Coverage, to bodily injury or property damage

        **(1)** with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(2)** resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    **C.** Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        **(1)** the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        **(2)** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        **(3)** the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

**2.** As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

    (a)    any nuclear reactor,

    (b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LONGER DURATION EXTENDED REPORTING PERIOD AVAILABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that in addition to the availability of the Extended Reporting Period for the period of months stated in Item 8. of the Declarations, an Extended Reporting Period of the following duration shall also be available:

48 months;
60 months;
72 months; or
84 months.

The Coverage B. Named Insured must make a written request for the longer duration Extended Reporting Period received by the Company within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. The Company will determine the additional premium to be charged for such Extended Reporting Period.

The Company will provide to the Coverage B. Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

All other terms and conditions of the Section EXTENDED REPORTING PERIOD shall apply with regard to the Coverage B. Named Insured's exercise of any such longer duration Extended Reporting Period.

All other terms and conditions remain unchanged.

# EVANSTON INSURANCE COMPANY

**MARKEL®**

---

## Endorsement

---

| Named Insured: | Attached to and forming | |
|---|---|---|
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: | SM904115 |
| | Endorsement No.: | 3 |
| | Effective Date of Endorsement: | November 15, 2014 |

---

### ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 9 of 88 PageID #: 2772

# EVANSTON INSURANCE COMPANY
**MARKEL®**

## Endorsement

| Named Insured: | Attached to and forming | |
|---|---|---|
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: | SM904115 |
| | Endorsement No.: | 4 |
| | Effective Date of Endorsement: | November 15, 2014 |

### MOLD EXCLUSION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFRESSIONS GENERAL LIAIBLITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PAGE    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

Solely for the purposes of this endorsement:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 10 of 88 PageID #: 2713



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERATIONS LIABILITY) INSURANCE COVERAGE PART   OCCURRENCE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
   COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
   COMPLETED OPERATIONS LIABILITY) COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.     The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.     The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the Company has met the Company's deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

All other provisions of the policy shall remain unchanged.

EIC 4638-02 01/08                 **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS AND EXCLUSIONS    ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART    CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART    CLAIMS MADE COVERAGE
PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS AND PROFESSIONAL LIABILITY INSURANCE POLICY

Section The Exclusions is amended by the addition of the following:

any Claim based upon or arising out of any violation of:

**(a)**   the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

**(b)**   the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

**(c)**   any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

All other terms and conditions remain unchanged.

**MEIL 5410 02 12**                                                                                                     **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NON-STACKING LIMITATION WHEN TWO OR MORE POLICIES APPLY

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

In consideration of the premium paid, it is understood and agreed that the following is added to Common Policy Conditions D., Other Insurance:

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

1.  the Limit of Liability available under this policy will be equal to the percentage that this policy s available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

2.  the total Limit of Liability available for such Claim shall not exceed the greater/est available Limit of Liability remaining on all such policies and its payment shall extinguish the Company s and its affiliated companies' liability on all such policies for such Claim.

Nothing contained in this endorsement shall be construed to increase the Limits of Liability of this Policy.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONDITIONAL EXCLUSION OF TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM
## RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY INSURANCE POLICY
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS
    MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE  COVERAGE PART -
    OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITYINSURANCE COVERAGE PART - CLAIMS MADE
    COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART    OCCURRENCE
    COVERAGE
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS LIABILITY INSURANCE POLICY
SPECIFIED PROFESSIONAL AND SPECIFIED GENERAL LIABILITY POLICY    COVERAGE B. ONLY

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**A.** Applicability of the Provisions of This Endorsement

  **1.** The provisions of this endorsement shall become applicable commencing on the date when one or more of the following first happens or the inception date of this policy if the Policy Period in which this endorsement applies begins after such date:

    **a.** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or policy; or

    **b.** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available and with revisions that:

      **(1)** Increase the Company s statutory percentage deductible under the Program for terrorism losses;

      **(2)** Decrease the United States Government's statutory percentage share in potential terrorism losses above such deductible; or

      **(3)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this Coverage Part or policy.

  **2.** If the provisions of this endorsement become applicable, such provisions:

    **a.** For Claims Made Coverage Parts, or policies supersede any terrorism endorsement already endorsed to this policy that addresses Certified Acts of Terrorism, but only with respect to an incident of terrorism (however defined) that results in a Claim first made on or after the date when the provisions of this endorsement become applicable; or

    **b.** For Occurrence Coverage Parts, supersede any terrorism endorsement already endorsed to this policy that addresses Certified Acts of Terrorism, but only with respect to an incident of terrorism (however defined) that

**MEIL 1323 09 13**        Includes copyrighted material of Insurance Services Office, Inc.        **Page 1 of 3**
                                  with its permission.

results in a Bodily Injury or Property Damage and an Occurrence, the entirety of which happens on or after the date when the provisions of this endorsement become applicable; and

 **c.** Remain applicable unless the Company notifies the first Named Insured of changes in these provisions, in response to federal law.

**3.** If the provisions of this endorsement do not become applicable, any terrorism endorsement already endorsed onto this policy, that addresses Certified Acts of Terrorism, will continue in effect unless the Company notifies the first Named Insured of changes to that endorsement in response to federal law.

**B.** Section Definitions is amended by the addition of the following:

**1.** **Terrorism** means any activity against any natural person, organization or property of any nature:

 **a.** That involve the following or preparation for the following:

  **(1)** Use or threat of force or violence;

  **(2)** Commission or threat of a dangerous act; or

  **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

 **b.** When one or both of the following applies:

  **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

  **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express or express opposition to a philosophy or ideology.

**C.** Section The Exclusions is amended by the addition of the following:

This Coverage Part or policy does not apply to any Claim based upon, arising out of, directly or indirectly caused by Terrorism, including action in hindering or defending against an actual or expected incident of Terrorism. Any such Claim is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such incident of Terrorism.

This exclusion shall apply only when one or more of the following are attributed to an incident of Terrorism:

**1.** The Terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination;

**2.** Radioactive material is released, and it appears that one purpose of the Terrorism was to release such material;

**3.** The Terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials;

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the Terrorism was to release such materials;

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured damage sustained by property of all natural persons and organizations affected by the Terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusion; or

**6.** Fifty (50) or more persons sustain death or Serious Physical Injury.

For the purposes of this exclusion, Serious Physical Injury means:

 **a.** Physical injury that involves a substantial risk of death;

 **b.** Protracted and obvious physical disfigurement; or

 **c.** Protracted loss of or impairment of the function of a bodily member or organ.

**MEIL 1323 09 13**  Includes copyrighted material of Insurance Services Office, Inc.  **Page 2 of 3**
with its permission.

Case 3:21-cv-00675  Document 56-6  Filed 01/31/22  Page 15 of 88 PageID #: 2718

Multiple incidents of Terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Items C.5. or C.6. are exceeded.

With respect to this exclusion Items C.5. and C.6. describe the threshold used to measure the magnitude of an incident of Terrorism and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of Terrorism, there is no coverage under this Coverage Part or policy.

**All other terms and conditions remain unchanged.**



# EVANSTON INSURANCE COMPANY

## NOTICE TO POLICYHOLDERS
## POTENTIAL RESTRICTION OF TERRORISM COVERAGE

The federal Terrorism Risk Insurance Act established the federal Terrorism Risk Insurance Program ( Program ) within the Department of the Treasury, under which the United States Government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Program is subject to a termination date of December 31, 2014 unless extended by the United States Government. If the Program terminates, or is extended with certain changes prior to or during the term of this policy, then the treatment of terrorism under this policy will change. If the Program is terminated, the definition of Certified Act of Terrorism will no longer apply and the limit on the Company s liability pursuant to the federal Terrorism Risk Insurance Act will no longer apply. If the Program is extended with changes, the definition of Certified Act of Terrorism may change and the limit on the Company s liability pursuant to the federal Terrorism Risk Insurance Act may change.

**THIS POLICY DURING TENURE OF THE TERRORISM RISK INSURANCE PROGRAM AS THE PROGRAM EXISTS PURSUANT TO THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2007:**

Contains either:

   **a.** A Certified Acts of Terrorism Exclusion which excludes any claim or portion thereof based upon, arising out of, or in any way involving a Certified Act of Terrorism ; or

   **b.** A Certified Acts of Terrorism Endorsement which indicates that this policy does not contain an exclusion of any claim based upon, arising out of, or in any way involving a "Certified Act of Terrorism . The endorsement states that such claims are subject to a limit on the Company s liability pursuant to the federal Terrorism Risk Insurance Act.

   The absence of a terrorism exclusion does not create coverage for any injury or damage that would otherwise be excluded under the policy.

**POTENTIAL CHANGES TO THIS POLICY:**

Endorsement MEIL 1323 09 13 Conditional Exclusion of Terrorism is attached to this policy. The provisions of the endorsement only become applicable to the policy if one or more of the following happens:

   **a.** The Program established by the federal Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under the policy; or

   **b.** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available and with revisions that:

      **(1)** Increase the Company s statutory percentage deductible under the Program for terrorism losses;

      **(2)** Decrease the United States Government's statutory percentage share in potential terrorism losses above such deductible; or

      **(3)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under the policy.

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

 © ISO Properties, Inc.,  2003



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT    CIVIL RIGHTS VIOLATION

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amend as follows:

**1.**    Section Definitions J. is amended by the addition of the following:

**4.**    an allegation of a civil rights violation pursuant to the Civil Rights Act of 1871 (42 U.S.C. § 1983 *et seq*.) and amendments thereto, provided that such allegation is the result of any patient receiving Medical Services.

**2.**    Section Limits of Liability I.1., 2. and 3. are deleted and replaced with the following:

**1.**    The inclusion herein of more than one Insured in any Claims or suits or the making of Claims or bringing of suit by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single Malpractice, Professional Healthcare Service or Professional Personal Injury or a series of related Malpractices, Professional Healthcare Services or Professional Personal Injuries, including Medical Services to a woman and/or her unborn child or children during the course of pregnancy and pre-natal, delivery and post-natal care, shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

**2.**    Subject to Sections Limits of Liability A., B., C., D., E. and F. above, and regardless of the number of Claims made, or the number of claimants or the number of Insureds hereunder, more than one Claim made during the Policy Period, including any Extended Reporting Period, if exercised, against any one Insured arising out of injuries sustained by any one patient as a result of Malpractice, Professional Healthcare Services or Professional Personal Injury, including Medical Services to a woman and/or her unborn child or children during the course of pregnancy and pre-natal, delivery and post-natal care, shall constitute a single Claim and the liability of the Company shall not exceed the amount stated in the Declarations.

**3.**    Subject to Sections Limits of Liability A., B., C., D., E. and F. above, and regardless of the number of Claims made, or the number of claimants or the number of Insureds hereunder, one or more Claims first made during the Policy Period, including any Extended Reporting Period, if exercised, against two or more Insureds arising out of injuries sustained by one patient as a result of Malpractice, Professional Healthcare Services or Professional Personal Injury, including Medical Services to a woman and/or her unborn child or children during the course of pregnancy and pre-natal, delivery and post-natal care, shall constitute a single Claim and the liability of the Company shall not exceed the amount stated in the Declarations.

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 19 of 88 PageID #: 2722

**3.**     Section The Exclusions F. is deleted and replaced with the following:

**F.**     any Claim based upon or arising out of any unlawful discrimination by any Insured; provided, however, this exclusion shall not apply to any civil rights violation alleged pursuant to the Civil Rights Act of 1871 (42 U.S.C. § 1983 *et seq*.) and amendments thereto, provided that such civil rights violation arises out of Medical Services for which the Insured is legally liable.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT    CIVIL RIGHTS VIOLATIONS GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amend as follows:

1.  Section Definitions E., Claim, is amended with the addition of the following:

    **4.**  an allegation of a Bodily Injury as a result civil rights violation pursuant to the Civil Rights Act of 1871 (42 U.S.C. §1983 et seq.) and amendments thereto, provided that such allegation arises out of an Occurrence involving either an inmate in a correctional facility in which services are provided by an Insured or a patient of an Insured or client of the Insured; involving this Coverage Part and shall include the service of suit or institution of arbitration proceedings against the Insured.

2. Section The Exclusions 4. is deleted and replaced with the following:

    **4.**  any Claim based upon or arising out of any unlawful discrimination by any Insured; this exclusion shall not apply to any civil rights violation alleged pursuant to the Civil Rights Act of 1871 (42 U.S.C. §1983 et seq.) and amendments thereto, provided that such violation arises out of an Occurrence for the which the Insured is legally liable.

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROFESSIONAL LIABILITY - STATE LIMITS OF LIABILITY AND STATE COMPENSATION FUND AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** Item 5-I. of the Declarations, Limits of Liability, is deleted and replaced with the following:

**5-I. LIMITS OF LIABILITY, For Professional Liability:**

With respect to Malpractice, Professional Healthcare Services or Professional Personal Injury in Indiana for Coverage A. or Coverage B. Named Insureds who are participants in the Indiana Patient Compensation Fund:

A. For Coverage A. Individual Professional Liability:

| | | |
|---|---|---|
| i. | Each Claim: | $250,000 |
| ii. | Aggregate: | $750,000 |

B. For Coverage B. Organization Liability:

| | | |
|---|---|---|
| i. | Each Claim: | $250,000 |
| ii. | Aggregate: | $750,000 |

With respect to Malpractice, Professional Healthcare Services or Professional Personal Injury in Louisiana for Coverage A. or Coverage B. Named Insureds who are participants in the Louisiana Patient Compensation Fund:

A. For Coverage A. Individual Professional Liability:

| | | |
|---|---|---|
| i. | Each Claim: | $100,000 |
| ii. | Aggregate: | $300,000 |

B. For Coverage A. Organization Liability:

| | | |
|---|---|---|
| i. | Each Claim: | $100,000 |
| ii. | Aggregate: | $300,000 |

With respect to Malpractice, Professional Healthcare Services or Professional Personal Injury in Pennsylvania for Coverage A. Named Insureds who are participants in the Pennsylvania Patient Compensation Fund:

A. For Coverage A. Individual Professional Liability:

| | | |
|---|---|---|
| i. | Each Claim: | $500,000 |
| ii. | Aggregate: | $1,500,000 |

B.  For Coverage A. Organization Liability:

    i.  Each Claim:                                  $500,000

    ii.  Aggregate:                                   $1,500,000

With respect to Malpractice, Professional Healthcare Services or Professional Personal Injury whereby the Coverage B. Named Insured does not participate in the Indiana Patient Compensation Fund, Louisiana Patient Compensation Fund or Pennsylvania Patient Compensation Fund and a Coverage A Named Insured does participate in the Indiana Patient Compensation Fund, Louisiana Patient Compensation Fund or Pennsylvania Patient Compensation Fund:

B.  For Coverage A. Organization Liability:

    i.  Each Claim:                                  $1,000,000

    ii.  Aggregate:                                   $3,000,000

With respects to Malpractice, Professional Healthcare Services or Professional Personal Injury for Coverage A. and B. Named Insureds:

D.  Coverage Part Aggregate:                      $10,000,000

**2.**  Solely with respect to Malpractice, Professional Healthcare Services or Professional Personal Injury in Indiana for Coverage A. Named Insureds who are participants in the Indiana Patient Compensation Fund, Louisiana for Coverage A. Named Insureds who are participants in the Louisiana Patient Compensation Fund or Pennsylvania for Coverage A. Named Insureds who are participants in the Pennsylvania Patient Compensation Fund:

**a.**  Section Limits of Liability E., F. and I.3. are deleted.

**b.**  Section Limits of Liability A. and B. are deleted and replaced with the following:

    **A.  Coverage A. Limit of Liability-Each Claim:**  The total liability of the Company under Coverage A. for the total Damages for each Claim first made against each Coverage A. Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Coverage A. Limit of Liability stated in the Declarations as applicable to Each Claim.

    **B.  Coverage A. Limit of Liability-Aggregate:**  Subject to the above Limits of Liability A., the total liability of the Company under Coverage A. shall not exceed the Coverage A. Aggregate Limit of Liability stated in the Declarations for the total of Damages arising out of all Claims first made against each Coverage A. Insured during the Policy Period and the Extended Reporting Period, if exercised.

**c.**  Solely for the purpose of determining the Company's limit of liability, the Deductible amount shall be deemed to be applied first to the Claim Expenses.

**d.**  Section Defense, Settlements and Claim Expenses A. is deleted and replaced with the following:

    **A.  Defense, Investigation and Settlement of Claims:**  The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

    **1.**  Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

    **2.**  The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

        **a.**  Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

        **b.**  Providing any other reasonable information requested;

All other terms and conditions remain unchanged.

**c.**   Providing fully itemized billing on a periodic basis; and

**d.**   Cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Deductible.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITS OF LIABILITY PER LOCATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    Item 5.IIof the Declarations, Limits of Liability For General Liability, is deleted and replaced by the following:

    5.   **LIMITS OF LIABILITY:**

        II.  For General Liability    Each Location:

            A. For Coverage A. (Bodily Injury and Property Damage Liability):

| | |
|---|---|
| (i)  Each Occurrence: | $1,000,000 |
| (ii)  Damage to Premises    Any One Premises: | $300,000 |

            B. For Coverage B. (Personal Injury and Advertising Injury Liability):

| | |
|---|---|
| Each Person or Organization: | $1,000,000 |

            C. For Coverage C. (Medical Payments):

| | |
|---|---|
| (i)  Each Injured Person: | $10,000 |

            D. Aggregate:

| | |
|---|---|
| (i)  Each Location: | $3,000,000 |
| (ii)  All Coverages, All Locations: | $15,000,000 |

**2.**    The Limits of Liability is amended by the addition of the following:

    **Limit of Liability- Aggregate- All Coverages, All Locations:**  Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate, All Locations as stated in Item 5.D.. of the Declarations.

    :



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART   OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Item 6. of the Declarations is deleted and replaced as follows:

**6. SELF INSURED RETENTION:**

    **I.** For Professional Liability:

        **A.** Each Claim:                                                 $50,000

    **II.** For General Liability:

        **A.** For Coverage A. Bodily Injury and Property Damage Liability:

            **i.** Each Occurrence:                               $50,000

        **B.** For Coverage B. Personal and Advertising Injury Liability:

            **i.** Each Person or Organization:                   $50,000

2. Whenever used in the Specified Medical Professions Professional Liability Insurance Coverage Part and the Specified Medical Professions General Liability Insurance Coverage Part, the word Deductible is deleted and replaced with Self-Insured Retention .

3. Specified Medical Professions Professional Liability Insurance Conversation Part, Section Limits of Liability D., Deductible, is deleted and replaced with the following:

    **D.** **Self-Insured Retention:** The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

        Such amounts shall, upon written demand by the Company, be paid by the Named Insured, CCS Intermediate Holdings, LLC (the Named Insured ) within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

**Page 1 of 6**

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

At its sole discretion, the Company reserves the right to independently audit the Insured s claim files and records for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured s right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured s inability to pay shall not relieve the Insured of its obligations hereunder.

**4.** Specified Medical Professions Professional Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

**Defense, Investigation and Settlement of Claims:** It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, its own expense to defend, investigate and settle any Claim against any Insured seeking Damages to which this insurance applies which is within this Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company s opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

**1.** Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

**2.** The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

    **a.**    providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

    **b.**    providing any other reasonable information requested;

    **c.**    providing fully itemized billing on a periodic basis; and

    **d.**    cooperating with the Company and the Insured in resolving any and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

Upon exhaustion of the Self-Insured Retention, the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

5.    Specified Medical Professions Professional Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

    **A.**    **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

        **1.**    in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

        **2.**    which the Insured s estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

        **3.**    which involves:

            **a.**    Death;

            **b.**    Brain or spinal injury;

            **c.**    Amputation;

            **d.**    Loss of use of arm, leg, sight or hearing;

            **e.**    Severe burns;

            **f.**    Serious loss of use of any bodily function

            **g.**    Paralysis;

            **h.**    Reflex Sympathy Dystrophy;

            **j.**    Complex Regional Pain Syndrome;

            **k.**    Multiple factures, multiple areas;

            **l.**    Sexual molestation; or

            **m.**    Potential class action

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 28 of 88 PageID #: 2731

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the Self-Insured Retention. Quarterly bordereaux reports containing the Claimant s name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.

6.  Specified Medical Professions General Liability Insurance Coverage Part, Section Limits of Liability F., Deductible, is deleted and replaced with the following:

F.  **Self-Insured Retention:** The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

At its sole discretion, the Company reserves the right to independently audit the Insured s claim files and records for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured s right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured s inability to pay shall not relieve the Insured of its obligations hereunder.

7.  Specified Medical Professions General Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

A.  **Defense, Investigation and Settlement of Claims:** It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, at its own expense to defend, investigate and settle any Claim against an Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company s opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

Page 4 of 6

1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend

   any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. providing any other reasonable information requested;

   c. providing fully itemized billing on a periodic basis; and

   d. cooperating with the Company and the Insured in resolving any discrepancies;

   and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

   Upon exhaustion of the Self-Insured Retention the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

8. Specified Medical Professions General Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

   A. **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

      1. in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

      2. which the Insured s estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

**Page 5 of 6**

3.  which involves:

    **a.**    Death;

    **b.**    Brain or spinal injury;

    **c.**    Amputation;

    **d.**    Loss of use of arm, leg, sight or hearing;

    **e.**    Severe burns;

    **f.**    Serious loss of use of any bodily function

    **g.**    Paralysis;

    **h.**    Reflex Sympathy Dystrophy;

    **j.**    Complex Regional Pain Syndrome;

    **k.**    Multiple factures, multiple areas;

    **l.**    Sexual molestation; or

    **m.**    Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the self-insured retention. Quarterly bordereaux reports containing the Claimant s name, the date of loss and information on the nature of  the injury or allegations shall constitute Notice of Claim.
discrepancies;

**Page 6 of 6**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFENSE OF LICENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that policy is amended as follows:

1. Section Supplementary Payments is added as follows:

   **SUPPLEMENTARY PAYMENTS**

   **A.** **Defense of License Coverage and Claims Made Clause:** The Company shall pay on behalf of the Coverage A. Named Insured reasonable and necessary Legal Fees and Legal Expenses incurred in the defense of the Coverage A. Named Insured in response to a Disciplinary Proceeding first initiated during the Policy Period,

   Provided:

   **1.** the Malpractice or Professional Personal Injury giving rise to the Disciplinary Proceeding happens during the Policy Period or on or after November 15, 2013 and before the end of the Policy Period; and

   **2.** prior to the effective date of this policy the Insured had no knowledge of such Malpractice or Professional Personal Injury or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured s position to conclude that a Disciplinary Proceeding was likely;

   Subject to:

   **a.** a limit of liability of $25,000 for each Coverage A. Named Insured for each Disciplinary Proceeding; and

   **b.** a policy aggregate limit of liability of $75,000 for all Coverage A. Named Insureds for all Disciplinary Proceedings covered herein.

   The Coverage A. Named Insured shall give the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Disciplinary Proceeding first initiated against the Coverage A. Named Insured during the Policy Period.

   No payment pursuant to this Section shall be made for the Coverage A. Named Insured s payment of or obligation to pay any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; costs required to comply with non-monetary conditions imposed upon any Insured as a condition of licensure; any monetary judgment, award or settlement of any kind; or any Legal Fees and Legal Expenses incurred by the Coverage A. Named Insured in a proceeding associated with the foregoing.

   Payment pursuant to this Section, Supplementary Payments A., shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to any Deductible.

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 32 of 88 PageID #: 2735

**2.** Section Definitions is amended by the addition of the following:

**Disciplinary Proceeding** means the Insured s receipt of notice of:

**(1)** any state or federal regulatory or disciplinary action, inquiry or review involving the Coverage A. Named Insured's professional licensure, with the purpose of adversely affecting the Coverage A. Named Insured's license;

**(2)** any professional disciplinary action, inquiry, or review taken against the Coverage A. Named Insured by any health care organization which affects the Coverage A. Named Insured's professional privileges or membership with such organization;

however, Disciplinary Proceeding shall not include:

**(a)** any dispute involving timely completion of medical records;

**(b)** any application for initial placement on a medical staff;

**(c)** any criminal proceeding; or

**(d)** any dispute involving allegations of fraud or willful non-compliance with any regulations or procedures or Medicare, Medicaid or any similar federal or state program.

**Legal Fees and Legal Expenses** means attorney's fees charged by legal counsel selected by the Company, and expert witness fees, and related legal and/or associated investigation costs and expenses incurred by the Coverage A. Named Insured with the written consent of the Company. This does not include reimbursement for the Insured's salary or loss of other billing or income. The Company shall have the final decision as to the reasonableness of Legal Fees and Legal Expenses and as to the appeal of any such Disciplinary Proceeding concluded against the Coverage A. Named Insured.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### ADDITIONAL INSURED ENDORSEMENT FOR LANDLORDS, SPONSORS OR LESSORS

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section The Insured is amended by the addition of the following:

    Whenever used in this policy, the unqualified word Insured shall also mean Additional Insured.

2.  **Additional Insured**, whenever used in this endorsement, shall mean the following:

    any landlord, owner, or property manager of the Designated Premises; or any tradeshow or convention sponsor or operator; or any lessor of equipment.

3.  **Designated Premises**, whenever used in this endorsement, shall mean the following:

    all premises leased or rented to the Named Insured, premises temporarily occupied by the Named Insured for a tradeshow or convention and/or equipment leased to the Named Insured.

4.  Coverage provided to any Additional Insured as defined herein shall apply solely:

    (a)  to Claims first made against the Insured during the Policy Period or Extended Reporting Period, if exercised;

    (b)  for Claims arising out of the Named Insured's occupancy of, or failure to maintain, the Designated Premises, but solely with respect the products, goods or operations of the Named Insured and only if liability for such Claim is determined to be solely the negligence or responsibility of the Named Insured; and

    (c)  for Occurrences at, on or upon that portion of the Designated Premises which is occupied by the Named Insured and taking place during the term of the Named Insured s lease/occupancy of such Designated Premises.

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SEXUAL ACTS LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

DECLARATIONS
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the Locum Tenens/Contract Staffing Services Professional Liability Insurance Coverage Part is amended as follows:

1.    Section Insuring Agreement is amended by the addition of the following:

    **B.**    **Sexual Acts Liability**:  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

    1.    such Sexual Act arises out of the conduct of the Insured's Professional Services;

    2.    such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date as stated in Item 8. of the Declarations and before the end of the Policy Period; and

    3.    prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may result in a Claim under this policy.

2.    Section Definitions is amended by the addition of the following:

    **N.**    **Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured s Professional Services.

**O.** **Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual.

3.   Section The Exclusions L. is deleted

4.   Section The Exclusions is amended by the addition of the following exclusions:

Y.   to any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

Z.   to any manager, supervisor, officer, director, trustee or partner who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

AA.   to any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, officer, director, trustee or partner has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

BB.   to any Claim based upon or arising out of Sexual Injury to any employee of the Insured.

5.   Section Limits of Liability is amended by the addition of the following:

J.   **Limit of Liability - Sexual Acts Liability Coverage**: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury is limited to:

1.   $1,000,000   All Claims Made by Each Claimant

2.   $10,000,000  All Claims under Sexual Acts Liability Coverage

 Multiple Sexual Acts: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

6.     Section Limits of Liability 6. is amended by the addition of the following:

      Subject to Section Limits of Liability J., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the amount stated in Item 6. (b) (d) of the Declarations, Policy Aggregate Limit of Liability, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

In consideration of the premium paid, it is hereby understood and agreed that the Locum Tenens/Contract Staffing Services General Liability Insurance Coverage Part is amended as follows:

1.     Section Definitions is amended by the addition of the following:

      **W.**      **Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured s Professional services.

      **X.**      **Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

2.     Section The Exclusions B. is amended by the addition of the following exclusions:

      18. any Claim based upon or arising out of any Sexual Injury; or

      19. to any Claim based upon or arising out of any allegations that the Insured was negligent in hiring, training or supervising any person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury.

All other provisions of the policy shall remain unchanged.

**Page 3 of 3**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CLAIM EXPENSES IN ADDITION TO THE EACH OCCURRENCE/EACH PERSON OR ORGANIZATION LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section Limits of Liability A., B. and C. are deleted and replaced with the following:

   **A. Coverage A. - Limit of Liability-Each Occurrence:** The total liability of the Company for Damages for all Claims because of all Bodily Injury or Property Damage sustained by one or more persons or organizations as the result of any one Occurrence shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Occurrence.

   **B. Coverage A. - Limit of Liability-Fire Damage:** The total liability of the Company for Damages for all Claims because of Property Damage to premises, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises arising out of any one fire, shall not exceed the Limit of Liability stated in the Declarations as applicable to Fire Damage Any One Fire.

   **C. Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for Damages for all Claims under Coverage B. because of all Personal and Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Person or Organization.

2. Section Defense, Settlements and Claim Expenses A. is deleted and replaced with the following:

   **A. Defense, Investigation and Settlement of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

   1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the General Liability Limits of Liability stated in Items 5.II.A. and B. of the Declarations; however, such Claim Expenses incurred in defending and investigating such Claim shall be part of and shall not be in addition to the General Liability Coverage Part Aggregate Limit of Liability stated in the Declarations. Such Claim Expenses shall reduce the General Liability Coverage Part Aggregate Limit of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable General Liability Limits of Liability stated in the Declarations have been exhausted.

   2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

**a.** Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** Providing any other reasonable information requested;

**c.** Providing fully itemized billing on a periodic basis; and

**d.** Cooperating with the Company and the Insured in resolving any discrepancies;

And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the General Liability Limits of Liability stated in Items 5.II.A. and B. of the Declaration, however, such Claim Expenses shall be part of and shall not be in addition to the General Liability Coverage Part Aggregate Limit of Liability stated in the Declarations. Such Claim Expenses shall reduce the General Liability Coverage Part Aggregate Limit of Liability and shall be applied against the Deductible.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT   PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section The Insured is amended by the addition of the following:

   Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. **Additional Insured** means, whenever used in this endorsement, the following:

   Any organization that the Insured is required to include under the policy as an Additional Insured by a written contract or written agreement in effect during this policy period and executed prior to the occurrence of the Professional Personal Injury.

3. Coverage provided to any Additional Insured as defined herein shall apply solely to an act, error or omission involving the Professional Services covered by this Coverage Part.

4. The person or organization is only an Additional Insured with respect to liability arising out of the Professional Services performed by the Named Insured.

5. No coverage shall be afforded to the above Additional Insured for Professional Personal Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

6. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written  contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

7. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and

otherwise comply with all the policy s terms and conditions. Failure to comply with this provision may, at the Company s option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured. It is further agreed that where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT    GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.**    Section The Insured is amended to include as an additional Insured the following:

any Additional Insured shown in the Schedule below.

**2.**    Coverage provided to any Additional Insured as scheduled herein shall apply solely with respect to the Specified Products, Goods, Operations and Premises of the Named Insured stated in the Declarations.

**3.**    No coverage shall be afforded to the Additional Insured for Bodily Injury, Property Damage, Personal and Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because of Damages arising out of such injury.

**4.**    In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

**5.**    The person or organization is only an Additional Insured with respect to liability arising out of the Specified Products, Goods, Operations or Premises of the Named Insured.

**6.**    In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy s terms and conditions. Failure to comply with this provision may, at the Company s option, result in the claim or suit being denied.

**Page 1 of 2**

7.  Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the Additional Insured. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

8.  Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured. It is further understood that, where required by contract, the Company waives all rights of subrogation against the Additional Insured.

### SCHEDULE

Additional Insured:      Any person or organization to whom the Coverage B Named Insured is obligated by valid written contract to provide coverage as an additional insured to such person or organization

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INDIANA    CONSENT TO SETTLEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the premium paid, it is hereby understood and agreed that the policy that in accordance with Indiana Statute, IC 27-1-13-7, Section Defense, Settlements and Claim Expenses B. is amended by the addition of the following:

The Company shall have the right to settle any Claim without the consent of the Insured when the unanimous opinion of the Medical Review Panel under Indiana Statute, IC 34-18-10-22 (b)(1) is that the evidence supports the conclusion that the defendant failed to comply with the appropriate standard of care as charged in the complaint.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GOOD SAMARITAN ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** Section Definitions G. is deleted and replaced with the following:

    **G.** **Malpractice** means an act, error or omission in: (1) Medical Services rendered or that should have been rendered; or (2) in rendering a Good Samaritan Act.

**2.** Section Definitions is amended by the addition of the following:

    **Good Samaritan Act** means emergency health care, emergency medical care, or emergency treatment provided to a patient without compensation or expectation of compensation at the scene of any emergency; and only if provided by a Coverage A. Named Insured.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS D.

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that Section Definitions D. is deleted and replaced with the following:

D. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

1. multiplied portions of damages in excess of actual damages, including trebling of damages;

2. taxes, criminal or civil fines, or attorneys fees of a party other than an Insured or other penalties imposed by law;

3. sanctions;

4. matters which are uninsurable under the law pursuant to which this policy shall be construed; or

5. the return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured.

All other terms and conditions remain unchanged.

**MELT 2201 07 11**                                                                                     **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS MANAGEMENT EMERGENCY RESPONSE
## EXPENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

    **Crisis Management Emergency Response Expense Reimbursement Limit: $25,000**

**2.** Section SUPPLEMENTARY PAYMENTS, Crisis Management Emergency Response Expense Reimbursement, is added as follows:

    **SUPPLEMENTARY PAYMENTS**

    **Crisis Management Emergency Response Expense Reimbursement:** In the event that:

        **a.** During the Policy Period, the Coverage B. Named Insured incurs Crisis Management Emergency Response Expenses with the prior written approval of the Company; and

        **b.** During the Policy Period or within six (6) months following the date the Crisis was initiated, the Coverage B. Named Insured submits a request for reimbursement of such Crisis Management Emergency Response Expenses by providing an itemized accounting of such Crisis Management Emergency Response Expenses, which is submitted in writing to the Company by completion of the Company's Crisis Management Emergency Response Expense Reimbursement Form which must be submitted to the Company addressed to Medical Professional Team, Markel Service Incorporated, 10 Parkway North, Deerfield, IL 60015 (Fax: (847) 572-6377);

    the Company will reimburse the Coverage B. Named Insured for such Crisis Management Emergency Response Expenses up to the Crisis Management Emergency Response Expense Reimbursement Limit set forth in Item 1. of this endorsement.

    Reimbursement to the Coverage B. Named Insured pursuant to this provision shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to the Deductible.

**3.** Section DEFINITIONS is amended by the addition of the following:

    **Crisis** means the public announcement that an Incident occurred on the Coverage B. Named Insured s premises or at an event sponsored by the Coverage B. Named Insured.

    **Crisis Management Emergency Response Expenses** mean those expense incurred by the Coverage B. Named Insured for services provided by a Crisis Management Firm. However, Crisis Management Emergency Response Expenses shall not include:

        **1.** Compensation, fees, benefits, overhead, charges or expense of any person or organization included in the definition of Insured;

2.    Any expenses that are payable on the Coverage B. Named Insured s behalf or reimbursable to the Coverage B. Named Insured under any other insurance, whether collectible or not;

3.    Claim adjustment costs incurred by the Coverage B. Named Insured, such as fees incurred by retaining a public adjuster or appraiser.

**Crisis Management Firm** means any service provider requested by the Coverage B. Named Insured and approved by the Company to provide Crisis management emergency response services. The Company s approval shall not be unreasonably withheld.

**Incident** means an accident or other event, including the accidental discharge of pollutants, resulting in death or Serious Bodily Injury to three (3) or more persons.

**Serious Bodily Injury** means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NOTICE OF CLAIM ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that Specified Medical Professions Professional Liability Coverage Part, Section INSURING AGREEMENT**,** is amended to include the following:

A Claim or Suit shall be considered to be first made against the Insured at the earlier of the following:

1.    When notice of Claim or suit is received by General Counsel or the Risk Management or Legal Department of the Insured; or,

2.    When the General Counsel or the Risk Management or Legal Department of the Insured knew about or should reasonable have known a circumstance was likely to result in a Claim or suit; or,

3.    When a Claim or suit is reported in writing directly to the Company or one of its agents.

It is further understood and agreed that Specified Medical Professions General Liability Insurance Coverage Part, Section Insuring Agreements is amended to include the following:

A Claim or Suit shall be considered to be first made against the Insured at the earlier of the following:

1.    When notice of Claim or suit is received by General Counsel or the Risk Management or Legal Department of the Insured; or,

2.    When the General Counsel or the Risk Management or Legal Department of the Insured knew about or should reasonable have known a circumstance was likely to result in a Claim or suit; or,

3.    When a Claim or suit is reported in writing directly to the Company or one of its agents.

All other provisions of the policy shall remain unchanged.

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## UTILIZATION, QUALITY ASSURANCE, ACCREDITATION COMMITTEE AND PEER REVIEW ACTIVITIES ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

The coverage afforded by this Coverage Part extends to Claims made against an Insured arising out an act, error or omission in services rendered as a member of a formal accreditation or similar professional board or committee, utilization review committee, quality assurance committee, peer review committee, or standards review board or committee of which he/she is a member

All other provisions of the policy shall remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 28

| POLICY NUMBER<br>SM904115 | POLICY CHANGES<br>EFFECTIVE<br>November 15, 2014 | COMPANY<br>EVANSTON INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br>CCS INTERMEDICATE HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AMWINS ACCESS INSURANCE<br>SERVICES, LLC<br>2851 CHARLEVOIX DRIVE, SE<br>Suite 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING
   PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE

CHANGES

**ADDITONAL NAMED INSURED**

It is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:

| Additional Named Insured | Retroactive Date |
|---|---|
| CCS Group Holdings, LLC | November 15, 2013 |
| CCS Intermediate Holdings, LLC, | November 15, 2013 |
| CCS-CHC Holdings, LLC | June 24, 2014 |
| Conmed Healthcare Management, Inc. | November 15, 2013 |
| Conmed Texas, Inc. | November 15, 2013 |
| Conmed, Inc. | November 15, 2013 |
| Correct Care Solutions, LLC | November 15, 2013 |
| Correctional Mental Health Services, LLC | November 15, 2014 |
| Physicians Network Association | November 15, 2014 |
| Salus LLC | February 20, 2014 |
| California CCS, P.A. | November 15, 2013 |
| CCS Arkansas Medical Services, P.A. | January 1, 2014 |
| CCS-Zoldessy Arkansas Dental Services, P.A. | January 1, 2014 |
| CCS Colorado Medical Services, P.C. | November 15, 2013 |

Case 3:21-cv-00675   Document 36-6   Filed 01/31/22   Page 51 of 88 PageID #: 2754

| Additional Named Insured | Retroactive Date |
|---|---|
| CCS Delaware Medical Services, P.A. | November 15, 2013 |
| CCS Florida Medical Services, P.A. | November 15, 2013 |
| CCS Georgia Medical Services, P.C. | November 15, 2013 |
| CCS Illinois Medical Services, S.C. | November 15, 2013 |
| CCS Indiana Medical Services, P.C. | November 15, 2013 |
| CCS-Kansas Physicians, P.A. | November 15, 2013 |
| CCS Kentucky Medical Services, P.S.C. | November 15, 2013 |
| CCS Michigan Medical Services, P.C. | November 15, 2013 |
| CCS Nebraska Medical Services, P.C. | November 15, 2013 |
| CCS-Kastre Nevada, P.C. | November 15, 2013 |
| CCS New Jersey Medical Services Professional Corporation | November 15, 2013 |
| New York Correct Care Solutions Medical Services, P.C. | November 15, 2013 |
| CCS North Carolina Medical Services, P.C. | November 15, 2013 |
| CCS South Carolina Medical Services, P.C. | November 15, 2013 |
| CCS South Dakota Medical Services, P.C. | November 15, 2013 |
| CCS   TN Physicians, P.C. | November 15, 2013 |
| CCS Texas Medical Services, P.A. | November 15, 2013 |
| CCS Vermont Medical Services, P.C. | November 15, 2013 |
| CCS Virginia Medical Services, P.C. | November 15, 2013 |
| CCS Wisconsin Medical Services, S.C. | November 15, 2013 |

Authorized Representative

All other terms and conditions remain unchanged.

Case 3:21-cv-00675   Document 36-6   Filed 01/31/22   Page 52 of 88 PageID #: 2755



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) CIVIL MONETARY PENALTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
   COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.    The policy is amended by the addition of the following:

    **SUPPLEMENTARY PAYMENTS**

    **A.**    **HIPAA Civil Monetary Penalty Coverage:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as a Civil Monetary Penalty as a result of a HIPAA Civil Violation first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, arising out of any HIPAA Civil Violation committed or alleged to have been committed by the Insured or by any person for whose actions the Insured is legally responsible provided:

        **1.**    such HIPAA Civil Violation:

            **a.**    arises out of the conduct of the Insured's Professional Services; and

            **b.**    is committed or alleged to have been committed during the Policy Period or on or after the Retroactive Date as stated in the Declarations; and

        **2.**    prior to the effective date of this policy the Insured had no knowledge of such HIPAA Civil Violation or any fact, circumstance, situation or incident which may result in a HIPAA Civil Violation.

    **Limits of Liability - HIPAA Civil Monetary Penalty**: The total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for each HIPAA Civil Violation first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to Each HIPAA Civil Violation. Subject to the foregoing, the total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for all HIPAA Civil Violations first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to All HIPAA Civil Violations.

    **1.**    $250,000        Each HIPAA Civil Violation

    **2.**    $250,000        All HIPAA Civil Violations

    The Insured shall give the Company written notice as stated in the Declarations within ten (10) days of the Insured receiving a notice of HIPAA Civil Violation and in any event such written notice shall be provided prior to the Insured incurring any legal fees or legal expenses related to such matter.

    The Company shall have the right and duty to defend and investigate any HIPAA Civil Violation to which

coverage under this Coverage Part applies. The Company may make such investigation and settlement of any HIPAA Civil Violation as it deems expedient. Legal Expenses incurred in defending and investigating a HIPAA Civil Violation shall be a part of and shall not be in addition to the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. Such Legal Expenses shall reduce the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage and shall be applied against the Deductible. The Company shall have no obligation to pay any Civil Monetary Penalty or to defend or to continue to defend any HIPAA Civil Violation or to pay Legal Expenses for HIPAA Civil Violations after the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage have been exhausted.

Payments pursuant to this Section shall be in addition to the Limits of Liability stated in the Declarations.

**2.**     Section Definitions is amended by the addition of the following:

**Civil Monetary Penalty** means a civil monetary penalty imposed by the Secretary of the United States Department of Health and Human Services, or his or her designee, under 42 U.S.C. §1320d-5 and 45 C.F.R. §160.404.

**Health Insurance Portability and Accountability Act ( HIPAA )** means the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

**HIPAA Civil Violation** means a notice received by the Insured for failure to comply with the HIPAA Standards for Privacy of Individually Identified Health Information (Privacy Rule) which protects the privacy of individual health information, including maintaining the confidentiality of information regarding medical services and limiting the release or use of such information in conformance with state or federal law, including any allegation that the Insured was negligent in hiring, training or supervising any Insured person who failed or is alleged to have failed to comply with the Privacy Rule.

**Legal Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any HIPAA Civil Violation for which coverage is afforded under this Coverage Part, including costs of investigation and costs of appeals; provided, however, Legal Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**3.**     Section The Exclusions is amended by the addition of the following exclusions:

With respect to Supplementary Payments, HIPAA Civil Monetary Penalty Coverage, such coverage does not apply to any HIPAA Civil Violation:

**1.**     based upon, arising out of, or in any way involving:

    **a.**     any HIPAA Civil Violation or any claim, fact, circumstance, situation or incident which has or may result in a HIPAA Civil Violation that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

    **b.**     any HIPAA Civil Violation, whenever occurring, which is logically or causally connected to another HIPAA Civil Violation by reason of any common fact, circumstance, situation, event or transaction that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

**2.**     based upon, arising out of, or in any way involving any litigation, demand, investigation, administrative or regulatory proceeding or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to the inception date of this policy, or the same or any substantially similar HIPAA Civil Violation or any fact, circumstance, situation or incident underlying or alleged therein.

**4.**     Section Limits of Liability is amended by the addition of the following:

**Multiple Insureds, HIPAA Civil Violations and Protected Health Information Records Released:** The inclusion herein of more than one Insured in any HIPAA Civil Violation shall not operate to increase the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. More than one HIPAA Civil Violation arising out of a single release of protected health information or a series of related releases of protected health information shall be considered a single HIPAA Civil Violation. All such HIPAA Civil Violations, whenever made, shall be treated as a single HIPAA Civil Violation. Such single HIPAA Civil Violation, whenever made, shall be deemed to be first made on the date on which the earliest HIPAA Civil Violation arising out of such release of protected health information is made.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SUPPLEMENTARY PAYMENTS ENDORSEMENT    TRIAL ATTENDANCE

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**Trial Attendance Supplementary Payments:**  The Company shall pay a $250 per diem trial attendance allowance to any Insured who attends the trial, mediation or arbitration of a Claim or deposition in furtherance of discovery in a Claim; but only if (a) the Claim is against the Insured or alleges negligent acts, errors or omissions performed by or at the direction of the Insured; and (b) the Claim is covered by this policy; and (c) the Insured attends the trial, mediation or arbitration at the written request of the Company.

Payments to the Named Insured pursuant to this Supplementary Payment shall be in addition to the Limits of Liability applicable and shall not be subject to the Deductible. Payments to the Named Insured pursuant to this Supplementary Payment shall be limited to $5,000 per claim and $10,000 total for all claims made under this policy.

All other provisions of the policy shall remain unchanged.

# EVANSTON INSURANCE COMPANY

MARKEL®

---

## Endorsement

---

| | |
|---|---|
| Named Insured: | Attached to and forming |
| CCS INTERMEDIATE HOLDINGS, LLC | a part of Policy No.: SM904115 |
| | Endorsement No.: 32 |
| | Effective Date of Endorsement: November 15, 2014 |

---

### AMENDMENT OF CANCELLATION

**This endorsement modifies the COMMON POLICY CONDITIONS.**

In consideration of the premium paid, it is hereby understood and agreed that the second paragraph of Section Other Conditions A., Cancellation, is deleted and replaced with the following:

> This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective. However, if the policy is cancelled because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 57 of 88 PageID #: 2738

# EVANSTON INSURANCE COMPANY

MARKEL®

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:     SM904115<br>Endorsement No.:     33<br>Effective Date of Endorsement:    November 15, 2014 |

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED ENDORSEMENT    PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

**Locum Tenens and Contract Staffing Professional Liability Insurance Coverage Part**

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.      Section The Insured B. is amended by the addition of the following:

      6.      Any Additional Insured designated herein

2.      Section  Definitions is amended by the addition of the following:

**N.  Additional Insured** means:

      Porter County Jail
      2755 St. Rd 49
      Valparaiso, IN   46383

      The Commonwealth of PA, Department of Corrections    Bureau of Administration
      1920 Technology Parkway
      Mechanicsburg, PA   17050

      to whom the Coverage B Named Insured is obligated by valid written contract to provide coverage as an additional insured to such person or organization but only as respects liability in rendering Professional Services caused by the negligence of any Coverage A. Insured and only for coverage not otherwise excluded in the policy.  Coverage provided to any Additional Insured as defined herein shall apply solely with respect to any Claim or Claim Expenses arising from Professional Services specified in the Declarations and rendered by any Coverage A. Insured  .  Where no coverage shall apply herein for the Coverage A Insured, no coverage or defense shall be afforded to the above Additional Insured.

3.  Section Defense, Investigation and Settlement of Claims is amended by the addition of the following:

  3. The Company s obligation to provide defense shall not be severable with respect to the Named Insured and the Additional Insured.

  6. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or by any applicable professional code of conduct.

  7. This insurance shall be excess and non-contributory insurance over any other insurance afforded to the Additional Insured.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT — GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART — OCCURRENCE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART — CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** Section The Insured is amended to include as an additional Insured the following:

any Additional Insured shown in the Schedule below.

**2.** Coverage provided to any Additional Insured as scheduled herein shall apply solely with respect to the Specified Products, Goods, Operations and Premises of the Named Insured stated in the Declarations.

**3.** No coverage shall be afforded to the Additional Insured for Bodily Injury, Property Damage, Personal and Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because of Damages arising out of such injury.

**4.** Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

### SCHEDULE

Additional Insured:   Porter County Jail
2755 St. Rd 49
Valparaiso, IN   46383

The Commonwealth of PA, Department of Corrections   Bureau of Administration
1920 Technology Parkway
Mechanicsburg, PA   17050

**Page 1 of 1**

# EVANSTON INSURANCE COMPANY

**MARKEL®**

## Endorsement

| | |
|---|---|
| Named Insured:<br>CCS INTERMEDIATE HOLDINGS, LLC | Attached to and forming<br>a part of Policy No.:     SM904115<br>Endorsement No.:     36<br>Effective Date of Endorsement:   November 15, 2014 |

### CHANGE IN CONTROL OF NAMED INSURED

**This endorsement modifies the Common Policy Conditions.**

In consideration of the premium paid, it is hereby understood and agreed that Common Policy Conditions is amended by the addition of the following:

**Change in Control of Named Insured:** If after the inception date of the policy:

1.    the Named Insured is merged into or consolidated with another organization such that it is not the surviving organization, or sells all or substantially all of its assets to another entity or person or group of entities and/or persons acting in concert;

2.    another organization or person or group of organizations and/or persons acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting rights for the election or appointment of directors or trustees of the Named Insured, or acquires the voting rights of such an amount of such interest; or

3.    a receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

no coverage shall be afforded under this policy unless:

(i)    written notice of such event is given to the Company by the Named Insured as soon as practicable, but in no event later than thirty (30) days after such transaction or event, including complete details of the nature of such transaction or event and the other organization, person, group of organizations, persons acting in concert, receiver, liquidator, conservator, trustee and/or similar official appointed with respect to the Named Insured;

(ii)    the Named Insured submits such additional information in connection therewith as the Company may deem necessary;

(iii)    the Company, at its sole discretion, agrees to continue coverage by written endorsement to the policy; and

(iv)    the Named Insured agrees to accept any special terms, conditions, exclusions or additional premium charge as may be required by the Company.

All other provisions of the policy shall remain unchanged.

Case 3:21-cv-00675     Document 56-6     Filed 01/31/22     Page 62 of 88 PageID #: 2789



# EVANSTON INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

Throughout this policy, the term Company refers to the insurance company providing this insurance.

**A.  CANCELLATION**

This policy may be cancelled by the Coverage B. Named Insured on behalf of all Insureds by mailing written notice as stated in the Notices item of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Coverage B. Named Insured, the Company shall retain the customary short rate proportion of the premium. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company, by mailing to the Coverage B. Named Insured on behalf of all Insureds at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Coverage B. Named Insured has failed to pay a premium or deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Coverage B. Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice by the Coverage B. Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

**B.  REPRESENTATIONS**

By acceptance of this policy, the Insureds agree as follows:

**1.** That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

**2.** That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

**C.  ENTIRE AGREEMENT**

The Declarations, Common Policy Conditions, Coverage Part(s), any written endorsements and any application(s) shall be deemed to be a single unitary contract.

**D.  OTHER INSURANCE**

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

**E.  CHANGES**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 63 of 88 PageID #: 2798

under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

## F.  ASSIGNMENT OF INTEREST

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

## G.  SUBROGATION

In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person or organization included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation.

Any amount so recovered, whether effected by the Company or by the Insured, shall first be used for the repayment of expenses incurred toward subrogation; second, for any Damages and Claim Expenses payment by the Insured which is in excess of the amount of the Limit of Liability under this policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages and claims expenses payment by any excess carrier on behalf of the Insured; fourth, for any damages and claim expenses payment by any primary carrier on behalf of the Insured; and, last, for repayment of the Insured's Deductible.

## H.  ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

**1.**  Submit to examination and interview by a representative of the Company, under oath if required;

**2.**  Attend hearings, depositions and trials;

**3.**  Assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;

**4.**  Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; and

**5.**  Provide any information required to comply with federal or state reporting regulations;

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

## I.  FALSE OR FRAUDULENT CLAIMS

If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

## J.  INSPECTION AND AUDIT

The Company shall be permitted but not obligated to inspect the Insured's operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the Insured's books and records at any time during the Policy Period and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

**K.     ACTION AGAINST THE COMPANY**

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

**L.     AUTHORIZATION**

By acceptance of this policy, the first Coverage B. Named Insured stated in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period, if available; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such organization shall act on their behalf.

**M.     SERVICE OF SUIT**

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Coverage B. Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company s rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Case 3:21-cv-00675     Document 56-6     Filed 01/31/22     Page 65 of 88 PageID #: 2788



# EVANSTON INSURANCE COMPANY

## LOCUM TENENS AND CONTRACT STAFFING
## PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the payment of the premium, the undertaking of the Coverage B. Named Insured authorized to act on behalf of all Insureds to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitation of this policy, the Company agrees with the Coverage A. Named Insured and the Coverage B. Named Insured as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** Under Coverage A. Individual Professional Liability, the Coverage A. Insured:

    **1.** The Coverage A. Named Insured which is herein defined as each individual stated in Item 1.A. of the Declarations, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties as such;

    **2.** Any formerly employed or formerly contracted Healthcare Provider of the Coverage B. Named Insured, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties as such; provided:

        **a.** Coverage would have been afforded under this policy had the Claim been made while such contracted Healthcare Provider was an Insured under this policy; and

        **b.** There is no other insurance available to such Healthcare Provider for such Claim.

**B.** Under Coverage B. Organization Liability, the Coverage B. Insured:

    **1.** The Coverage B. Named Insured which is herein defined as the organization stated in Item 1.B. of the Declarations;

    **2.** Any member, stockholder or partner of the Coverage B. Named Insured with respect to Malpractice of others, provided that no member, stockholder or partner shall be an Insured under this paragraph B. with respect to liability for his/her Malpractice;

    **3.** Any Employee of the Coverage B. Named Insured, but solely while acting on behalf of the Coverage B. Named Insured and within the scope of their duties as such;

    **4.** Any medical director solely while acting on behalf of the Coverage B. Named Insured and solely within the scope of his/her Administrative Duties as such; provided, however, this insurance shall not apply to any Claim made against any medical director who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Medical Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

    **5.** The heirs, executors, administrators, assigns and legal representatives of each Insured as stated in Items B.1. - 4. above in the event of his/her death, incapacity or bankruptcy.

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 66 of 88 PageID #: 2739

## INSURING AGREEMENT

**A.** **Professional Liability and Claims Made Clause:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision:

   **1.** Under Coverage A. Individual Professional Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by the Coverage A. Insured, or by any person for whose Malpractice or Professional Personal Injury the Coverage A. Insured is legally responsible, except as a member, stockholder or partner of an association, corporation, partnership or limited liability company, arising out of the conduct of the Insured s Medical Services;

   **2.** Under Coverage B. Organization Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by any person for whom the Coverage B. Named Insured is legally responsible, arising out of the conduct of the Insured s Professional Healthcare Services;

   Provided:

   **a.** Under Coverage A. Individual Professional Liability: that such Malpractice or Professional Personal Injury happens during the Policy Period or on or after the applicable Retroactive Date stated in the Declarations and before the end of the Policy Period; and

   **b.** Under Coverage B. Organization Liability: that such Professional Healthcare Services or Professional Personal Injury happens during the Policy Period or on or after the applicable Retroactive Date stated in the Declarations and before the end of the Policy Period; and

   **c.** Prior to the effective date of this policy the Coverage A. and Coverage B. Insureds had no knowledge of such Malpractice, Professional Healthcare Services or Professional Personal Injury or any fact, circumstance, situation or incident which may lead a reasonable person in that Insured s position to conclude that a Claim was likely.

## DEFINITIONS

**A.** **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Coverage B. Named Insured; provided, however, Administrative Duties shall not include:

   **1.** Rendering or failure to render to a patient Medical Services by a medical director which results in Professional Personal Injury; or

   **2.** Rendering or failure to render patient specific medical direction via telecommunications to other healthcare professionals.

**B.** **Claim** means the Insured s receipt of:

   **1.** A demand for monetary damages or services involving Professional Healthcare Services; or

   **2.** The service of suit or institution of arbitration proceedings against the Insured involving Professional Healthcare Services.

**C.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

   **1.** Salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Coverage A. Named Insured or the Coverage B. Named Insured or employees or officials of the Company; or

   **2.** Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Coverage A. Named Insured or the Coverage B. Named Insured or the Company.

Case 3:21-cv-00675     Document 56-6     Filed 01/31/22     Page 67 of 88 PageID #: 2749

**D.** **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

  **1.** Punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages;

  **2.** Taxes, criminal or civil fines, or attorneys fees of a party other than an Insured or other penalties imposed by law;

  **3.** Sanctions;

  **4.** Matters which are uninsurable under the law pursuant to which this policy shall be construed; or

  **5.** The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured.

**E.** **Employee** means any natural person other than a Healthcare Provider while in the regular service of the Coverage B. Named Insured in the ordinary course of the Coverage B. Named Insured s business and whom the Coverage B. Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service.

**F.** **Healthcare Provider** means physician, surgeon, dentist, podiatrist, psychologist, nurse midwife, nurse anesthetist, anesthesiologist assistant, nurse practitioner, physician s assistant, surgeon s assistant, optometrist; or any person licensed, certified or otherwise authorized to deliver advanced level healthcare in the absence of direct supervision by a licensed physician, surgeon, dentist or podiatrist.

**G.** **Malpractice** means an act, error or omission in Medical Services rendered or that should have been rendered.

**H.** **Medical Services** means services, including but not limited to Telemedicine Services, provided in the medical care or treatment of any patient, but only where such care or treatment is within the scope of the Healthcare Provider s license, certificate or other qualification to practice Medical Services.

**I.** **Placement Services** means evaluating, selecting, hiring and contracting with Healthcare Providers to provide Medical Services for healthcare organizations; provided, however, Placement Services shall not include medical credentialing or managed care services.

**J.** **Professional Personal Injury** means:

  **1.** Any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, arising out of Malpractice;

  **2.** False arrest, detention or imprisonment, or malicious prosecution of any patient, except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification; or

  **3.** The publication or utterance of a libel or slander concerning a patient or a publication or an utterance in violation of a patient's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed, without legal justification.

**K.** **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in the Declarations, or the effective date of any earlier cancellation or termination.

**L.** **Professional Healthcare Services** means:

  **1.** Medical Services; and

  **2.** Placement Services.

**M.** **Telemedicine Services** means the use of medical information exchanged from one site to another via electronic communications to diagnose, treat or refer a patient, including, specialist referral services, patient consultation and remote patient monitoring.

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 68 of 88 PageID #: 2791

## THE EXCLUSIONS

This insurance does not apply to:

**A.** Any Malpractice, Professional Healthcare Services or Professional Personal Injury committed in violation of any law or ordinance;

**B.** Any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly, wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured;

**C.** Any Malpractice or Professional Personal Injury that happens while the Insured s license or certificate to practice the Insured s profession is suspended, surrendered, revoked, expired, terminated, or otherwise not in effect;

**D.** Any Claim based upon or arising out of the invasion of privacy, or the infringement or interference with the right of privacy resulting from the use, visitation of, posting or browsing of any bulletin board services, website or URL location;

**E.** Any Claim based upon or arising out of the gathering, use or dissemination of personal information in any form including but not limited to any violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

**F.** Any Claim based upon or arising out of any unlawful discrimination by any Insured;

**G.** Any Claim based upon or arising out of any act, error or omission committed or alleged to have been committed by the Insured that in any manner relates to or arises out of the actual, alleged or threatened discharge, dispersal, release, escape or existence of pollutants, hazardous substances, toxic substances or substances which in any manner impair or allegedly impair the environment or which result in bodily injury or property damage;

**H.** Any liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner or trustee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory or any business enterprise not named as an Insured under this policy unless such activities are disclosed in the application and covered by endorsement to this policy;

**I.** Any Claim based upon or arising out of the liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement;

**J.** Any Claim arising out of general liability, or goods or products manufactured, sold, handled or distributed by the Insured or by others trading under an Insured's name;

**K.** Any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft;

**L.** Any Claim based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature; provided, however, the Company agrees to defend any such Claim, subject to the applicable limits of liability, until a final judgment has been determined. If judgment is rendered against the Coverage A. Named Insured, the Coverage B. Named Insured, upon written demand by the Company, agrees to reimburse the Company for all Claim Expenses incurred in the defense of such Claim, within ten (10) days;

**M.** Any Claim based upon or arising out of Medical Services rendered while an Insured was under the influence of alcohol, narcotics, hallucinogenic agents or which involves any other allegation of substance abuse; provided, however, the Company agrees to defend any such Claim, subject to the applicable limits of liability, until a final judgment has been determined. If judgment is rendered against the Coverage A. Named Insured, the Coverage B. Named Insured, upon written demand by the Company, agrees to reimburse the Company for all Claim Expenses incurred in the defense of such Claim, within ten (10) days;

**N.** Any Claim based upon, arising out of, or in any way involving:

   **1.** The employment relationship or the nature, terms or conditions of employment or any workplace tort brought by or on behalf of any Employee, former Employee, prospective Employee, independent contractor or consultant of the Insured or to Professional Personal Injury to, or sickness, disease or death of any Employee of the Insured arising out of, and in the course of his/her employment by the Insured;

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 69 of 88 PageID #: 2742

2. Any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law; or

3. Any actual or alleged violation of the Employee Retirement Income Security Act of 1974, or any other similar federal, state or common law or any amendments thereto;

**O.** Any Claim based upon or arising out of use, administration or prescription of any drug, pharmaceutical, medical device or procedure which has not received final approval by the U. S. Food and Drug Administration (FDA) for treatment of humans or which is not used, administered or prescribed as part of an FDA approved study;

**P.** Any Claim based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of an advertisement;

**Q.** Any Claim based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.;

**R.** Any Claim based upon or arising out of Telemedicine Services in a jurisdiction where such Telemedicine Services are not permitted under the definition of the practice of medicine by the Board of Medicine in that jurisdiction;

**S.** Any Claim based upon or arising out of the disarming or disabling of any alarms or monitoring devices of medical equipment;

**T.** Any Claim based upon or arising out of:

1. The failure to maintain medical records in their original condition;

2. Creating, altering, amending or modifying medical records;

3. Improperly disposing of medical records;

4. The failure to maintain the privacy and security of medical records or private personal information;

**U.** Any Claim made against the Insured:

1. By any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an Insured or parent company or any subsidiary, division or affiliated organization; or

2. By or on behalf of any Insured under this policy; provided, however, this exclusion shall not apply to any Claim made against any Insured arising out of the rendering of or failure to render Professional Healthcare Services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, if such Insured is a patient of the Insured;

**V.** Any Claim based upon or arising out of:

1. Any allegations of price fixing, unfair competition or trade practices;

2. A dispute over fees, income or revenue;

3. The inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or

4. Violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

**W.** Any Claim based upon or arising out of the professional services provided by a perfusionist; or

**X.** Any Claim brought under any other Coverage Part of this policy.

## TERRITORY

The insurance afforded applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.**     **Coverage A. Limit of Liability-Each Claim:** The total liability of the Company under Coverage A. for the combined total of Damages and Claim Expenses for each Claim first made against each Coverage A. Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Coverage A. Limit of Liability stated in the Declarations as applicable to Each Claim.

**B.**     **Coverage A. Limit of Liability-Aggregate:** Subject to the above Limits of Liability A., the total liability of the Company under Coverage A. shall not exceed the Coverage A. Aggregate Limit of Liability stated in the Declarations for the combined total of Damages and Claim Expenses arising out of all Claims first made against each Coverage A. Insured during the Policy Period and the Extended Reporting Period, if exercised.

**C.**     **Coverage B. Limit of Liability-Each Claim:** The liability of the Company under Coverage B. for the combined total of Damages and Claim Expenses for each Claim first made against each Coverage B. Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Coverage B. Limit of Liability stated in the Declarations as applicable to Each Claim.

**D.**     **Coverage B. Limit of Liability-Aggregate:** Subject to the above Limits of Liability C., the total liability of the Company under Coverage B. shall not exceed the Coverage B. Aggregate Limit of Liability stated in the Declarations for the combined total of Damages and Claim Expenses arising out of all Claims first made against each Coverage B. Insured during the Policy Period and the Extended Reporting Period, if exercised.

**E.**     **Coverage A., Coverage B. or Both Coverage A. and B. Combined:** Subject to the above Limits of Liability A., B., C., and D. above, one or more Claims made against more than one Insured under Coverage A., Coverage B. or both Coverage A. and B. combined arising out of Malpractice, Professional Healthcare Services or Professional Personal Injury sustained by one patient shall be a single patient Claim to which the limit of liability for Single Per Patient Claim shall apply to all Insureds. The total liability of the Company shall not exceed the Limit of Liability stated in the Declarations as applicable to Single Per Patient Claim regardless of the number of Insureds against whom Claim is made by or on behalf of one patient. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company, and all such Claims shall be subject to the same Single Per Patient Claim limit of liability.

**F.**     **Coverage Part Aggregate Limit:** Subject to the above Limits of Liability A., B., C., D. and E. above, the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability stated in the Declarations for the combined total of Damages and Claim Expenses arising out of all Claims first made against all Insureds during the Policy Period and the Extended Reporting Period, if exercised.

**G.**     **Deductible:** The deductible amount stated in the Declarations shall be paid by the Coverage B. Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Coverage B. Named Insured within ten (10) days. The total payments requested from the Coverage B. Named Insured in respect of each Claim shall not exceed the Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

**H.**     **Apportionment of Losses Against Aggregate Limits:** All sums which the Company pays on behalf of a Coverage B. Insured and one or more Coverage A. Insureds as the result of a Claim or as the result of a notice given to the Company pursuant to Section Claims B., Discovery Clause, shall be apportioned against the Coverage B. Limit of Liability and the Coverage A. Limit of Liability and the respective apportioned amounts shall thereby reduce: (1) the aggregate limit of liability applicable under Coverage B.; and (2) the aggregate limit of liability applicable under Coverage A. Nothing stated herein shall operate to increase any limit of liability of the Company as stated in the Declarations. Such sums shall be apportioned among the Insureds under this Coverage Part as follows:

1. In the event notice is given to the Company pursuant to the Section Claims B., Discovery Clause, or if a Claim is settled or withdrawn prior to judgment, award or verdict, or if a judgment, award or verdict is rendered generally and without regard to the relative culpability of those against whom it is rendered, the Damages and Claim Expenses shall be apportioned, in equal shares against:

   a. The remaining aggregate limit of liability available under Coverage B.; and

   b. The remaining aggregate limit of liability available under Coverage A. to each Coverage A. Insured against whom such Claim has been made individually, until each applicable aggregate limit of liability has been exhausted.

2. In the event that subparagraph 1. does not apply and judgment, award or verdict is rendered, the Damages and Claim Expenses shall be apportioned, in such shares as those shares relate to the judgment, award or verdict in the manner of its rendition as to each Insured against:

   a. The remaining aggregate limit of liability available under Coverage B.; and

   b. The remaining aggregate limit of liability available under Coverage A. to each Coverage A. Insured against whom such judgment, award or verdict has been rendered individually, until each applicable aggregate limit of liability has been exhausted.

**I. Multiple Insureds, Claims and Claimants:**

1. The inclusion herein of more than one Insured in any Claims or suits or the making of Claims or bringing of suit by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single Malpractice, Professional Healthcare Service or Professional Personal Injury or a series of related Malpractices, Professional Healthcare Services or Professional Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

2. Subject to Sections Limits of Liability A., B., C., D., E. and F. above, and regardless of the number of Claims made, or the number of claimants or the number of Insureds hereunder, more than one Claim made during the Policy Period, including any Extended Reporting Period, if exercised, against any one Insured arising out of injuries sustained by any one patient as a result of Malpractice, Professional Healthcare Services or Professional Personal Injury shall constitute a single Claim and the liability of the Company shall not exceed the amount stated in the Declarations.

3. Subject to Sections Limits of Liability A., B., C., D., E. and F. above, and regardless of the number of Claims made, or the number of claimants or the number of Insureds hereunder, one or more Claims first made during the Policy Period, including any Extended Reporting Period, if exercised, against two or more Insureds arising out of injuries sustained by one patient as a result of Malpractice, Professional Healthcare Services or Professional Personal Injury shall constitute a single Claim and the liability of the Company shall not exceed the amount stated in the Declarations.

4. In the event that a Claim is first made during the Policy Period, including any Extended Reporting Period, if exercised, against an individual in both capacities as described in Coverage A. and Coverage B., a single limit of liability shall apply and, in the event that the Coverage A. and Coverage B. Each Claim Limits of Liability are not of equal amounts, that limit of liability shall be the greater of the amounts stated in the Coverage A. Limit of Liability as applicable to Each Claim or the Coverage B. Limit of Liability as applicable to Each Claim.

# DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

**A. Defense, Investigation and Settlement of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages

or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. Providing any other reasonable information requested;

   c. Providing fully itemized billing on a periodic basis; and

   d. Cooperating with the Company and the Insured in resolving any discrepancies;

   And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

B. **Consent to Settlement:** The Company shall not settle any Claim without the consent of the Coverage B. Named Insured. If the Insured is a professional association, corporation, partnership or limited liability company, the written consent of an Insured who was formerly but is no longer a member, stockholder, or partner of the Coverage B. Named Insured will not be required, provided the written consent of the first Coverage B. Named Insured stated in Item 1. of the Declarations has been obtained. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled including Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of Section Limits of Liability.

# CLAIMS

A. **Claim Reporting Provision:** It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B. **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Malpractice, Professional Healthcare Services or Professional Personal Injury which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice as stated in the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Malpractice, Professional Healthcare Services or Professional Personal Injury shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. The description of the specific Malpractice, Professional Healthcare Services or Professional Personal Injury;

2. The date on which such Malpractice, Professional Healthcare Services or Professional Personal Injury took place;

3. The injury or damage which has or may result from such Malpractice, Professional Healthcare Services or Professional Personal Injury;

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 73 of 88 PageID #: 2749

4.  The identity of any injured persons; and

5.  The circumstances by which the Insured first became aware of such Malpractice, Professional Healthcare Services or Professional Personal Injury.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Malpractice, Professional Healthcare Services or Professional Personal Injury which is reasonably expected to result in a Claim within the scope of coverage of this policy, the Company at its sole option, may investigate such specific Malpractice, Professional Healthcare Services or Professional Personal Injury. Such matter shall be subject to all terms, conditions and provisions in this policy as applicable to a Claim.

## EXTENDED REPORTING PERIOD

A.  In the event of the termination of this insurance by reason of nonrenewal or cancellation by the Coverage B. Named Insured authorized to act on behalf of all Insureds or if the Company shall cancel coverage or terminate it by refusing to renew, for reasons other than the nonpayment of premium and/or deductible or non-compliance with the terms and conditions of this policy, then the Coverage B. Named Insured authorized to act on behalf of all Insureds shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the annual premium for the Policy Period to extend the coverage granted under this policy for the period of months stated in the Declarations, as elected by the Coverage B. Named Insured, to apply to Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any Malpractice, Professional Healthcare Services or Professional Personal Injury committed on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this policy. This extended period of coverage as elected by the Coverage B Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If however, this insurance is succeeded within thirty (30) days by claims made insurance coverage on which the applicable Retroactive Date is the same as or earlier than that stated in the Declarations of this policy, the succeeding insurance shall be deemed to be a renewal hereof, and in consequence the Coverage B. Named Insured authorized to act on behalf of all Insureds shall have no right to secure an Extended Reporting Period.

The quotation of a different premium and/or deductible and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any Insured's license or right to practice his/her profession is revoked, suspended or surrendered.

B.  As a condition precedent to the Coverage B. Named Insured's right to purchase the Extended Reporting Period, the Coverage B. Named Insured authorized to act on behalf of all Insureds must have paid:

1.  All Deductibles when due;

2.  All premiums due for the Policy Period; and

3.  All premium and deductible(s), if any, due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.  In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D.  The Extended Reporting Period shall not in any way increase the Limits of Liability stated in the Declarations.

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 74 of 88 PageID #: 2799



# EVANSTON INSURANCE COMPANY

## LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART    OCCURRENCE COVERAGE

THIS COVERAGE PART PROVIDES OCCURRENCE COVERAGE ONLY. PLEASE READ IT CAREFULLY.

In consideration of the payment of the premium, the undertaking of the Coverage B. Named Insured authorized to act on behalf of all Insureds to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company agrees with the Named Insured as follows:

## THE INSURED

The unqualified word  Insured,  either in the singular or plural, means:

**A.**  The Named Insured herein defined as the organization stated in Item 1.II.A. of the Declarations;

**B.**  If the Named Insured stated in Item 1.II.A. of the Declarations is a partnership or joint venture, the partnership or joint venture so named and any partner or member thereof or his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

**C.**  If the Named Insured stated in Item 1.II.A. of the Declarations is a limited liability company, the limited liability company so named, any manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

**D.**  If the Named Insured stated in Item 1.II.A. of the Declarations is other than a partnership, joint venture or limited liability company, the organization so designated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

**E.**  Any person, other than an Employee of the Named Insured, or organization while acting as real estate manager for the Named Insured;

**F.**  Any Employee of the Named Insured, other than the executive officers of the Named Insured if the Named Insured stated in Item 1.II.A. of the Declarations is an organization other than a partnership, joint venture or limited liability company or any manager of the Named Insured if the Named Insured is a limited liability company, solely while acting on behalf of the Named Insured and within the scope of their duties as such;

Provided, however, that coverage afforded to such Employee or manager does not apply to:

**1.**  Bodily Injury or Personal and Advertising Injury:

    **a.**  To the Named Insured, the Named Insured s partners, the Named Insured s members or to a co-Employee while in the course of their employment or performing duties related to the conduct of the Named Insured s business;

    **b.**  To the spouse, child, parent, brother or sister of that co-Employee as a consequence of subparagraph F.1.a. hereinabove;

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 1 of 14**

**c.** For which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs F.1.a. and b. hereinabove; or

**d.** Arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

**2.** Property Damage to property:

**a.** Owned, occupied or used by; or

**b.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

The Named Insured or any Employee of the Named Insured or any partner or member of the Named Insured;

**G.** With respect to the operation, for the purpose of locomotion upon a public highway, of Mobile Equipment registered in the name of the Named Insured under any motor vehicle registration law:

**1.** An Employee of the Named Insured while operating any such equipment in the course of their employment by the Named Insured; or

**2.** Any other person while operating with the permission of the Named Insured any such equipment and any person or organization legally responsible for such person but only with respect to liability arising out of such operation, but only if there is no other insurance available, either on a primary or excess basis, to such person or organization;

Provided, however, that no person or organization shall be an Insured under this paragraph G. with respect to:

**a.** Bodily Injury to any co-Employee of such person operating any such equipment; or

**b.** Property Damage to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person described in subparagraph G.2. hereinabove;

**H.** Any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

Provided, however that:

**1.** Coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

**2.** Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

**3.** Coverage B. does not apply to Personal and Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

**I.** Any supervisor, administrator, medical director, department head or head of medical staff solely while acting on behalf of the Named Insured and solely within the scope of their duties as such;

**J.** The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for such Insured s liability as is otherwise covered herein;

**K.** Any member of the Named Insured s boards or committees, solely for conduct arising out of their duties as board or committee members and any person who executes orders from the Named Insured s boards or committees solely while in the course and scope of executing such orders.

This Coverage Part does not apply to Bodily Injury, Property Damage or Personal and Advertising Injury arising out of the conduct of any partnership, joint venture or limited liability company which is not named in the Declarations as a Named Insured.

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 2 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 76 of 88 PageID #: 2779

# INSURING AGREEMENTS

**A.** **Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Bodily Injury or Property Damage caused by an Occurrence, provided:

    **1.** The entirety of the Bodily Injury or Property Damage and Occurrence happens during the Policy Period;

    **2.** Such Bodily Injury or Property Damage arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations;

    **3.** Prior to the effective date of this policy the Insured had no knowledge such Bodily Injury, Property Damage or Occurrence had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Bodily Injury, Property Damage or Occurrence had occurred, then any continuation, change or resumption of such Bodily Injury, Property Damage or Occurrence during or after the Policy Period will be deemed to have been known prior to the Policy Period;

    **4.** Such Bodily Injury or Property Damage, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period; and

    **5.** Such Bodily Injury, Property Damage or Occurrence will be deemed to have been known to have occurred at the earliest of any Insured:

        **a.** Reporting all, or any part, of the Bodily Injury, Property Damage or Occurrence to the Company or any other insurer;

        **b.** Receiving of a Claim because of the Bodily Injury, Property Damage or Occurrence; or

        **c.** Becoming aware by any other means that Bodily Injury, Property Damage or Occurrence has occurred or has begun to occur.

**B.** **Coverage B. - Personal and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Personal and Advertising Injury caused by an offense, provided:

    **1.** The entirety of the Personal and Advertising Injury and offense happens during the Policy Period;

    **2.** Such Personal and Advertising Injury arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations; and

    **3.** Prior to the effective date of this policy the Insured had no knowledge of such Personal and Advertising Injury or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured s position to conclude that a Claim was likely.

**C.** **Coverage C.   Medical Payments**

The Company will pay medical expenses for Bodily Injury caused by an accident:

    **1.** On premises the Named Insured owns or rents;

    **2.** On ways next to premises the Named Insured owns or rents; or

    **3.** Because of the Named Insured s operations;

provided that:

    **a.** The accident takes place in the United States of America, its territories or possessions or Puerto Rico and during the Policy Period;

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 3 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 77 of 88 PageID #: 2780

**b.** The expenses are incurred and reported to the Company within one (1) year of the date of the accident; and

**c.** The injured person submits to examination, at the Company s expense, by physicians of the Company s choice as often as the Company reasonably requires.

The Company will make these payments regardless of fault. The Company will pay reasonable expenses for:

**(i)** First aid administered at the time of an accident;

**(ii)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(iii)** Necessary ambulance, hospital, professional nursing and funeral services.

## DEFINITIONS

**A.** **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the Specified Products, Goods or Operations of the Named Insured stated in the Declarations for the purpose of promoting the sale or use of such Products, Goods or Operations; provided, however, only that part of a website that is about the Specified Products, Goods or Operations of the Named Insured stated in the Declarations for the purposes of promoting such Specified Products, Goods or Operations stated in the Declarations is considered an Advertisement.

**B.** **Aircraft Products** means any aircraft whether or not heavier than air, including spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of any aircraft product.

**C.** **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any attached machinery or equipment); provided, however, it does not include Mobile Equipment.

**D.** **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**E.** **Claim** means a notice received by the Insured of an intention to hold the Insured responsible for:

**1.** A Bodily Injury;

**2.** A Property Damage; or

**3.** A Personal and Advertising Injury;

Involving this Coverage Part and shall include the service of suit or institution of arbitration proceedings against the Insured.

**F.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

**1.** Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

**2.** Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 4 of 14**

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 78 of 88 PageID #: 2781

a. Liability to such party for, or the cost of, that party s defense has also been assumed in the same Insured Contract; and

b. Such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

G. **Completed Operations Hazard** means Bodily Injury and Property Damage arising out of only those Specified Operations stated in the Declarations, after such operations have been completed or abandoned by the Named Insured and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those Specified Products, Goods and Operations stated in the Declarations and the providing or failure to provide instructions related thereto. Operations shall be deemed completed at the earliest of the following times:

1. When all operations to be performed by or on behalf of the Named Insured under a contract with the Insured have been completed;

2. When all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

3. When the portion of the work out of which the Bodily Injury or Property Damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement, but which are otherwise complete, shall be deemed complete.

The Completed Operations Hazard does not include Bodily Injury or Property Damage arising out of:

a. Operations in connection with the transportation of property, unless the Bodily Injury or Property Damage arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

b. The existence of tools, uninstalled equipment or abandoned or unused materials.

H. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

a. Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

b. Taxes, criminal or civil fines, restitution or attorneys fees of a party other than an Insured or penalties imposed by law;

c. Sanctions;

d. Matters which are uninsurable under the law pursuant to which this policy shall be construed; or

e. The return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services, products or goods.

I. **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

J. **Employee** means any person while in the regular service of the Named Insured in the ordinary course of the Named Insured s business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 5 of 14**

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 79 of 88 PageID #: 2782

**K.** **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

**L.** **Insured Contract** means:

  **1.** A contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Insured or temporarily occupied by the Insured with the permission of the owner shall not be an Insured Contract;

  **2.** Any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

  **3.** An obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

  **4.** A sidetrack agreement;

  **5.** An elevator maintenance agreement; or

  **6.** That part of any other contract or agreement pertaining to the Named Insured s business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party, provided such Bodily Injury or Property Damages is caused, in whole or in part, by the Insured or by any person or organization acting on behalf of the Named Insured; provided, however, Insured Contract shall not include that part of any contract or agreement:

  **a.** That indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

  **b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(i)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

   **(ii)** Supervision, inspection, failure to supervise or inspect or architectural, engineering or surveying services; or

  **c.** Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render services of a professional nature, including those listed in subparagraph 6.b. hereinabove or any supervision, inspection, failure to supervise or inspect or architectural, engineering or survey services.

**M.** **Leased Worker** means a person leased to the Named Insured by a labor leasing firm, under an agreement between the Named Insured and the labor leasing firm, to perform duties related to the conduct of the Named Insured s business and which are at the Insured s direction. Leased Worker does not include a Temporary Worker.

**N.** **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

  **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **2.** Vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

  **3.** Vehicles that travel on crawler treads;

  **4.** Vehicles, whether self-propelled or not, on which are permanently mounted:

  **a.** Power cranes, shovels, loaders, diggers, or drills; or

  **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 6 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 80 of 88 PageID #: 2783

5. Vehicles not described in N.1., 2., 3., or 4. hereinabove that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in N.1., 2., 3., or 4. hereinabove maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Autos:

    **a.** Equipment designed primarily for:

        **(i)** Snow removal;

        **(ii)** Road maintenance, but not construction or resurfacing; or

        **(iii)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on Auto or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment;

Provided, however, Mobile Equipment does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle law are considered Autos.

**O.** **Named Insured's Products** means products or goods, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured s name, including any container thereof, other than a vehicle; provided, however, that Named Insured s Products shall not include a vending machine or any other property rented to or located for use of others but not sold.

**P.** **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Q.** **Personal and Advertising Injury** means injury, including consequential Bodily Injury, arising out of one or more of the following offenses:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

    **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

    **4.** Oral or written publication, in the course of the Named Insured's Advertisement, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **5.** Oral or written publication, in any manner, of material that violates a person s right of privacy;

    **6.** The use of another s advertising idea in the course of the Named Insured s Advertisement; or

    **7.** Infringing upon another's copyright, trade dress or slogan in the course of the Named Insured s Advertisement.

**R.** **Policy Period** means the period from the inception date of this policy to the policy expiration date stated in the Declarations, or the effective date of any earlier cancellation or termination.

**S.** **Pollutants** means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electric, or magnetic irritants or contaminants, including, smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 7 of 14**

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 81 of 88 PageID #: 2784

**T.** **Products Hazard** means Bodily Injury or Property Damage arising out of only those Specified Products or Goods stated in the Declarations which are the Named Insured's Products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those Specified Products or Goods stated in the Declarations and the providing or failure to provide warnings or instructions related thereto, occurring away from premises owned by or rented to the Named Insured and after physical possession of such Specified Products or Goods has been relinquished to others.

**U.** **Property Damage** means:

    **1.** Physical injury to or destruction of tangible property, including consequential loss of use thereof; or

    **2.** Loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence.

    For the purpose of this Coverage Part, Electronic Data is not a tangible property.

**V.** **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

## THE EXCLUSIONS

**A.** With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to:

    **1.** Any Claim based upon or arising out of:

        **a.** The actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

            **(i)** The Products Hazard or Completed Operations Hazard; or

            **(ii)** Damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured;

        **b.** Bodily Injury or Property Damage arising out of the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

            **(i)** At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

            **(ii)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

        **c.** Any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement;

    **2.** Any Claim based upon or arising out of the rendering of or failure to render services of a professional nature by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

    **3.** Any Claim based upon or arising out of the Insured s activities as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

    **4.** Any Claim based upon or arising out of any unlawful discrimination by any Insured;

    **5.** Any Claim based upon or arising out of any violation of:

        **a.** The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 8 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 82 of 88 PageID #: 2785

**b.** The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

**c.** Any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material;

**6.** Any Claim based upon or arising out of Bodily Injury or Property Damage;

    **a.** Due to war, whether or not declared;

    **b.** Civil war, insurrection, rebellion, revolution or usurped power or action taken by governmental authority in hindering or defending against any of the foregoing; or

    **c.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

**7.** Any Claim based upon or arising out of the termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, refusal to employ, or other practices or policies related to employment or professional privileges; or

**8.** Any Claim brought under any other Coverage Part of this policy.

Exclusions A.1. and A.6. shall not apply to Property Damage by fire to premises while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability Fire Damage.

**B.** With respect to Coverage A., this Coverage Part does not apply to:

**1.** Any Claim based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

**2.** Any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

    **a.** That the Insured would have in the absence of the contract or agreement; or

    **b.** Assumed in a contract or agreement that is an Insured Contract; provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

**3.** Any Claim based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

    **a.** A delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

    **b.** A defect, deficiency, inadequacy or dangerous condition in the products, goods or operations of the Named Insured;

Provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or work performed by or on behalf of the Named Insured after such products, goods or work have been put to use by any person or organization other than an Insured, provided such products, goods or work are included in the Specified Products, Goods or Operations stated in the Declarations;

**4.** Any Claim based upon or arising out of Property Damage to the Named Insured's Products arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

**5.** Any Claim for damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or work completed by or for the Named Insured or of any property of which such products, goods or work

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 9 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 83 of 88 PageID #: 2786

form a part, if such products, goods or work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

**6.** Any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

    **a.** Any Auto, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

    **b.** Any other Auto, aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

Provided, however, this exclusion shall not apply to:

    **(i)** The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

    **(ii)** A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

    **(iii)** A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

**7.** Any Claim based upon or arising out of Bodily Injury or Property Damage arising out of:

    **a.** The ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

    **b.** The operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

**8.** Any Claim based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Auto owned or operated by or rented or loaned to any Insured;

**9.** Any Claim based upon or arising out of Property Damage to:

    **a.** Property owned, occupied or rented to the Insured;

    **b.** Property loaned to the Insured;

    **c.** Personal property in the care, custody or control of the Insured;

    **d.** That particular part of any property,

        **(i)** Upon which operations are being performed by or on behalf of the Named Insured if the Property Damage arises out of those operations; or

        **(ii)** The restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Completed Operations Hazard or the Products Hazard;

    **e.** Premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

    **f.** To work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Completed Operations Hazard;

Provided, however, Items b., c., and d. of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

**10.** Any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

Case 3:21-cv-00675   Document 56-6   Filed 01/31/22   Page 84 of 88 PageID #: 2787

**11.** Any Claim based upon or arising out of Bodily Injury to any Employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured s business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the Employee;

This exclusion shall apply:

**a.** Whether the Insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of injury;

Provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

**12.** Any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

**a.** Causing or contributing to the intoxication of any person;

**b.** The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

**c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

Provided, however, this exclusion shall apply only if the Named Insured:

**(i)** Manufactures or distributes alcoholic beverages;

**(ii)** Serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

**(iii)** Serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

**13.** Any Claim based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

**14.** Any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

**15.** Any Claim for Bodily Injury arising out of Personal and Advertising Injury;

**16.** For Damages arising out of the loss of, loss of use of, damages to, corruption of, inability to access, or inability to manipulate Electronic Data; or

**17.** Any Claim based upon or arising out of Bodily Injury sustained by any patient, person or resident of a facility receiving services of a professional nature or any such Claim brought by or on behalf of the spouse, child, parent, grandparent, brother, sister or partner of such patient, person or resident of a facility.

Exclusions B.3. through B.12. shall not apply to Property Damage by fire to premises while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability - Fire Damage.

**C.** With respect to Coverage B., this Coverage Part does not apply to:

**1.** Any Claim based upon or arising out of Personal and Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal and Advertising Injury;

**2.** Any Claim based upon or arising out of Personal and Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity;

**3.** Personal and Adverting Injury arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period.

**MELT 0003 07 12** Includes copyrighted material from Insurance Services Office, Inc. with its permission. **Page 11 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 85 of 88 PageID #: 2788

4. Any Claim based upon or arising out of Personal and Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5. Any Claim based upon or arising out of Personal and Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6. Any Claim based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7. Any Claim based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;

   Provided, however, this exclusion shall not apply to:

   a. The use of another s advertising idea in the Named Insured s Advertisement; or

   b. Infringing upon another's copyright, trade dress or slogan in the Named Insured s Advertisement;

8. Any Claim based upon or arising out of Personal and Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

9. Any Personal and Advertising Injury committed by any Insured whose business is:

   a. Advertising, broadcasting, publishing, or telecasting;

   b. Designing or determining content for websites for others; or

   c. An Internet access, content search or service provider;

10. Any Claim based upon or arising out of Personal and Advertising Injury arising out of the unauthorized use of another party's name or product in the Named Insured's email address, domain name or metatag, or any similar device to mislead another party's customers or potential customers;

11. Any Claim based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another s advertising idea in the Named Insured s Advertisement; or

12. Any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured s Advertisement.

**D.** With respect Coverage C., the Company will not pay any expenses for Bodily Injury:

1. To any Insured;

2. To a person hired to do work for or on behalf of the Insured or a tenant of the Named Insured;

3. To a person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

4. To a person, whether or not an Employee of an Insured, if benefits for the Bodily Injury are payable or must be provided under any workers compensation or disability benefits law or under any similar law;

5. To a person injured while taking part in athletics;

6. Included in the Products Hazard or the Completed Operations Hazard;

7. Excluded under Coverage A.; or

8. To any patient, person or resident of a facility receiving services of a professional nature.

# TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

**MELT 0003 07 12**   Includes copyrighted material from Insurance Services Office, Inc. with its permission.   **Page 12 of 14**

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 86 of 88 PageID #: 2789

## LIMITS OF LIABILITY

**A.**  **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims because of all Bodily Injury or Property Damage sustained by one or more persons or organizations as the result of any one Occurrence shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Occurrence.

**B.**  **Coverage A. - Limit of Liability-Fire Damage:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims because of Property Damage to premises, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises arising out of any one fire, shall not exceed the Limit of Liability stated in the Declarations as applicable to Fire Damage   Any One Fire.

**C.**  **Coverage B. - Limit of Liability-Each Person or Organization:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage B. because of all Personal and Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Person or Organization.

**D.**  **Coverage C.   Medical Payments: Limit of Liability  Each Injured Person:**  The total liability of the Company for medical expenses under Coverage C. because of Bodily Injury sustained by any one person shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Injured Person.

**E.**  **Limit of Liability    Aggregate:**  Subject to the above Limits of Liability A., B., C. and D., the total liability of the Company shall not exceed the Coverage Aggregate Limit of Liability stated in the Declarations for all Damages and Claim Expenses for Coverage A. and B. and all medical expenses for Coverage C.

**F.**  **Deductible:**  The applicable Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence or each person or organization shall not exceed the applicable Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

**G.**  **Multiple Insureds, Claims, Occurrences, Offenses and Claimants:**  The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations.

All Damages and Claim Expenses sustained because of one or more Personal and Advertising Injury(ies) and/or offense(s) by any one person or organization shall be subject to the Limit of Liability stated in the Declarations as applicable to Each Person or Organization. All such Personal and Advertising Injury(ies) shall be deemed to take place on the date on which the earliest Personal and Advertising Injury happens.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

**A.**  **Defense, Investigation and Settlement of Claims:**  The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

**1.**  Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

**2.**  The Company shall select defense counsel; provided, however, that if the law of the state of the Insured s domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of

Case 3:21-cv-00675    Document 56-6    Filed 01/31/22    Page 87 of 88 PageID #: 2790

attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

**a.** Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** Providing any other reasonable information requested;

**c.** Providing fully itemized billing on a periodic basis; and

**d.** Cooperating with the Company and the Insured in resolving any discrepancies;

And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

**B.    Consent to Settlement:**  The Company may make such investigation and settlement of any Claim as it deems expedient.

## CLAIM REPORTING PROVISION

It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Occurrence or offense that happens during the Policy Period which may give rise to a Claim against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

## OTHER CONDITIONS

**A.    Prevention of Loss:**  In the event of an Occurrence or an offense involving the Specified Products, Goods, Operations or Premises stated in the Declarations and covered by this Coverage Part, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage or Personal and Advertising Injury from arising out of the same or similar conditions.

**B.    Other Insurance:**  With respect to Coverage C., Common Policy Conditions D. Other Insurance, shall not apply.

**C.    Reporting of Changes in Specified Products, Goods, Operations and Premises:**  The premium charged for this Coverage Part is based on those Specified Products, Goods, Operations and Premises stated in the Declarations and identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those Specified Products, Goods, Operations or Premises stated in the Declarations as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

**1.** Any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

**2.** Any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

**3.** Any change in operations which are not accurately described by the description as stated in the Declarations.

This Coverage Part shall apply to only those Specified Products, Goods, Operations and Premises stated in the Declarations, irrespective of any changes reported.