# EXHIBIT F



# EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

*Kathleen Anne Sturgeon*

*Gerard Albanese Jr*

**Secretary**                             **President**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 2 of 105 PageID #: 2793



## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE: Policy Number: SM910742
Insured: CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC
Insurer: EVANSTON INSURANCE COMPANY

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. A*s defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

Certified Acts of Terrorism coverage is provided for no additional premium.

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 3 of 105 PageID #: 2794



# EVANSTON INSURANCE COMPANY

## DECLARATIONS – SPECIFIED MEDICAL PROFESSIONS INSURANCE POLICY

**Claims Made:** Under certain Coverage Parts of this policy, the coverage afforded is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein. Refer to each Coverage Part's opening page to determine if that Coverage Part is Claims Made.

**Notice:** All Coverage Part of this policy contain provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

**NO FLAT CANCELLATION**

POLICY NUMBER: SM910742                    RENEWAL OF POLICY: SM904110

1. **NAMED INSURED:**         CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC

2. **BUSINESS ADDRESS:**     1283 MURFREEBORO ROAD SUITE 500
                             NASHVILLE, TN  37217

3. **POLICY PERIOD:**        From  11/15/2015 to 11/15/2016
                             12:01 A.M. Standard Time at address of Insured stated above

4. **PROFESSIONAL SERVICES AND SPECIFIED PRODUCTS, GOODS, OPERATIONS OR PREMISES:**

   A.  Professional Services:         Correctional Healthcare Services performed by an Insured in the treatment or care of any patient including: medical, dental, nursing, psychiatric, osteopathic, chiropractic or other professional care or service; furnishing or dispensing of medications, pharmaceuticals, blood and blood products, medical or surgical supplies, equipment or appliances; furnishing of food or beverages in connection with medical treatment or care; and the halding of post-mortem examinations of human bodies; probationary services, counseling and monitoring services inside and outside of the prison or jail clinic environment; and, telemedicine and telehealth services

   B.  Specified Products, Goods, Operations or Premises:         Correctional Healthcare including probationary services, counseling, monitoring services inside and outside the prison or jail environment; all related premises and operations of the Insured

## IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.
Surplus Lines Broker:
Name: _____ Kendra S Schaendorf _____
Address: _PO Box 111, Grand Rapids, MI 49501-0111_____

| Producer Number, Name and Address |
|---|
| 75359<br>AmWINS Brokerage<br>2851 Charlevoix Dr. SE Ste. 220<br>Grand Rapids, MI  49546 |

## 5. COVERAGE SCHEDULE:

This policy includes only those Coverage Parts designated below by "X" as purchased. If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | Coverage Part Purchased | Coverage Part Limits of Liability | Coverage Part Deductible | Coverage Part Retroactive Date |
|---|---|---|---|---|
| **A.** Specified Medical Professions Professional Liability Insurance Coverage Part | Yes __X__ | $1,000,000 Each Claim $3,000,000 Aggregate | $750,000 Each Claim | 11/15/2013 |
| **B.** Specified Medical Professions General Liability Insurance Coverage Part – Claims Made Coverage | Yes ____ No __X__ | $Not Purchased Coverage A. Each Occurrence<br><br>$Not Purchased Damage to Premises - Any One Premises<br><br>$Not Purchased Coverage B. Each Person or Organization<br><br>$Not Purchased Coverage C. Each Injured Person<br><br>$Not Purchased Aggregate - All Coverages | $Not Purchased Coverage A. Each Occurrence<br><br><br><br>$Not Purchased Coverage B. Each Person or Organization | Not Purchased |
| **C.** Specified Medical Professions General Liability Insurance Coverage Part – Occurrence Coverage | Yes __X__ No ____ | $1,000,000 Coverage A. Each Occurrence<br><br>$300,000 Damage to Premises - Any One Premises<br><br>$1,000,000 Coverage B. Each Person or Organization<br><br>$10,000 Coverage C. Each Injured Person<br><br>$3,000,000 Aggregate - All Coverages | $750,000 Coverage A. Each Occurrence<br><br><br><br>$750,000 Coverage B. Each Person or Organization | |

## 6. PREMIUM FOR POLICY PERIOD:

Minimum $ 3,601,420.00
Deposit $ 3,601,420.00

## 7. RATE: Flat

PREMIUM BASE: Flat

## 8. PREMIUM FOR EXTENDED REPORTING PERIOD: 150% for 12 months; 175% for 24 months; or 200% for 36 months

Tennessee Premium: $3,601,420.00

Fees: n/a

Surplus Lines Tax: $180,071.00

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 5 of 105 PageID #: 2796

9. The Insured is not a proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory, or any business enterprise not named in Item 1. hereinabove, except as follows:

   None

10. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**
    See MDIL 1001 08 10 attached.

11. **NOTICES**:

    Notices required to be provided to the Company under this policy shall be by email, fax or mail addressed to:

    **CLAIM OR DISCOVERY CLAUSE NOTICES:**

    Claims Service Center
    MARKEL SERVICE, INCORPORATED
    Ten Parkway North
    Deerfield, Illinois 60015

    E-mail: newclaims@markelcorp.com
    Fax: (855) 662-7535

    **ALL OTHER NOTICES:**

    Markel Midwest Region, a division of Markel Service, Incorporated
    Ten Parkway North
    Deerfield, IL  60015-2526
    Telephone: (847) 572-6000
    Fax: (866) 730-2526

**These declarations, together with the Common Policy Conditions, Coverage Part(s), any Endorsement(s) and any application(s) complete the above numbered policy**.

| Countersigned: 12/7/2015 | |
| (Date) | By: _Gerard Albrecht Jr_ |
| | AUTHORIZED REPRESENTATIVE |



# Markel's Designed Protection®
# Risk Management Resources Allied Health Care
# (Specified Medical) Professionals,

<u>Welcome</u> to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at *no additional cost*.

## HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:

<u>Step 1.</u>    Go onto our website, www.markelcorp.com/riskmanagement.

<u>Step 2.</u>    Select the Designed Protection services that apply to your policy, to get to the Login screen.

<u>Step 3.</u>    Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is SM910742.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

**Available Risk Management Resource:**

- **Designed Protection® Risk Management Telephone Hotlines for:**

  This confidential telephone hotline is staffed by health care professional defense attorneys that are available to answer general risk management questions.





# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 06 10 | Policy Jacket |
| ZZ-50000 01 15 | Policyholder Disclosure of Terrorism Insurance Cov |
| MDSM 5013 GL 08 15 | Dec Spec Med Professions Insurance Policy |
| MDIL 1001 08 10 | Forms Schedule |
| MESM 5100 08 15 | Common Policy Conditions |
| MESM 5010 08 15 | Spec Medical Professions Profes Liab Ins Cov Part |
| MESM 5012 08 15 | General Liab Ins Cov Part - Occurrence |
| MEIL 5200-25% 07 04 | Minimum Earned Premium Endorsement |
| EIC 832-01 | Asbestos Exclusion |
| MANUSCRIPT-1 | Mold Exclusion |
| MEIL 5229 09 10 | Longer Duration Extended Reporting Period Availability |
| EIC 4638 01 15 | Certified Acts of Terrorism Endorsement |
| MESM 3015 08 15 | Exclusion - Unmanned Aircraft |
| MESM 2031 10 12 | Amendatory Endorsement - Civil Rights Violation |
| MANUSCRIPT-1 | Amendatory Endorsement - Civil Rights Violations - General Liability |
| MANUSCRIPT-1 | Sexual Acts Liability Endorsement |
| MESM 2087 05 12 | Defense of License Reimbursement Coverage |
| MANUSCRIPT-1 | Supplementary Payments Endorsement - Trial Attendance |
| MESM 2070 08 15 | Employee Benefits Liability Coverage |
| MANUSCRIPT-1 | Self Insured Retention Endorsement |
| MESM 2004 10 12 | Claim Expenses in Addition to the Each Claim Limit of Liability |
| MESM 2026 08 15 | Claim Expenses in Addition to the Each Occur/Each Person or Org Limit of Liab (Occur) |
| MANUSCRIPT-1 | Limits of Liability Per Location |
| IL 12 01 11 85 A | Policy Changes (Additonal Named Insured) |
| MANUSCRIPT-1 | Additional Insured Endorsement - Professional Liability |
| MANUSCRIPT-1 | Additional Insured - General Liability |
| MANUSCRIPT-1 | Additional Insured Endorsement - Professional Liability |
| MANUSCRIPT-1 | Additional Insured - General Liability |
| MESM 1005 08 15 | Additional Insured Endorsement for Landlords, Sponsors or Lessors |
| MESM 2083 01 11 | Health Insurance Portability and Accountability Act (HIPAA) - Civil Monetary Penalty |
| MESM 2014 10 12 | Amendment of Cancellation |
| MANUSCRIPT-1 | Amendment of the Insured B |
| MANUSCRIPT-1 | Amentment of the Insured G |
| MESM 2098 04 14 | Good Samaritan Endorsement |
| MANUSCRIPT-1 | Notice of Claim Endorsement |
| MANUSCRIPT-1 | Utilization, Quality Assurance, Accreditation, Committee and Peer Review  Activities |
| MESM 2093 01 14 | Crisis Management Emergency Response Expense Reimbursement Coverage |
| MESM 2055 02 13 | Risk Management Services Expense Reimbursement Coverage |
| MANUSCRIPT-1 | Aggregate Policy Limit |
| MANUSCRIPT-1 | Amendment of Damages |
| MEIL 1235 04 14 | Wisconsin Restriction Endorsement |
| MANUSCRIPT-1 | Patient Compensation Fund Restriction Endorsement |
| MANUSCRIPT-1 | Addition of Contracts Endorsement |
| MANUSCRIPT-1 | Cross Liability Self Insured Retention |
| MESM 3007 10 12 | Amendment of Exclusion K. |
| MANUSCRIPT-1 | Self Insured Retention – Specific Contract |
| MANUSCRIPT-1 | Pesticide or Herbicide Applicator Coverage General Liability Coverage Only |

**MDIL 1001 08 10**                                                                                              **Page 1 of 1**

MANUSCRIPT-1         Special Notice of Cancellation
MANUSCRIPT-1         Liberalization Endorsement

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 9 of 105 PageID #: 2800



# EVANSTON INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

Throughout this policy, the term Company refers to the insurance company providing this insurance.

**A.    CANCELLATION**

This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in the Notices item of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company by mailing to the Named Insured, at the address stated in the Declarations written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

**B.    CHANGE IN CONTROL OF NAMED INSURED**

If after the inception date of the policy:

**1.**    The Named Insured is merged into or consolidated with another organization such that it is not the surviving organization, or sells all or substantially all of its assets to another organization or person or group of organizations and/or persons acting in concert;

**2.**    Another organization or person or group of organizations and/or persons acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting rights for the election or appointment of directors or trustees of the Named Insured, or acquires the voting rights of such an amount of such interest; or

**3.**    A receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

no coverage shall be afforded under this policy unless:

**a.**    Written notice of such transaction or event is given to the Company by the Named Insured as soon as practicable, but in no event later than thirty (30) days after such transaction or event, including complete details of the nature of such transaction or event and the other organization, person, group of organizations, persons acting in concert, receiver, liquidator, conservator, trustee and/or similar official appointed with respect to the Named Insured;

**b.**    The Named Insured submits such additional information in connection therewith as the Company may deem necessary;

**c.**    The Company, at its sole discretion, agrees to continue coverage by written endorsement to the policy; and

**d.**    The Named Insured agrees to accept any special terms, conditions, exclusions or additional premium charge as may be required by the Company.

**C.  REPRESENTATIONS**

By acceptance of this policy, the Insureds agree as follows:

**1.**  That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

**2.**  That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

**D.  ENTIRE AGREEMENT**

The Declarations, Common Policy Conditions, Coverage Part(s), the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

**E.  OTHER INSURANCE**

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

**1.**  The Limit of Liability available under this policy will be equal to the percentage that this policy's available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

**2.**  The total Limit of Liability available for such Claim shall not exceed the greater/est available Limit of Liability remaining on all such policies and its payment shall extinguish the Company's and its affiliated companies' liability on all such policies for such Claim.

**F.  CHANGES**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

**G.  ASSIGNMENT OF INTEREST**

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

**H.  SUBROGATION**

In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person or organization included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation.

Any amount so recovered, whether effected by the Company or by the Insured, shall first be used for the repayment of expenses incurred toward subrogation; second, for any Damages and Claim Expenses payment by the Insured which is in excess of the amount of the Limit of Liability under this policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages and claims expenses payment by any excess insurer on

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 11 of 105 PageID #: 2802

behalf of the Insured; fourth, for any damages and claim expenses payment by any primary insurer on behalf of the Insured; and, last, for repayment of the Insured's Deductible.

**I.    ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

**1.**    Submit to examination and interview by a representative of the Company, under oath if required;

**2.**    Attend hearings, depositions and trials;

**3.**    Assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;

**4.**    Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; and

**5.**    Provide any information required to comply with federal or state reporting regulations;

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the prior written consent of the Company.

**J.    FALSE OR FRAUDULENT CLAIMS**

If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

**K.    PREMIUM AND AUDIT**

Upon expiration of this policy, the Named Insured shall furnish to the Company a statement of the Named Insured's actual total premium base as stated in the Declarations for the Policy Period. The actual earned premium shall be computed thereon at the premium rate stated in the Declarations. If the actual earned premium is more than the deposit premium stated in the Declarations, the Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the Named Insured except that the Company shall be entitled to the minimum premium as stated in the Declarations. The Company shall have the right to require of the Named Insured, at any time within the said Policy Period or one year thereafter, a sworn statement of the entire amount (or number) of such premium base during the whole or any specified part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured as respects such premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

**L.    INSPECTION**

The Company shall be permitted but not obligated to inspect the Insured's operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

**M.    ACTION AGAINST THE COMPANY**

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

**N.   AUTHORIZATION**

By acceptance of this policy, the first person or organization stated in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period, if available; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

**O.   POLICY EXTENDED REPORTING PERIOD – ALL CLAIMS MADE COVERAGES**

The Named Insured's right to exercise the Extended Reporting Period under any Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Coverage Parts that provide coverage on a claims made basis.

**P.   SERVICE OF SUIT**

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**Q.   NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)**

The insurance does not apply:

**1.**   Under any Liability Coverage, to Bodily Injury or Property Damage:

    **a.**   With respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **b.**   Resulting from the Hazardous Properties of Nuclear Material and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.**   Under any Medical Payments coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to Bodily Injury resulting from the Hazardous Properties of Nuclear Material and arising out of the operation of a Nuclear Facility by any person or organization.

**3.**   Under any Liability Coverage, to Bodily Injury or Property Damage resulting from Hazardous Properties of Nuclear Material, if:

    **a.**   The Nuclear Material **(1)** is at any Nuclear Facility owned by, or operated by or on behalf of, an Insured or **(2)** has been discharged or dispersed therefrom;

Case 3:21-cv-00675   Document 56-7   Filed 01/31/22   Page 13 of 105 PageID #: 2804

**b.** The Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an Insured; or

**c.** The Bodily Injury or Property Damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such Nuclear Facility and any property thereat.

**4.** As used in this exclusion:

Hazardous Properties includes radioactive, toxic or explosive properties.

Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

Source Material, Special Nuclear Material, and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

Waste means any waste material **(1)** containing By-Product Material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content, and **(2)** resulting from the operation by any person or organization of any Nuclear Facility included under the first two paragraphs of the definition of Nuclear Facility.

Nuclear Facility means:

**a.** Any Nuclear Reactor;

**b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing Spent Fuel, or **(3)** handling, processing or packaging Waste;

**c.** Any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste;

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

Property Damage includes all forms of radioactive contamination of property.



# EVANSTON INSURANCE COMPANY

## SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED ...................................................................................................................................................... 2

INSURING AGREEMENT ....................................................................................................................................... 2

DEFINITIONS.......................................................................................................................................................... 3

THE EXCLUSIONS ................................................................................................................................................. 4

TERRITORY............................................................................................................................................................ 6

LIMITS OF LIABILITY ............................................................................................................................................ 6

DEFENSE AND CLAIM EXPENSES ...................................................................................................................... 7

CLAIMS .................................................................................................................................................................. 7

EXTENDED REPORTING PERIOD ........................................................................................................................ 8

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 15 of 105 PageID #: 2806

# SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** The Named Insured which is herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.** Any past or current principal, partner, officer, director, Employee or Volunteer Worker of the Named Insured solely while acting on behalf of the Named Insured and within the scope of their duties as such; provided, however, this insurance shall not apply to any Claim made against any Insured who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

**C.** If the Named Insured is a limited liability company, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;

**D.** Any medical director solely while acting on behalf of the Named Insured and solely within the scope of his/her Administrative Duties as such; provided, however, this insurance shall not apply to any Claim made against any medical director who is a physician, surgeon, dentist or podiatrist arising out of the rendering of or failure to render Professional Services in his/her capacity as a physician, surgeon, dentist or podiatrist;

**E.** Any student enrolled in a training program in connection with the Named Insured's Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

**F.** The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for each such Insured's liability as is otherwise covered herein.

## INSURING AGREEMENT

**A.** **Professional Liability and Claims Made Clause:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS A., Claim Reporting Provision, for Professional Personal Injury:

**1.** By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by an Insured; or

**2.** By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by a natural person, who is not and shall not be an Insured hereunder, and through whose acts the Insured controls the provider-patient relationship as of the time of such act, error or omission;

provided:

**a.** The act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

**b.** Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

Case 3:21-cv-00675   Document 56-7   Filed 01/31/22   Page 16 of 105 PageID #: 2807

## DEFINITIONS

**A.** **Administrative Duties** means establishing medical protocol, serving on a standards review, peer review, or credentialing committee or similar professional board or committee of the Named Insured; provided, however, Administrative Duties shall not include:

    **1.** Rendering or failure to render Professional Services by a medical director which results in Professional Personal Injury; or

    **2.** Rendering or failure to render specific medical direction for a natural person receiving Professional Services via telecommunications to other healthcare professionals.

**B.** **Claim** means the Insured's receipt of:

    **1.** A written demand for Damages or Professional Services; or

    **2.** The service of suit or institution of arbitration proceedings against the Insured seeking Damages.

**C.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

    **1.** Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

    **2.** Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**D.** **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

    **1.** Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

    **2.** Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

    **3.** Sanctions;

    **4.** Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

    **5.** The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured; or

    **6.** The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

**E.** **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**F.** **Leased Worker** means any natural person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

**G.** **Policy Period** means the period form the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

**H.** **Professional Personal Injury** means:

    **1.** Any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any natural person receiving Professional Services arising out of an act, error or omission in Professional Services rendered or that should have been rendered;

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 17 of 105 PageID #: 2808

2. False arrest, detention or imprisonment, or malicious prosecution of any natural person receiving Professional Services, except when inflicted by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed; or

3. The publication or utterance of a libel or slander concerning a natural person receiving Professional Services or a publication or an utterance in violation of such person's right to professional confidence, except when published or uttered by, at the direction of, or with the consent or acquiescence of the Insured who has predetermined to commit such act, or allowed such act to have been committed.

**I.** **Professional Services** means those services stated in Item 4. of the Declarations.

**J.** **Temporary Worker** means any natural person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

**K.** **Volunteer Worker** means any natural person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## THE EXCLUSIONS

This Coverage Part does not apply to:

**A.** Any act, error or omission in Professional Services rendered or that should have been rendered or Professional Personal Injury committed in violation of any law or ordinance;

**B.** Any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured;

**C.** Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an Insured by the United States Department of Health & Human Services (HHS) or by an utilization or quality review organization under contract with HHS; provided, however, this exclusion shall not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act;

**D.** Any Claim based upon or arising out of the invasion, infringement or interference of the right of privacy arising from the use, visitation of, posting or browsing of any blog, bulletin board services, chat room, web site or other internet form or URL;

**E.** Any Claim based upon or arising out of the gathering, use or dissemination of personal information in any form including but not limited to any violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

**F.** Any Claim based upon or arising out of any unlawful discrimination by any Insured;

**G.** Any Claim based upon or arising out of any act, error or omission committed or alleged to have been committed by the Insured that in any manner relates to or arises out of the actual, alleged or threatened discharge, dispersal, release, escape or existence of pollutants, hazardous substances, toxic substances or substances which in any manner impair or allegedly impair the environment or which result in bodily injury or property damage;

**H.** Any liability arising out of the Insured's activities in his/her capacity as proprietor, superintendent, executive officer, director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, laboratory or business enterprise, or any governmental body, sub-division or agency not named as an Insured under this policy unless such activities are disclosed in the application and covered by endorsement to this policy;

**I.** Any Claim based upon or arising out of any liability of others assumed by the Insured under any contract or agreement; unless such liability would have attached to the Insured even in the absence of the contract or agreement;

**J.** Any Claim arising out of general liability, or goods or products manufactured, sold, handled or distributed by the Insured or by others trading under an Insured's name;

**K.** Any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft;

**L.** Any Claim based upon or arising out of any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature;

provided, however, the Company agrees to defend the Named Insured for such a Claim for the strictly vicarious liability of the Named Insured, unless a manager, supervisor, officer, director, trustee or partner of the Named Insured:

**1.** Knew or should have known about the sexual act allegedly committed by the Insured but failed to prevent or stop it; or

**2.** Knew or should have known that the Insured who allegedly committed the sexual act had a prior history of such sexual misconduct act;

The Company shall not pay Damages on behalf of the Named Insured for such a Claim.

**M.** Injury arising out of the performance of a criminal act or caused by an Insured while under the influence of intoxicants or narcotics;

**N.** Any Claim based upon, arising out of, or in any way involving:

**1.** The employment relationship or the nature, terms or conditions of employment or any workplace tort brought by or on behalf of any Employee, former Employee, prospective employee, independent contractor or consultant of the Insured or to Professional Personal Injury to, or sickness, disease or death of any Employee of the Insured arising out of, and in the course of his/her employment by the Insured;

**2.** Any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law; or

**3.** Any actual or alleged violation of the Employee Retirement Income Security Act of 1974, or any other similar federal, state or common law or any amendments thereto;

**O.** Any Claim based upon or arising out of:

**1.** The dispensing of or the use of any drug or device whose approval for use was withdrawn by the U.S. Food and Drug Administration (FDA) at the time such drug or device was used or dispensed;

**2.** Use, administration or prescription of any drug, pharmaceutical, medical device or procedure which has not received final approval by the FDA for treatment of humans or which is not used, administered or prescribed as part of an FDA approved study;

**P.** Any Claim based upon or arising out of a warranty or guarantee of cure or success of treatment which is alleged to have arisen out of an advertisement;

**Q.** Any Claim based upon or arising out of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., Section 1961, et seq.;

**R.** Any Claim based upon or arising out of the disarming or disabling of any alarms or monitoring devices of medical equipment;

**S.** Any Claim based upon or arising out of:

**1.** The failure to maintain medical records in their original condition;

**2.** Creating, altering, amending or modifying medical records;

**3.** Improperly disposing of medical records;

**4.** The failure to maintain the privacy and security of medical records or private personal information;

**T.** Any Claim made against the Insured:

**1.** By any person or organization or its subrogee, assignee, contractor, subcontractor, or parent company, subsidiary, division or affiliated company which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by an Insured or parent company or any subsidiary, division or affiliated organization; or

**2.** By or on behalf of any Insured under this policy; provided, however, this exclusion shall not apply to any Claim made against any Insured arising out of the rendering of or failure to render Professional Services by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, if such Insured is a natural person receiving Professional Services;

**U.** Any Claim based upon or arising out of:

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 19 of 105 PageID #: 2810

1. Any allegations of price fixing, unfair competition or trade practices;

2. A dispute over fees, income or revenue;

3. The inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or

4. Violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession;

**V.** Any Claim based upon or arising out of any violation of:

1. The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

2. The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

3. The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or

4. Any other statute, law, rule, ordinance or regulation that addresses, prohibits or limits the dissemination, sending, transmitting, communication, printing, disposal, collection, recording or distribution of information or other material;

**W.** Any Claim based upon or arising out:

1. Any disciplinary proceeding against the Insured conducted by any regulatory body, disciplinary board or governmental agency; or

2. Any federal or state inquiry or review involving an Insured's professional licensure; or

**X.** Any Claim brought under any other Coverage Part of this policy.

## TERRITORY

The insurance afforded applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.** **Limit of Liability-Each Claim:** For Professional Liability, the total liability of the Company for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Claim.

**B.** **Limit of Liability-Coverage Part Aggregate:** Subject to the above Section LIMITS OF LIABILITY A., for Professional Liability, the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability as stated in the Declarations for all Damages and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised.

**C.** **Limit of Liability-Reduction for Refusal to Settle:** The Company shall not settle any Claim without the consent of the Insured. If, however, the Insured is a partnership, professional association, professional corporation or limited liability company, the written consent of an Insured who was formerly but is no longer a member of the partnership, professional association or limited liability company or director, officer, stockholder or employee of a professional corporation will not be required, provided the written consent of the corporate directors, officers, stockholders or employees of a professional corporation, or their duly appointed representatives, has been obtained. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled including Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of the above Limits of Liability A. and B.

**D.** **Deductible:** For Professional Liability, the Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

E.    **Multiple Insureds, Claims and Claimants:**  The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made, or with regard to written notice given to and accepted by the Company pursuant to Section CLAIMS B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

## DEFENSE AND CLAIM EXPENSES

A.    **Defense and Investigation of Claims:**  The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1.    Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the Professional Liability Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Professional Liability Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

2.    The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

a.    Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

b.    Providing any other reasonable information requested;

c.    Providing fully itemized billing on a periodic basis; and

d.    Cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by defense counsel's cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the Professional Liability Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

## CLAIMS

A.    **Claim Reporting Provision:**  It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.    **Discovery Clause:**  If during the Policy Period, the Insured first becomes aware of a specific act, error or omission in Professional Services which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in the Declarations to the Company containing

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 21 of 105 PageID #: 2812

the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error or omission in Professional Services shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. The description of the specific act, error or omission in Professional Services;

2. The date on which such act, error or omission in Professional Services took place;

3. The injury or damage which has or may result from such act, error or omission in Professional Services;

4. The identity of any injured persons; and

5. The circumstances by which the Insured first became aware of such act, error or omission in Professional Services.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific act, error or omission in Professional Services which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, the Company at its sole option, may investigate such specific act, error or omission in Professional Services. Such matter shall be subject to all terms, conditions and provisions in this Coverage Part as applicable to a Claim.

## EXTENDED REPORTING PERIOD

**A.** The Named Insured's right to exercise the Extended Reporting Period under this Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

**B.** If the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions Section A., Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions A., Cancellation, for reasons other than nonpayment of premium, Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the adjusted annual premium for the Policy Period, subject to adjustment as per Common Policy Conditions J., Premium and Audit, but in no event less than the percentage stated in the Declarations of the annual minimum premium for the policy, to extend the coverage granted under this Coverage Part, for the period of months stated in the Declarations, as elected by the Named Insured to apply to Claims first made against the Insured during the period of months as elected and reported to the Company pursuant to, Section CLAIMS A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any act, error or omission in Professional Services which happened on or after the applicable Retroactive Date stated in the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Coverage Part.

This extended period of coverage months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this Coverage Part is immediately succeeded by claims made insurance coverage on which the Professional Liability Retroactive Date is the same as or earlier than that stated in the Declarations of this policy, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or deductible and/or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

This Extended Reporting Period shall not be available when any Insured's license or right to practice his/her profession is revoked, suspended or surrendered.

**C.** As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

1. All Deductibles when due;

2. All premiums due for the Policy Period; and

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 22 of 105 PageID #: 2813

**3.** All premium and deductible(s), if any, due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

**D.** The Named Insured shall pay any additional premium that may be due as a result of audit, promptly when due.

**E.** In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

**F.** The Extended Reporting Period shall not in any way increase the Limits of Liability stated in the Declarations.

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 23 of 105 PageID #: 2814



# EVANSTON INSURANCE COMPANY

## SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

THIS IS AN OCCURRENCE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED ........................................................................................................................................2

INSURING AGREEMENTS ......................................................................................................................3

DEFINITIONS..........................................................................................................................................4

THE EXCLUSIONS .................................................................................................................................8

TERRITORY...........................................................................................................................................13

LIMITS OF LIABILITY ...........................................................................................................................13

DEFENSE, SETTLEMENTS AND CLAIM EXPENSES.........................................................................13

CLAIM REPORTING PROVISION..........................................................................................................14

OTHER CONDITIONS ...........................................................................................................................15

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 24 of 105 PageID #: 2815

# SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

THIS IS AN OCCURRENCE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

## THE INSURED

The unqualified word "Insured," either in the singular or plural, means:

**A.** The Named Insured which is defined herein as the person(s) or organization(s) stated in Item 1. of the Declarations;

**B.** If the Named Insured is an individual, the person so stated and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

**C.** If the Named Insured is a partnership or joint venture, the partnership or joint venture so stated and any partner or member thereof and his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

**D.** If the Named Insured is a limited liability company, the limited liability company so stated, any manager thereof, but only with respect to their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

**E.** If the Named Insured is other than an individual, partnership, joint venture or limited liability company, the organization so stated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

**F.** Any person other than an Employee, or any organization while acting as real estate manager for the Named Insured;

**G.** Any Employee, other than either the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or any manager of the Named Insured if the Named Insured is a limited liability company, solely while acting on behalf of the Named Insured and within the scope of their duties as such;

provided, however, that coverage afforded to such Employee does not apply to:

**1.** Bodily Injury or Personal and Advertising Injury:

    **a.** To the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-Employee while in the course of their employment or performing duties related to the conduct of the Named Insured's business;

    **b.** To the spouse, child, parent, brother or sister of that co-Employee as a consequence of subparagraph 1.a. hereinabove;

    **c.** For which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.a. and b. hereinabove; or

    **d.** Arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

**2.** Property Damage to property:

    **a.** Owned, occupied or used by; or

    **b.** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured or any Volunteer Worker or Employee or any partner or member of the Named Insured;

**H.** Any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

provided, however, that:

**1.** Coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

**2.** Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

**3.** Coverage B. does not apply to Personal and Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

**I.** Any supervisor, administrator, medical director, department head or head of medical staff solely while acting on behalf of the Named Insured and solely within the scope of their duties as such;

**J.** Any student enrolled in a training program in connection with the Named Insured's Professional Services solely while acting within the scope of his/her duties as such and at the Named Insured's direction;

**K.** Any Volunteer Worker of the Named Insured, other than a healthcare provider, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such and at the direction of the Named Insured;

**L.** The heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of death, incapacity or bankruptcy of such Insured, but only for such Insured's liability as is otherwise covered herein;

**M.** Any member of a board or committee of the Named Insured, solely for conduct arising out of their duties as a board or committee member and any person who executes a decision or directive from a board or committee of the Named Insured solely while in the course and scope of executing such order or directive.

This Coverage Part does not apply to any Bodily Injury, Property Damage, Occurrence, Personal and Advertising Injury or offense arising out of the conduct of any partnership, joint venture or limited liability company which is not stated in the Declarations as a Named Insured.

## INSURING AGREEMENTS

**A.** **Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Bodily Injury or Property Damage caused by an Occurrence;

provided:

**1.** The entirety of the Bodily Injury or Property Damage and Occurrence happens during the Policy Period;

**2.** Such Bodily Injury or Property Damage and Occurrence arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations;

**3.** Prior to the effective date of this Coverage Part the Insured had no knowledge such Bodily Injury, Property Damage or Occurrence had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Bodily Injury, Property Damage or Occurrence had occurred, then any continuation, change or resumption of such Bodily Injury, Property Damage or Occurrence during or after the Policy Period will be deemed to have been known prior to the Policy Period;

**4.** Such Bodily Injury or Property Damage, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period; and

**5.** Such Bodily Injury, Property Damage or Occurrence will be deemed to have been known to have occurred at the earliest of any Insured:

**a.** Reporting all, or any part, of such Bodily Injury, Property Damage or Occurrence to the Company or any other insurer;

    **b.**  Receiving of a Claim because of  such Bodily Injury, Property Damage or Occurrence; or

    **c.**  Becoming aware by any other means that such Bodily Injury, Property Damage or Occurrence has occurred or has begun to occur.

**B.**    **Coverage B. - Personal and Advertising Injury Liability:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Personal and Advertising Injury caused by an offense;

provided:

    **1.**  The entirety of the Personal and Advertising Injury and offense happens during the Policy Period; and

    **2.**  Such Personal and Advertising Injury and offense arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations.

**C.**    **Coverage C. – Medical Payments**

The Company will pay medical expenses for Bodily Injury caused by an accident:

    **1.**  On premises the Named Insured owns or rents;

    **2.**  On ways next to premises the Named Insured owns or rents; or

    **3.**  Because of the Named Insured's operations;

provided that:

    **a.**  The accident takes place in the United States of America, its territories or possessions or Puerto Rico and during the Policy Period;

    **b.**  The expenses are incurred and reported to the Company within one (1) year of the date of the accident; and

    **c.**  The injured person submits to examination, at the Company's expense, by physicians of the Company's choice as often as the Company reasonably requires.

The Company will make these payments regardless of fault. The Company will pay reasonable expenses for:

    **(i)**  First aid administered at the time of an accident;

    **(ii)**  Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    **(iii)** Necessary ambulance, hospital, professional nursing and funeral services.

The Named Insured shall report such expenses to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company.

# DEFINITIONS

**A.**    **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the Named Insured's Specified Products, Goods or Operations stated in the Declarations for the purpose of promoting the sale or use of such Specified Products, Goods or Operations; provided, however, only that part of a website that is about the Named Insured's Specified Products, Goods or Operations stated in the Declarations for the purposes of promoting such Specified Products, Goods or Operations is considered an Advertisement.

**B.**    **Aircraft Products** means any aircraft whether or not heavier than air, including spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of Aircraft Products.

**C.**    **Auto** means:

    **1.**  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; provided, however, it does not include Mobile Equipment; or

    **2.** Any other land motor vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged;

provided, however, Auto does not include Mobile Equipment.

**D.** **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**E.** **Claim** means a written notice received by the Insured of:

    **1.** An intention to hold the Insured responsible for:

        **a.** A Bodily Injury;

        **b.** A Property Damage;

        **c.** A Personal and Advertising Injury;

        **d.** An Occurrence; or

        **e.** An offense resulting in a Personal and Advertising Injury;

    involving this Coverage Part; or

    **2.** The service of suit or institution of arbitration proceedings against the Insured.

**F.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

    **1.** Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

    **2.** Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

    **a.** Liability to such party for, or the cost of, that party's defense has also been assumed in the same Insured Contract; and

    **b.** Such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

**G.** **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

    **1.** Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;

    **2.** Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

    **3.** Sanctions;

    **4.** Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed; or

    **5.** The return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services, products or goods.

    **6.** The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

**H.** **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**I.** **Employee** means any natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes a Leased Worker but does not include any Temporary Worker or independent contractor.

**J.** **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

**K.** **Insured Contract** means:

**1.** A contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner shall not be an Insured Contract;

**2.** Any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

**3.** An obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

**4.** A sidetrack agreement;

**5.** An elevator maintenance agreement; or

**6.** That part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party, provided such Bodily Injury or Property Damages is caused, in whole or in part, by the Insured or by any person or organization acting on behalf of the Named Insured; provided, however, Insured Contract shall not include that part of any contract or agreement:

**a.** That indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(i)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

**(ii)** Supervision, inspection, failure to supervise or inspect architectural, engineering or surveying services; or

**c.** Under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render services of a professional nature, including those listed in subparagraph 6.b. hereinabove or any supervision, inspection, failure to supervise or inspect architectural, engineering or survey services.

**L.** **Leased Worker** means a person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction. Leased Worker does not include a Temporary Worker.

**M.** **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**a.** Power cranes, shovels, loaders, diggers, or drills; or

    **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in 1., 2., 3., or 4. herein above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers;

**6.** Vehicles not described in 1., 2., 3., or 4. herein above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Autos:

    **a.** Equipment designed primarily for:

        **(i)** Snow removal;

        **(ii)** Road maintenance, but not construction or resurfacing; or

        **(iii)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on Auto or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment;

provided, however, Mobile Equipment does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered Autos.

**N.** **Named Insured's Products or Goods** means Specified Products or Goods stated in the Declarations, other than real property, that are manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof, other than a vehicle.

Named Insured's Products or Goods includes:

**1.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the Named Insured's Products or Goods; and

**2.** The providing or failure to provide warnings or instructions.

Named Insured's Products or Goods does not include a vending machine or any other property rented to or located for use of others but not sold.

**O.** **Named Insured's Work** means:

**1.** Work or operations performed by or on behalf of the Named Insured for those Specified Operations stated in the Declarations; and

**2.** Materials, parts or equipment furnished in connection such work or operations.

Named Insured's Work includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the Named Insured's Work; and

**b.** The providing or failure to provide warnings or instructions.

**P.** **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Q.** **Personal and Advertising Injury** means injury, including consequential Bodily Injury, caused by one or more of the following offenses:

**1.** False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4. Oral or written publication, in the course of the Named Insured's Advertisement, of material that slanders or libels a person or organization or disparages a person's or organization's products, goods, operations or services;

5. Oral or written publication, in the course of the Named Insured's Advertisement, of material that violates a person's right of privacy;

6. The use of another's advertising idea in the course of the Named Insured's Advertisement; or

7. Infringing upon another's copyright, trade dress or slogan in the course of the Named Insured's Advertisement.

**R.** **Policy Period** means the period from the inception date of this policy to the policy expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

**S.** **Pollutants** means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electric, or magnetic irritants or contaminants, including, smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**T.** **Products-Completed Operations Hazard** includes Bodily Injury and Property Damage occurring away from premises owned by or rented to the Named Insured and arising out of the Named Insured's Products or Goods or the Named Insured's Work.

1. Products-Completed Operations Hazard does not include:

   a. Products or goods that are still in the Named Insured's physical possession; or

   b. Work that has not yet been completed or abandoned.

2. The Named Insured's Work shall be deemed completed at the earliest of the following times:

   a. When all of the work called for under a contract with the Named Insured has been completed;

   b. When all of the work to be performed at the job site has been completed if the contract with the Named Insured calls for work at more than one job site; or

   c. When the portion of the work out of which the Bodily Injury, Property Damage or Occurrence arises has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

3. Work or operations which may require service, maintenance, correction, repair or replacement, but which are otherwise complete, shall be deemed completed.

4. The Products-Completed Operations Hazard does not include any Bodily Injury, Property Damage or Occurrence arising out of:

   a. The transportation of property, unless the Bodily Injury, Property Damage or Occurrence arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

   b. The existence of tools, uninstalled equipment or abandoned or unused materials.

**U.** **Professional Services** means those services stated in Item 4. of the Declarations.

**V.** **Property Damage** means:

1. Physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2. Loss of use of tangible property which has not been physically injured or destroyed;

provided, however, any such loss of use is caused by an Occurrence;

Tangible property shall not include Electronic Data.

**W.** **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

**X.** **Volunteer Worker** means any person who is not an Employee of the Named Insured and who donates his/her work at the direction of and within the scope of duties determined by the Named Insured and is not paid a fee, salary or other compensation by the Named Insured or by anyone else for such work performed for the Named Insured.

## THE EXCLUSIONS

**A.** With respect to all Coverages, this Coverage Part does not apply to any Claim:

    **1.** Based upon or arising out of:

        **a.** The actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

            **(1)** The Products-Completed Operations Hazard;

            **(2)** Damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured;

        **b.** Bodily Injury or Property Damage arising out of the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

            **(1)** At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

            **(2)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

        **c.** Any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement;

    **2.** Based upon, arising out of, or in any way involving an act, error or omission in the performance of services of a professional nature rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

    **3.** Based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto;

    **4.** Based upon or arising out of any unlawful discrimination by any Insured;

    **5.** Based upon or arising out of any Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate Electronic Data;

    **6.** Based upon or arising out of any violation of:

        **a.** The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

        **b.** The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

        **c.** The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or

        **d.** Any other federal, state or local statute, law, rule, ordinance or regulation that addresses, prohibits or limits the dissemination, sending, transmitting, communicating, printing, disposal, collecting, recording or distribution of information or other material;

7. Based upon or arising out of Bodily Injury or Property Damage arising directly or indirectly out of:

   a. War, whether or not declared;

   b. Civil war, insurrection, rebellion, revolution or usurped power or action taken by governmental authority in hindering or defending against any of the foregoing; or

   c. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

8. Based upon or arising out of the termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, refusal to employ, or other practices or policies related to employment or professional privileges; or

9. Brought under any other Coverage Part of this policy.

Exclusions A.1. and A.7. shall not apply to Property Damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability – Fire Damage.

B. With respect to Coverage A., this Coverage Part does not apply to any Claim:

1. Based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

2. Based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

   a. That the Insured would have in the absence of the contract or agreement; or

   b. Assumed in a contract or agreement that is an Insured Contract; provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

3. Based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

   a. A delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

   b. A defect, deficiency, inadequacy or dangerous condition in the Named Insured's Products or Goods or the Named Insured's Work;

   provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or Goods or the Named Insured's Work after such products, goods or work have been put to use by any person or organization other than an Insured, provided such products, goods or work are included in the Specified Products, Goods or Operations stated in the Declarations;

4. Based upon or arising out of Property Damage to:

   a. The Named Insured's Products or Goods; or

   b. The Named Insured's Work included in the Products-Completed Operations Hazard, arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or work or part thereof or for loss of use of any defective or allegedly defective product or work;

5. For Damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or Goods or the Named Insured's Work or of any property of which such products, goods or work form a part, if such products, goods, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. Based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

**MESM 5012 08 15**     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     **Page 10 of 15**

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 33 of 105 PageID #: 2824

**a.** Any Auto, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

**b.** Any other Auto, aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

provided, however, this exclusion shall not apply to:

**(1)** The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

**(2)** A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

**(3)** A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

**7.** Based upon or arising out of Bodily Injury or Property Damage arising out of:

**a.** The ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

**b.** The operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

**8.** Based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Auto owned or operated by or rented or loaned to any Insured;

**9.** Based upon or arising out of Property Damage to:

**a.** Property owned, occupied or rented to the Insured;

**b.** Property loaned to the Insured;

**c.** Personal property in the care, custody or control of the Insured;

**d.** That particular part of any property,

**(1)** Upon which operations are being performed by or on behalf of the Named Insured if the Property Damage arises out of those operations; or

**(2)** The restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Products-Completed Operations Hazard;

**e.** Premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Products-Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

**f.** To work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Products-Completed Operations Hazard;

provided, however, Items b., c., and d. of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

**10.** Based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

**11.** Based upon or arising out of Bodily Injury to any employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured's business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the employee;

this exclusion shall apply:

**a.** Whether the Insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

12. Based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

   **a.** Causing or contributing to the intoxication of any person;

   **b.** The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

   **c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

   provided, however, this exclusion shall apply only if the Named Insured:

   **(1)** Manufactures or distributes alcoholic beverages;

   **(2)** Serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

   **(3)** Serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. Based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

14. Based upon or arising out of the Named Insured's Products or Goods or the Named Insured's Work in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

15. For Bodily Injury arising out of Personal and Advertising Injury; or

16. Based upon or arising out of Bodily Injury sustained by any patient, person or resident of a facility receiving services of a professional nature or any such Claim brought by or on behalf of the spouse, child, parent, grandparent, brother, sister or partner of such patient, person or resident of a facility.

Exclusions B.3. through B.12. shall not apply to Property Damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability – Fire Damage.

**C.** With respect to Coverage B., this Coverage Part does not apply to any Claim:

1. Based upon or arising out of Personal and Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal and Advertising Injury;

2. Based upon or arising out of Personal and Advertising Injury arising out of the oral or written publication, in any manner, of material, if done by or at the direction of the Insured with the knowledge of its falsity;

3. Based upon or arising out of Personal and Adverting Injury arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the Policy Period;

4. Based upon or arising out of Personal and Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5. Based upon or arising out of Personal and Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6. Based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7. Based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right; provided, however, this exclusion shall not apply to Infringing upon another's copyright, trade dress or slogan in the Named Insured's Advertisement;

8. Based upon or arising out of Personal and Advertising Injury arising out of piracy, unfair competition, infringement of title, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 35 of 105 PageID #: 2826

right; provided however, under this exclusion other intellectual property right does not include use of another's advertising idea in the Named Insured's Advertisement;

9. Based upon or arising out of Personal and Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

10. For any Personal and Advertising Injury committed by any Insured whose business is:

    a. Advertising, broadcasting, publishing, or telecasting;

    b. Designing or determining content for websites for others; or

    c. An Internet access, content, search or service provider;

11. Based upon or arising out of Personal and Advertising Injury arising out of the unauthorized use of another party's name or product in the Named Insured's email address, domain name or metatag, or any similar device to mislead another party's customers or potential customers;

12. Based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's Advertisement; or

13. Based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.

**D.** With respect Coverage C., the Company will not pay any expenses for Bodily Injury:

1. To any Insured;

2. To a person hired to do work for or on behalf of the Insured or a tenant of the Named Insured;

3. To a person injured on that part of premises owned or rented by the Named Insured that the person normally occupies;

4. To a person, whether or not an employee of an Insured, if benefits for the Bodily Injury are payable or must be provided under any workers' compensation or disability benefits law or under any similar law;

5. To a person injured while taking part in athletics;

6. Included in the Products-Completed Operations Hazard;

7. Excluded under Coverage A.; or

8. To any patient, person or resident of a facility receiving services of a professional nature.

## TERRITORY

The insurance afforded by this Coverage Part applies worldwide, provided the Claim is made in the United States of America, its territories or possessions or Puerto Rico.

## LIMITS OF LIABILITY

**A.** **Coverage A. - Limit of Liability-Each Occurrence:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage A. because of all Bodily Injury or Property Damage sustained by one or more persons or organizations as the result of any one Occurrence shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Occurrence.

**B.** **Coverage A. - Limit of Liability-Fire Damage:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A. - Limit of Liability – Each Occurrence, because of Property Damage to premises, while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises arising out of any one fire, shall not exceed the Limit of Liability stated in the Declarations as applicable to Fire Damage – Any One Fire.

**C.** **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Coverage B. because of all Personal and

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 36 of 105 PageID #: 2827

Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Person or Organization.

**D.** **Coverage C. – Medical Payments:  Limit of Liability–Each Injured Person:**  The total liability of the Company for medical expenses under Coverage C. because of Bodily Injury sustained by any one person shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Injured Person.

**E.** **Limit of Liability – Coverage Part Aggregate:**  Subject to the above Limits of Liability A., B., C. and D., the total liability of the Company shall not exceed the Coverage Part Aggregate Limit of Liability stated in the Declarations for all Damages and Claim Expenses for Coverage A. and B. and all medical expenses under Coverage C.

**F.** **Deductible:**  The applicable Deductible amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence under Coverage A. and to each person or organization under Coverage B. and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence under Coverage A. or each person or organization under Coverage B. shall not exceed the applicable Deductible amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

**G.** **Multiple Insureds, Claims and Occurrences:**  Under Coverage A. the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability applicable to Coverage A. stated in the Declarations. More than one Claim arising out of a single Occurrence or a series of related Occurrences shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

**A.** **Defense, Investigation and Settlement of Claims:**  The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

**1.** Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

**2.** The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

**a.** Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** Providing any other reasonable information requested;

**c.** Providing fully itemized billing on a periodic basis; and

**d.** Cooperating with the Company and the Insured in resolving any discrepancies;

And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 37 of 105 PageID #: 2828

**B.    Consent to Settlement:**  The Company may make such investigation and settlement of any Claim as it deems expedient.

## CLAIM REPORTING PROVISION

It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Occurrence or offense that happens during the Policy Period which may give rise to a Claim against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

## OTHER CONDITIONS

**A.    Prevention of Loss:**  In the event of an Occurrence or an offense involving the Specified Products, Goods, Operations or Premises stated in the Declarations and covered by this Coverage Part, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage or Personal and Advertising Injury from arising out of the same or similar conditions.

**B.    Other Insurance:**  With respect to Coverage C., Common Policy Conditions E. Other Insurance, shall not apply.

**C.    Reporting of Changes in Specified Products, Goods, Operations and Premises:**  The premium charged for this Coverage Part is based on those Specified Products, Goods, Operations and Premises stated in the Declarations and identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those Specified Products, Goods, Operations or Premises stated in the Declarations as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

**1.**   Any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

**2.**   Any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

**3.**   Any change in operations which are not accurately described by the description as stated in the Declarations.

This Coverage Part shall apply to only those Specified Products, Goods, Operations and Premises stated in the Declarations, irrespective of any changes reported.


**MARKEL**®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM EARNED PREMIUM ENDORSEMENT

In the event that this policy is cancelled by the Named Insured who is authorized to act on behalf of all insureds, the policy premium is subject to a minimum earned premium of 25%.

All other terms and conditions remain unchanged.

**MEIL 5200-25% 07 04**                                                        **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

All other terms and conditions remain unchanged.

**EIC 832-01 10 02**

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOLD EXCLUSION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
 OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE


In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving Mold or Mold Event.

Solely for the purposes of this endorsement:

Mold means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

Mold Event means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of Mold.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                    **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LONGER DURATION EXTENDED REPORTING PERIOD AVAILABILITY

This endorsement modifies insurance provided under the following:

PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
    COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
    OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND
    COMPLETED OPERATIONS LIABILITY) COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that in addition to the availability of the Extended Reporting Period for the period of months stated in Item 8. of the Declarations, an Extended Reporting Period of the following duration shall also be available:

48 months;
60 months;
72 months; or
84 months.

The Named Insured must make a written request for the longer duration Extended Reporting Period received by the Company within 10 days after the end of the Policy Period. The written request must specify from the options stated above which period of Extended Reporting Period is requested. The Company will determine the additional premium to be charged for such Extended Reporting Period.

The Company will provide to the Named Insured in writing the amount of the additional premium for an Extended Reporting Period of the duration specified within 10 days of receipt of the Named Insured's written request.

All other terms and conditions of the Section Extended Reporting Period shall apply with regard to the Named Insured's exercise of any such longer duration Extended Reporting Period.

All other terms and conditions remain unchanged.

**MEIL 5229 09 10**                                                                                                                    **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

LOCUM TENENS AND CONTRACT STAFFING GENERAL LIABILITY INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any Claim otherwise covered hereunder, this Coverage Part shall not exclude any Claim based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance of Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.  The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Company has met the Company's deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

All other terms and conditions remain unchanged.

**EIC 4638 01 15** **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

**A.** The SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART is amended as follows:

**1.** Section DEFINITIONS is amended by the addition of the following:

**Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

**2.** Section THE EXCLUSIONS is amended by the addition of the following exclusion:

Any Claim based upon, arising out of or in any way involving the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, "use" includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured's authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, involving the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

**B.** The SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART is amended as follows:

**1.** Section DEFINITIONS B., Aircraft Products, is deleted and replaced as follows:

**B. Aircraft Products** means any aircraft whether or not heavier than air, including manned and Unmanned Aircraft, spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of Aircraft Products.

**2.** Section DEFINITIONS is amended by the addition of the following:

**Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

**3.** Section THE EXCLUSIONS A. is amended by the addition of the following:

Based upon, arising out of or in any way involving Bodily Injury, Property Damage or Personal Injury and Advertising Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, "use" includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured's authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This

exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage or the offense which caused the Personal Injury and Advertising Injury involved the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

4. Section THE EXCLUSIONS B.6. is deleted and replaced as follows:

6. Based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

a. Any Auto, aircraft other than an Unmanned Aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

b. Any other Auto, aircraft other than an Unmanned Aircraft or watercraft operated by any person in the course of their employment or activities on behalf of the Named Insured;

This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft other than Unmanned Aircraft, Auto or watercraft that is owned or operated by or rented or loaned to any Insured;

provided, however, this exclusion shall not apply to:

(1) The parking of an Auto on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Auto is not owned by or rented or loaned to any Insured;

(2) A watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

(3) A watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT – CIVIL RIGHTS VIOLATION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** Section Definitions H. is amended by the addition of the following:

    **4.** An allegation of a civil rights violation pursuant to the Civil Rights Act of 1871 (42 U.S.C. § 1983 *et seq*.) and amendments thereto, provided that such allegation is the result of any natural person receiving Professional Services.

**2.** Section Limits of Liability E. is deleted and replaced with the following:

    **E.** **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claims or suits or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in the Declarations. More than one Claim arising out of a single act, error or omission, including Professional Services to a woman and/or her unborn child or children during the course of pregnancy, including pre-natal, delivery and post-natal care, or a series of related or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made, or with regard to written notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

All other terms and conditions remain unchanged.

**MESM 2031 10 12**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 46 of 105 PageID #: 2837



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT – CIVIL RIGHTS VIOLATION
## GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

1. Section Definitions E. is deleted and replaced with the following:

   E. Claim means notice received by the Insured of an intention to hold the insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; (4) a Personal Injury; or (5) an allegation of a Bodily Injury as a result civil rights violation pursuant to the Civil Rights Act of 1871 (42 U.S.C. §1983 et seq.) and amendments thereto, provided that such allegation arises out of an Occurrence involving either an inmate in a correctional facility in which services are provided by an Insured or a patient of an Insured or client of the Insured; involving this Coverage Part and shall include the service of suit or institution of arbitration proceedings against the Insured.

2. Section, The Exclusions A.4. is deleted and replaced with the following:

   4. any Claim based upon or arising out of any unlawful discrimination by any Insured; this exclusion shall not apply to any civil rights violation alleged pursuant to the Civil Rights Act of 1871 (42 U.S.C. §1983 et seq.) and amendments thereto, provided that such civil rights violation arises out of an Occurrence for which the Insured is legally liable.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                           **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEXUAL ACTS LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the Specified Medical Professions Professional Liability Insurance Coverage Part is amended as follows:

1.  Section Insuring Agreement is amended by the addition of the following:

    Sexual Acts Liability: The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury provided:

    A.  such Sexual Act arises out of the conduct of the Insured's Professional Services;

    B.  such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date as stated in Item 7. of the Declarations and before the end of the Policy Period; and

    C.  prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may result in a Claim under this policy.

2.  Section Definitions is amended by the addition of the following:

    Sexual Act means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

    Sexual Injury means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

3.  Section The Exclusions I. is deleted.

4.  Section The Exclusions is amended by the addition of the following exclusions:

    T.  to any Insured who perpetrates or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury; provided, however, the Company shall defend such Insured and pay Claim Expenses on their behalf unless it is established in fact that such Insured perpetrated such Sexual Act;

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                    **Page 1 of 2**

U.  to any manager, supervisor, officer, director, trustee or partner who gains knowledge of any actual or alleged Sexual Act and fails to take reasonable care to prevent a future Sexual Act;

V.  to any Claim based upon or arising out of any Sexual Act which is perpetrated or alleged to have been perpetrated by an Insured who previously perpetrated or is alleged to have previously perpetrated a Sexual Act, and after a manager, supervisor, officer, director, trustee or partner has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated Sexual Act; or

W.  to any Claim based upon or arising out of Sexual Injury to any employee of the Insured.

5.  Section Limits of Liability is amended by the addition of the following:

F.  Limit of Liability - Sexual Acts Liability Coverage: The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury is limited to:

1.  $1,000,000          All Claims Made by Each Claimant

2.  $15,000,000          All Claims under Sexual Acts Liability Coverage

Multiple Sexual Acts: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

6.  Section Limits of Liability B. is amended by the addition of the following:

Subject to Section Limits of Liability F., Limits of Liability - Sexual Acts Liability Coverage, the total liability of the Company for all Damages and Claim Expenses for all Claims insured herein because of Sexual Injury or allegations that the Insured was negligent in hiring, training or supervising any Insured person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury shall be part of and not in addition to the amount stated in Item 5.B. of the Declarations, Policy Aggregate Limit of Liability, arising out of all Claims first made against the Insured during the Policy Period and the Extend Reporting Period, if exercised.

It is further understood and agreed that the Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

1.  Section Definitions is amended by the addition of the following:

Sexual Act means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Products and Completed Operations.

Sexual Injury means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

2.  Section The Exclusions A. under the under the Specified Medical Professions General Liability Insurance Coverage Part is amended by the addition of the following exclusions:

(i)  any Claim based upon or arising out of any Sexual Injury; or

(ii)  to any Claim based upon or arising out of any allegations that the Insured was negligent in hiring, training or supervising any person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                           **Page 2 of 2**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFENSE OF LICENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE
COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that policy is amended as follows:

1.  Section Supplementary Payments is added as follows:

    **SUPPLEMENTARY PAYMENTS**

    **A. Defense of License Coverage:** Upon submission to the Company of satisfactory written proof of payment, the Company shall reimburse the Named Insured for reasonable and necessary Legal Fees and Legal Expenses incurred in the defense of the Insured in response to a Disciplinary Proceeding first initiated during the Policy Period,

    Provided:

    1.  The act, error or omission in Professional Services giving rise to the Disciplinary Proceeding happens during the Policy Period or on or after 11/15/2013 and before the end of the Policy Period; and

    2.  Prior to the effective date of this policy the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Disciplinary Proceeding was likely;

        Such reimbursement shall be in excess of a deductible of $5,000 for each Disciplinary Proceeding and shall be subject to:

        a.  A limit of liability of $25,000 for each Insured for each Disciplinary Proceeding; and

        b.  A policy aggregate limit of liability of $75,000 for all Insureds for all Disciplinary Proceedings covered herein.

        It is a condition precedent to coverage afforded by this policy under this Section Supplementary Payments A., Defense of License Coverage, that the Named Insured shall give the Company written notice as stated in the Notice item of the Declarations as soon as practicable of any Disciplinary Proceeding first initiated during the Policy Period.

        The Named Insured must submit to the Company satisfactory written proof of payment of such Legal Fees and Legal Expenses within one (1) year after the expiration or cancellation of this policy. Proof of payment shall include an itemized statement with documentary evidence which supports and explains each item, including fully itemized attorney billings.

        No payment pursuant to this Section shall be made for the Named Insured's payment of or obligation to pay any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; costs required to comply with non-monetary conditions imposed upon any Insured as a condition of licensure; any monetary judgment, award or settlement of any kind; or any Legal Fees and Legal Expenses incurred by the Named Insured in a proceeding associated with the foregoing.

Any amount the Company shall reimburse pursuant to this Section, Supplementary Payments A., shall be in addition to the Limits of Liability stated in the Declarations and shall be subject to a Deductible.

**2.** Section Definitions is amended by the addition of the following:

**Disciplinary Proceeding** means the Insured's receipt of notice of:

**(1)** Any state or federal regulatory or disciplinary action, inquiry or review involving the Insured's professional licensure, with the purpose of adversely affecting the Insured's license;

**(2)** Any professional disciplinary action, inquiry, or review taken against the Insured by any health care organization which affects the Insured's professional privileges or membership with such organization;

However, Disciplinary Proceeding shall not include:

**(a)** Any dispute involving timely completion of medical records;

**(b)** Any application for initial placement on a medical staff;

**(c)** Any criminal proceeding;

**(d)** Any dispute involving allegations of fraud or willful non-compliance with any regulations or procedures or Medicare, Medicaid or any similar federal or state program; or

**(e)** Any appeal of a Disciplinary Proceeding concluded against the Insured.

**Legal Fees and Legal Expenses** means attorney's fees charged by legal counsel selected by the Named Insured, and expert witness fees, and related legal and/or associated investigation costs and expenses incurred by the Insured with the written consent of the Named Insured. This does not include reimbursement for any Insured's salary or loss of other billing or income. The Company shall have the final decision as to the reasonableness of Legal Fees and Legal Expenses.

All other terms and conditions remain unchanged.

**MESM 2087 05 12**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SUPPLEMENTARY PAYMENTS ENDORSEMENT – TRIAL ATTENDANCE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE
  COVERAGE
SPECIFIED MEDICAL PROFESIONS GENERAL LIABLITY (INCLUDING PRODUCTS AND COMPLETED
  OPERATIONS LIABILITY) INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

Trial Attendance Supplementary Payments: The Company shall pay a $250 per diem trial attendance allowance to any Insured who attends the trial, mediation or arbitration of a Claim or deposition in furtherance of discovery in a Claim; but only if (a) the Claim is against the Insured or alleges negligent acts, errors or omissions performed by or at the direction of the Insured; and (b) the Claim is covered by this policy; and (c) the Insured attends the trial, mediation or arbitration at the written request of the Company.

Payments to the Named Insured pursuant to this Supplementary Payment shall be in addition to the Limits of Liability applicable and shall not be subject to the Deductible. Payments to the Named Insured pursuant to this Supplementary Payment shall be limited to $5,000 per claim and $10,000 total for all claims made under this policy

All other terms and conditions remain unchanged.

**Manuscript-1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE**

In consideration of the premium paid, it is hereby understood and agreed that solely with respect to the coverage afforded by this endorsement, the policy is amended as follows:

1.  For the purposes of coverage provide by this endorsement, the Declarations is amended by the addition of the following notice:

    **Claims Made:** With regard to Employee Benefits Liability Coverage coverage is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company, pursuant to terms herein.

2.  Item 5. C. of the Declarations is amended by the addition of the following:

| Coverage Part | Coverage Part Limits of Liability | Coverage Part Deductible | Coverage Part Retroactive Date |
|---|---|---|---|
| **C.** | $1,000,000 Employee Benefits Liability Coverage Each Claim | $1,000 Employee Benefits Liability Coverage Each Claim | 11/15/2013 Employee Benefits Liability Coverage |
| | $3,000,000 Employee Benefits Liability Coverage Aggregate | | |

3.  Section THE INSURED is deleted and replaced as follows:

    **(i)** The unqualified word "Insured," either in the singular or plural, means:

    **(a)** The Named Insured and any principal, partner, officer, director or Employee of the Named Insured; provided that such Employee is authorized to act in the Administration of the Named Insured's Employee Benefits Program.

4.  Section INSURING AGREEMENTS is amended by the addition of the following:

    **(i) Employee Benefits Liability - Claims Made Coverage:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.C. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIM REPORTING PROVISION, by Employees, or their legal representatives, which arise out of any act, error or omission in the Administration of the Named Insured's Employee Benefits Program;

    Provided:

**MESM 2070 08 15**

**Page 1 of 4**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 53 of 105 PageID #: 2844

(a) The entirety of such act, error or omission happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.C. of the Declarations and before the end of the Policy Period; and

(b) Prior to the effective date of this Coverage Part the Insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely; and

(c) There is no prior policy or policies which provide insurance for such act, error or omission regardless of whether or not the available limits of liability of such prior policy or policies are sufficient to pay any liability or Claim or whether or not the deductible provisions and amount of such prior policy or policies are different from this policy.

5. Section DEFINITIONS is amended by the addition of the following:

(i) **Administration** means conduct of the Insured, or of any person for whose acts, errors or omissions the Insured is legally responsible, with respect to:

(a) Providing information to Employees, or their dependents and beneficiaries, regarding the Named Insured's Employee Benefits Program;

(b) Handling of records in connection with the Named Insured's Employee Benefits Program; or

(c) Effecting enrollment, termination or cancellation of Employees, or their dependents and beneficiaries, in the Named Insured's Employee Benefits Program;

However, Administration does not include handling payroll deductions.

(ii) **Employee Benefits Program** means any program providing some or all of the following benefits to Employees of the Named Insured:

(a) Group life, accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that only Employees may subscribe to such benefits and that such benefits are generally made available solely to those Employees who fulfill the plan's eligibility requirements;

(b) Profit sharing plans, employee stock subscription plans, employee stock ownership plans, employee savings plans and pension plans; provided that only Employees may subscribe to such benefits and that such benefits are generally made available solely to those Employees who fulfill the plan's eligibility requirements;

(c) Unemployment insurance, social security benefits, workers' compensation or disability benefits; and

(d) Vacation plans and leave of absence programs.

6. Section DEFINITIONS E., Claim, is deleted and replaced by the following:

**Claim** means a demand received by the Insured for compensation for Damages, including service of suit or institution of arbitration proceedings against the Insured.

7. Section DEFINITIONS I., Employee, is deleted and replaced by the following:

I. **Employee** means any: (i) natural person while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service; or (ii) former Employee of the Named Insured. Employee does not include any Leased Worker, Temporary Worker or independent contractor.

8. Section THE EXCLUSIONS is amended by the addition of the following:

(i) With respect to Employee Benefits Liability Coverage only, this policy does not apply:

(a) To any Claim based upon or arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, including willful or reckless violation of any statute;

(b) To Bodily Injury, Property Damage or Personal Injury and Advertising Injury;

(c) To any Claim based upon or arising out of discrimination, wrongful termination or other employment related practices;

(d) To any Claim based upon or arising out of the Insured's failure to comply with workers' compensation, unemployment, social security or disability benefits laws or any similar laws;

**(e)** To any Claim based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law;

**(f)** To any Claim based upon or arising out of the investment or non-investment of any Employee Benefits Program funds;

**(g)** To any Claim based upon or arising out of failure of any investment or security to perform;

**(h)** To any Claim for failure of performance of contract by any insurer;

**(i)** To any Claim based upon or arising out of insufficient funds to meet any obligations under any Employee Benefits Program;

**(j)** To any Claim based upon or arising out of the failure or inability of any entity to make any payments or provide any benefits due under any Employee Benefits Program;

**(k)** To any Claim for benefits under any Employee Benefits Program to the extent that such benefits, with reasonable effort and cooperation of the Insured, are available from the applicable benefit funds or other available and collectible insurance;

**(l)** To any Claim based upon or arising out of advice given or which should have been given to any Employees to participate or not to participate in any Employee Benefits Program;

**(m)** To criminal or civil fines, taxes, or penalties, including those imposed under the Internal Revenue Code or any similar state or local law;

**(n)** To any Claim based upon or arising out of the selection, design, planning, development, creation, formation, or structure of any Employee Benefits Program;

**(o)** To any Claim based upon or arising out of any change in availability, eligibility or cost of any Employee Benefits Program; or

**(p)** Any Claim based upon or arising out of any change in availability, eligibility or cost of any Employee Benefits Program.

**9.** Section LIMITS OF LIABILITY is amended by the addition of the following:

**(i) Employee Benefits Liability Coverage - Each Claim:** The total liability of the Company for the combined total of Damages and Claim Expenses for each Claim under Employee Benefits Liability Coverage insured herein shall not exceed the Limit of Liability stated in Item 5.C. of the Declarations as applicable to Each Claim.

**(ii) Employee Benefits Liability Coverage –Aggregate:** Subject to the above Limits of Liability (i) for Each Claim, the total liability of the Company under this endorsement for the combined total of all Damages and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised shall not exceed the Aggregate Limit of Liability as stated in Item 5.C. of the Declarations as amended by this endorsement.

**(iii) Each Claim Deductible:** The deductible amount stated in Item 5.C. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim under Employee Benefits Liability Coverage and shall include the combined total of Damages and Claim Expenses, whether or not payment for Damages is made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the applicable Deductible amount stated in Item 5.C. of the Declarations. The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

**(iv) Multiple Insureds, Claims and Claimants:** With respect to Employee Benefits Liability Coverage, the inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.C. of the Declarations. More than one Claim arising out of a single act, error or omission or a series of related acts, errors or omissions shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such act, error or omission is made.

**10.** With respect to Employee Benefits Liability Coverage, Section CLAIM REPORTING PROVISION is amended by the addition of the following:

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 55 of 105 PageID #: 2846

It is a condition precedent to coverage afford by this endorsement that the Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

**11.** With respect to Employee Benefits Liability Coverage, Section EXTENDED REPORTING PERIOD is added:

## EXTENDED REPORTING PERIOD

**A.** The Named Insured's right to exercise the Extended Reporting Period under coverage provided under this endorsement shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements in the policy for which an Extended Reporting Period is available.

**B.** If the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions, Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions, Cancellation, for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right to exercise the Extended Reporting Period as regards all Coverage Parts included under this policy according to the terms and conditions applicable to the Extended Reporting Period as detailed in the Specified Medical Professions Professional Liability Insurance Coverage Part.

**C.** In the event that the Named Insured exercises the Extended Reporting Period as detailed in Specified Medical Professions Professional Liability Insurance Coverage Part, then such exercise of the Extended Reporting Period shall extend the coverage granted under this endorsement to Claims first made against the Insured, during the period of months; as elected by the Named Insured, and reported to the Company pursuant to Section CLAIM REPORTING PROVISION following immediately upon the effective date of such cancellation or nonrenewal, for any act, error or omission in the Administration of the Named Insured's Employee Benefits Program, the entirety of , which happened on or after the applicable Retroactive Date stated in Item 5.C. of the Declarations and prior to the effective date of such cancellation or nonrenewal, and which is otherwise covered by this endorsement.

All other terms and conditions remain unchanged.

**MESM 2070 08 15** **Page 4 of 4**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE

1.  Item 5. of the Declarations, Coverage Part Deductible, is deleted and replaced as follows:

    5.  SELF-INSURED RETENTION:

        A.  For Professional Liability:

            Each Claim:                                   $750,000

        C.  For General Liability:

            1.  For Coverage A (Bodily Injury and Property Damage Liability):

                Each Occurrence:                          $750,000

            2.  For Coverage B (Personal Injury and Advertising Injury Liability):

                Each Person or Organization:              $750,000

2.  Whenever used in the Specified Medical Professions Professional Liability Insurance Coverage Part and the Specified Medical Professions General Liability Insurance Coverage Part, the word "Deductible" is deleted and replaced with "Self-Insured Retention".

3.  Specified Medical Professions Professional Liability Insurance Conversation Part, Section Limits of Liability D., Deductible, is deleted and replaced with the following:

    D.  Self-Insured Retention:  The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not Damages payments are made.

        Such amounts shall, upon written demand by the Company, be paid by the Named Insured, CCS Intermediate Holdings, LLC (the "Named Insured") within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

        The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

        At its sole discretion, the Company reserves the right to independently audit the Insured's claim files and records

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                 **Page 1 of 5**

for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured's right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured's inability to pay shall not relieve the Insured of its obligations hereunder.

4. Specified Medical Professions Professional Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

Defense, Investigation and Settlement of Claims:   It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, its own expense to defend, investigate and settle any Claim against any Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company's opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a.  providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b.  providing any other reasonable information requested;

   c.  providing fully itemized billing on a periodic basis; and

   d.  cooperating with the Company and the Insured in resolving any and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

   Upon exhaustion of the Self-Insured Retention, the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

5. Specified Medical Professions Professional Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

All other terms and conditions remain unchanged.

A. Claim Reporting Provision: It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

    1. in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

    2. which the Insured's estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

    3. which involves:

        a. Death;

        b. Brain or spinal injury;

        c. Amputation;

        d. Loss of use of arm, leg, sight or hearing;

        e. Severe burns;

        f. Serious loss of use of any bodily function

        g. Paralysis;

        h. Reflex Sympathy Dystrophy;

        j. Complex Regional Pain Syndrome;

        k. Multiple factures, multiple areas;

        l. Sexual molestation; or

        m. Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the Self-Insured Retention. Quarterly bordereaux reports containing the Claimant's name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.

6. Specified Medical Professions General Liability Insurance Coverage Part, Section Limits of Liability F., Deductible, is deleted and replaced with the following:

F. Self-Insured Retention: The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

All other terms and conditions remain unchanged.

At its sole discretion, the Company reserves the right to independently audit the Insured's claim files and records for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured's right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured's inability to pay shall not relieve the Insured of its obligations hereunder.

7. Specified Medical Professions General Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

   A. Defense, Investigation and Settlement of Claims:   It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, at its own expense to defend, investigate and settle any Claim against an Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

   Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company's opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

   Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

   1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

   2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

      a. providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

      b. providing any other reasonable information requested;

      c. providing fully itemized billing on a periodic basis; and

      d. cooperating with the Company and the Insured in resolving any discrepancies;

      and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

All other terms and conditions remain unchanged.

Upon exhaustion of the Self-Insured Retention the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

8. Specified Medical Professions General Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

A. Claim Reporting Provision: It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

1. in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

2. which the Insured's estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

3. which involves:

   a. Death;

   b. Brain or spinal injury;

   c. Amputation;

   d. Loss of use of arm, leg, sight or hearing;

   e. Severe burns;

   f. Serious loss of use of any bodily function

   g. Paralysis;

   h. Reflex Sympathy Dystrophy;

   j. Complex Regional Pain Syndrome;

   k. Multiple factures, multiple areas;

   l. Sexual molestation; or

   m. Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the self-insured retention. Quarterly bordereaux reports containing the Claimant's name, the date of loss and information on the nature of  the injury or allegations shall constitute Notice of Claim.
discrepancies;

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CLAIM EXPENSES IN ADDITION TO THE EACH CLAIM LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed the policy is amended as follows:

1. Section Limits of Liability A. is deleted and replaced with the following:

    **A. Limit of Liability-Each Claim:** For Professional Liability, the total liability of the Company for Damages for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Claim.

2. Section Defense and Claim Expenses is deleted and replaced with the following:

    **DEFENSE AND CLAIM EXPENSES**

    **A. Defense and Investigation of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

    1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the Professional Liability Each Claim Limits of Liability stated in the Declarations; however, such Claim Expenses incurred in defending and investigating such Claim shall be part of and not in addition to the Professional Liability Coverage Part Aggregate Limit of Liability stated in the Declarations. Such Claim Expenses shall reduce the Coverage Part Aggregate Limit of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Professional Liability Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

    2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

        a. Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages**,** potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

        b. Providing any other reasonable information requested;

        c. Providing fully itemized billing on a periodic basis; and

        d. Cooperating with the Company and the Insured in resolving any discrepancies;

        And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the Professional Liability Each Claim Limit of Liability stated in the Declarations; however, such Claim Expenses shall be part of and shall not be in addition to the Professional Liability Coverage Part Aggregate Limit of Liability stated in the Declarations. Such Claim Expenses shall reduce the Professional Liability Coverage Part Aggregate Limit of Liability and shall be applied against the Deductible.

All other terms and conditions remain unchanged.

**MESM 2004 10 12**                                                                                                          **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CLAIM EXPENSES IN ADDITION TO THE EACH OCCURRENCE/EACH PERSON OR ORGANIZATION LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section LIMITS OF LIABILITY A., B. and C. are deleted and replaced with the following:

    A. **Coverage A. - Limit of Liability-Each Occurrence:** The total liability of the Company for Damages for all Claims under Coverage A. because of all Bodily Injury or Property Damage sustained by one or more persons or organizations as the result of any one Occurrence shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Occurrence.

    B. **Coverage A. - Limit of Liability-Fire Damage:** The total liability of the Company for Damages for all Claims, including those subject to the above provision regarding the Coverage A. - Limit of Liability – Each Occurrence, because of Property Damage to premises, while rented to the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises arising out of any one fire, shall not exceed the Limit of Liability stated in the Declarations as applicable to Fire Damage – Any One Fire.

    C. **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for Damages for all Claims under Coverage B. because of all Personal and Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in the Declarations as applicable to Each Person or Organization.

2. Section DEFENSE, SETTLEMENTS AND CLAIM EXPENSES A. is deleted and replaced with the following:

    A. **Defense, Investigation and Settlement of Claims:** The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

    1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations; however, such Claim Expenses incurred in defending and investigating such Claim shall be part of and shall not be in addition to the General Liability Coverage Part Aggregate Limit of Liability stated in the Declarations. Such Claim Expenses shall reduce the General Liability Coverage Part Aggregate Limit of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

    2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 63 of 105 PageID #: 2854

**a.** Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

**b.** Providing any other reasonable information requested;

**c.** Providing fully itemized billing on a periodic basis; and

**d.** Cooperating with the Company and the Insured in resolving any discrepancies;

And the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations; however, such Claim Expenses incurred in defending and investigating such Claim shall be part of and shall not be in addition to the General Liability Coverage Part Aggregate Limit of Liability stated in the Declarations. Such Claim Expenses shall reduce the General Liability Coverage Part Aggregate Limit of Liability stated in the Declarations and shall be applied against the Deductible.

All other terms and conditions remain unchanged.

**MESM 2026 08 15**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITS OF LIABILITY PER LOCATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERERAGE PART – CLAIMS
   MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Item 5. of the Declarations, Coverage Part Limits of Liability, is deleted and replaced by the following:

   5. LIMITS OF LIABILITY:

   A. For Professional Liability in states other than New York, Virginia, Indiana for Named nsureds who are participants in the Indiana Patient Compensation Fund, Louisiana for Named Insureds who are participants in the Louisiana Patient Compensation Fund or Pennsylvania Named Insureds who are participants in the Pennsylvania Patient Compensation Fund:

   | | |
   |---|---|
   | Each Claim: | $1,000,000 |
   | Aggregate, Each Location: | $3,000,000 |

   For Professional Liability in New York:
   | | |
   |---|---|
   | Each Claim: | $1,300,000 |
   | Aggregate, Each Location: | $3,900,000 |

   For Professional Liability in Virginia as defined in VA Code § Code 8.01 – 581.1:
   | | |
   |---|---|
   | Each Claim: | $2,200,000 |
   | Aggregate, Each Location: | $6,600,000 |

   | | |
   |---|---|
   | Aggregate, All Locations: | $15,000,000 |

   C. For General Liability – Each Location:

   1. For Coverage A. (Bodily Injury and Property Damage Liability):

   | | |
   |---|---|
   | (i) Each Occurrence: | $1,000,000 |
   | (ii) Damage to Premises – Any One Premises: | $300,000 |

   2. For Coverage B. (Personal Injury and Advertising Injury Liability):
   | | |
   |---|---|
   | Each Person or Organization: | $1,000,000 |

   3. For Coverage C. (Medical Payments):
   | | |
   |---|---|
   | (i) Each Injured Person: | $10,000 |

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                  **Page 1 of 2**

4. Aggregate:

    (i) Each Location:                                                  $3,000,000
    (i) All Coverages, All Locations:                         $15,000,000

2.    The Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

    Section Limits of Liability is amended by the addition of the following:

    Limit of Liability- Aggregate- All Coverages, All Locations:  Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate, All Locations as stated in Item 5.B.. of the Declarations.

2.    The Specified Medical Professions Professional Liability Coverage Part is amended as follows:

    Section Limits of Liability is amended by the addition of the following:

    Limit of Liability- Aggregate- All Coverages, All Locations:  Notwithstanding the Limits of Liability applicable to this Coverage Part and any other purchased Coverage Part(s), the total liability of the Company under this policy shall not exceed the Limit of Liability - Aggregate All Coverages, All Locations as stated in Item 5.A.4.ii. of the Declarations.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                **Page 2 of 2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number A

| POLICY NUMBER<br>SM910742 | POLICY CHANGES<br>EFFECTIVE<br>11/15/2015 | COMPANY<br>Evanston Insurance Company |
|---|---|---|
| NAMED INSURED<br>CORRECT CARE SOLUTIONS GROUP HOLDINGS, LLC | | AUTHORIZED REPRESENTATIVE<br>AmWINS Brokerage<br>2851 Charlevoix Dr. SE Ste. 220<br>Grand Rapids, MI 49546 |

COVERAGE PARTS AFFECTED

COMMON POLICY CONDITIONS

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

GENERAL LIABILITY INSURANCE COVERAGE PART - OCCURRENCE

CHANGES

**ADDITIONAL NAMED INSURED**

It is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:

| | |
|---|---|
| CCS Group Holdings, LLC | November 15, 2013 |
| CCS Intermediate Holdings, LLC, | November 15, 2013 |
| CCS-CHC Holdings, LLC | June 24, 2014 |
| Conmed Healthcare Management, Inc. | November 15, 2013 |
| Conmed Texas, Inc. | November 15, 2013 |
| Conmed, Inc. | November 15, 2013 |
| Correct Care Solutions, LLC | November 15, 2013 |
| Correctional Mental Health Services, LLC | November 15, 2014 |
| Physicians Network Association | November 15, 2014 |
| Salus LLC | February 20, 2014 |
| California CCS, P.A. | November 15, 2013 |
| CCS Arkansas Medical Services, P.A. | January 1, 2014 |
| CCS-Zoldessy Arkansas Dental Services, P.A. | January 1, 2014 |
| CCS Colorado Medical Services, P.C. | November 15, 2013 |
| CCS Delaware Medical Services, P.A. | November 15, 2013 |
| CCS Florida Medical Services, P.A. | November 15, 2013 |
| CCS Georgia Medical Services, P.C. | November 15, 2013 |
| CCS Illinois Medical Services, S.C. | November 15, 2013 |
| CCS Indiana Medical Services, P.C. | November 15, 2013 |
| CCS-Kansas Physicians, P.A. | November 15, 2013 |
| CCS Kentucky Medical Services, P.S.C. | November 15, 2013 |
| CCS Michigan Medical Services, P.C. | November 15, 2013 |
| CCS Nebraska Medical Services, P.C. | November 15, 2013 |
| CCS-Kastre Nevada, P.C. | November 15, 2013 |
| CCS New Jersey Medical Services Professional Corporation | November 15, 2013 |
| New York Correct Care Solutions Medical Services, P.C. | November 15, 2013 |
| CCS North Carolina Medical Services, P.C. | November 15, 2013 |

| | |
|---|---|
| CCS South Carolina Medical Services, P.C. | November 15, 2013 |
| CCS South Dakota Medical Services, P.C. | November 15, 2013 |
| CCS –TN Physicians, P.C. | November 15, 2013 |
| CCS Texas Medical Services, P.A. | November 15, 2013 |
| CCS Vermont Medical Services, P.C. | November 15, 2013 |
| CCS Virginia Medical Services, P.C. | November 15, 2013 |
| CCS Wisconsin Medical Services, S.C. | November 15, 2013 |
| Correctional Healthcare Companies fka CHC Companies, LTD | January 1, 2015 |
| Correctional Healthcare Companies | January 1, 2015 |
| Judicial Correction Services, Inc. | January 1, 2015 |
| Jessamine Healthcare Holdings, LLC | January 1, 2015 |
| Jessamine Healthcare. Inc | January 1, 2015 |
| Correctional Healthcare Holding Company, Inc. fka Jessamine-Peyton Purchaser, Inc. | January 1, 2015 |
| Correctional Healthcare Holdings, Inc. | January 1, 2015 |
| Correctional Healthcare Management, Inc. | January 1, 2015 |
| Health Professionals, Ltd | January 1, 2015 |
| Correctional Healthcare Management of Oklahoma, Inc. | January 1, 2015 |
| Correctional Staffing Solutions, Inc. | January 1, 2015 |
| CHC Pharmacy Services, Inc | January 1, 2015 |
| Correctional Healthcare Physicians, P.C. | January 1, 2015 |
| Correctional Healthcare Physicians II, P.C. | January 1, 2015 |
| Correctional Healthcare Physicians III, P.C. | January 1, 2015 |
| Justice Services Holding, LLC | January 1, 2015 |
| Hase and Associates System, Inc. | January 1, 2015 |
| Physicians Network Association, Inc. | January 1, 2015 |
| PNA of New Mexico, Inc. | January 1, 2015 |
| PNA of Arizona, Inc. | January 1, 2015 |
| CAF Enterprises, Inc. | January 1, 2015 |
| CHC Healthcare Inc. | January 1, 2015 |
| Correctional Healthcare Dentists, P.C. | January 1, 2015 |
| Darlene L. Clark, DMD, P.C. dba Correctional Healthcare Dentists II, P.C. | January 1, 2015 |
| Correctional Healthcare Dentists III, P.C. | January 1, 2015 |
| Joseph E. Hancock, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Lawrence I. Wolk, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Health Professionals, LTD | January 1, 2015 |
| Advanced Counseling Center, LLC | January 1, 2015 |
| Secure Care, Inc. | January 1, 2015 |
| CHC Companies, Inc. fka Correctional Healthcare Companies, Inc | January 1, 2015 |
| Correctional Healthcare Consultants, Inc. | January 1, 2015 |
| Correctional Mental Health Professionals I, P.C. | January 1, 2015 |
| Raymond K. Herr, M.D., A Professional Medical Corporation d/b/a Correctional Healthcare Physicians IV, P.C. | January 1, 2015 |
| League Medical Concepts | August 1, 2013 |
| Correct Care, LLC f/k/a Geo Care Entities | January 1, 2015 |
| Geo Care, LLC and its subsidiaries | December 31, 2012 |
| Geo Care, LLC | December 26, 2012 |
| Geo Care, Inc. | December 31, 2012 |
| Geo Care of South Carolina, LLC | December 31, 2012 |
| Correct Care Holdings, LLC f/k/a GERO Care Holdings, LLC | August 26, 2014 |
| Correct Care of South Carolina, LLC f/k/a GEO Care of South Carolina, LLC | August 26, 2014 |
| Correct Care, LLC f/k/a GEO Care, LLC | August 26, 2014 |
| Just Care, LLC | December 31, 2012 |
| Just Care, Inc. d/b/a Columbia Regional Care Center | December 31, 2012 |
| Florida Civil Commitment Center | December 31, 2012 |
| Montgomery County Mental Health Treatment Facility | December 31, 2012 |
| Palm Beach County Jail | December 31, 2012 |
| South Florida Evaluation and Treatment Center | December 31, 2012 |
| South Florida State Hospital Financing Corporation | December 31, 2012 |
| Treasure Coast Forensic Treatment Center | December 31, 2012 |
| Arapahoe County Detention Facility | November 4, 2013 |
| Justice Services Holding, LLC | January 1, 2015 |

| | |
|---|---|
| Hase and Associates System, Inc. | January 1, 2015 |
| Physicians Network Association, Inc. | January 1, 2015 |
| PNA of New Mexico, Inc. | January 1, 2015 |
| PNA of Arizona, Inc. | January 1, 2015 |
| CAF Enterprises, Inc. | January 1, 2015 |
| CHC Healthcare Inc. | January 1, 2015 |
| Correctional Healthcare Dentists, P.C. | January 1, 2015 |
| Darlene L. Clark, DMD, P.C. dba Correctional Healthcare Dentists II, P.C. | January 1, 2015 |
| Correctional Healthcare Dentists III, P.C. | January 1, 2015 |
| Joseph E. Hancock, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Lawrence I. Wolk, M.D. (A Professional Medical Corporation) | January 1, 2015 |
| Health Professionals, LTD | January 1, 2015 |
| Advanced Counseling Center, LLC | January 1, 2015 |
| Secure Care, Inc. | January 1, 2015 |
| CHC Companies, Inc. fka Correctional Healthcare Companies, Inc | January 1, 2015 |
| Correctional Healthcare Consultants, Inc. | January 1, 2015 |
| Correctional Mental Health Professionals I, P.C. | January 1, 2015 |
| Raymond K. Herr, M.D., A Professional Medical Corporation d/b/a | |
| Correctional Healthcare Physicians IV, P.C. | January 1, 2015 |

All other terms and conditions remain unchanged.

_Gerard albanee jr_
_____
AUTHORIZED REPRESENTATIVE



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART **–** CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART **–** CLAIMS MADE
COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section The Insured is amended by the addition of the following:

   Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. Additional Insured means, whenever used in this endorsement, the following:

   Any organization that the Insured is required to include under the policy as an Additional Insured by a written contract or written agreement in effect during this policy period and executed prior to the occurrence of the Professional Personal Injury.

3. Coverage provided to any Additional Insured as defined herein shall apply solely to an act, error or omission involving the Professional Services covered by this Coverage Part.

4. The person or organization is only an Additional Insured with respect to liability arising out of the Professional Services performed by the Named Insured.

5. No coverage shall be afforded to the above Additional Insured for Professional Personal Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

6. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written  contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

7. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy's terms and conditions. Failure to comply with this provision may, at the Company's option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                    **Page 1 of 2**

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured. It is further agreed that where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other terms and conditions remain unchanged.

**Manuscript-1**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 71 of 105 PageID #: 2862



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT – GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section The Insured is amended by the addition of the following:

   N. Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. Additional Insured means, whenever used in this endorsement, the following:

   Any organization that the Insured is required to include under the policy as an Additional Insured by a written contract or written agreement in effect during this policy period and executed prior to the Occurrence of the Bodily Injury or Property Damage.

3. Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence or offense involving the products, goods, operations or premises covered by this Coverage Part.

4. No coverage shall be afforded to the above Additional Insured for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

5. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

6 Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

7. The person or organization is only an Additional Insured with respect to liability arising out of the Specified Products, Goods, Operations or Premises of the Named Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy's terms and conditions. Failure to comply with this provision may, at the Company's option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                       **Page 1 of 2**

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured.  It is further understood that, where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other terms and conditions remain unchanged.

**Manuscript-1**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 73 of 105 PageID #: 2864



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART **–** CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART **–** CLAIMS MADE
   COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.   Section The Insured is amended by the addition of the following:

     Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.   Additional Insured means, whenever used in this endorsement, the following:

     Board of County Commissioners of Frederick Maryland

     City of Newport News, VA

     Spectrum Health Systems, Inc.
     10 Mechanic Street, Suite 302
     Worcester, MA   01608

     Worcester County Sherriff's Office
     5 Paul X Tivan Drive
     West Boylston, MA   05183

     Columbia County, its officers, agents and employees
     230 Strand, Room 31B
     Saint Helens, OR   97051

     County of McHenry, a body politic
     2200 N. Seminary Avenue
     Woodstoock, IL   60098

3.   Coverage provided to any Additional Insured as defined herein shall apply solely to an act, error or omission involving the Professional Services covered by this Coverage Part.

4.   The person or organization is only an Additional Insured with respect to liability arising out of the Professional Services performed by the Named Insured.

5.   No coverage shall be afforded to the above Additional Insured for Professional Personal Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

6.   In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the

All other terms and conditions remain unchanged.

**Manuscript-1**                                                      **Page 1 of 2**

written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

7. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

8. In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy's terms and conditions. Failure to comply with this provision may, at the Company's option, result in the claim or suit being denied.

9. The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured. It is further agreed that where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                   **Page 2 of 2**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT – GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS) COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Section The Insured is amended by the addition of the following:

    N.  Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.  Additional Insured means, whenever used in this endorsement, the following:

    Board of County Commissioners of Frederick Maryland

    City of Newport News, VA

    Spectrum Health Systems, Inc.
    10 Mechanic Street, Suite 302
    Worcester, MA   01608

    Worchester County Sherriff's Office
    5 Paul X Tivan Drive
    West Boylston, MA   05183

    Columbia County, its officers, agents and employees
    230 Strand, Room 31B
    Saint Helens, OR   97051

    County of McHenry, a body politic
    2200 N. Seminary Avenue
    Woodstoock, IL   60098

    Benton County Jail
    Attention: Josh Shelton, Lieutenant
    7122 W. Okanoga Place, Building B
    Kennewick, WA   99336

3.  Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence or offense involving the products, goods, operations or premises covered by this Coverage Part.

4.  No coverage shall be afforded to the above Additional Insured for Bodily Injury, Property Damage, Personal Injury or Advertising Injury to any Employee or to any obligation of the Additional Insured to indemnify another because Damages arising out of such injury.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                    **Page 1 of 2**

5.  In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provide by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

6.  Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the above Additional Insured.

7.  The person or organization is only an Additional Insured with respect to liability arising out of the Specified Products, Goods, Operations or Premises of the Named Insured.

8.  In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each Additional Insured must give the Company prompt notice of any act, error or omission which may result in a claim, forward all legal papers to the Company, cooperate in the defense of any actions, and otherwise comply with all the policy's terms and conditions. Failure to comply with this provision may, at the Company's option, result in the claim or suit being denied.

9.  The Additional Insured and the Named Insured shall be represented by the same lawyer unless such mutual representation is prohibited by law or bay any applicable professional code of conduct.

10. Where required by contract, this insurance shall be primary and non-contributory insurance over any other insurance afforded to the Additional Insured.  It is further understood that, where required by contract, the Company waives all rights of subrogation against the Additional Insured.

All other terms and conditions remain unchanged.

**Manuscript-1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT FOR LANDLORDS, SPONSORS OR LESSORS - APPLICABLE TO SPECIFIED GENERAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that:

1. Section THE INSURED, solely as pertains to this Coverage Part, is amended by the addition of the following:

   Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2. **Additional Insured**, whenever used in this endorsement, shall mean the following:

   Any landlord, owner, or property manager of the Designated Premises; or any tradeshow or convention sponsor or operator; or any lessor of equipment.

3. **Designated Premises**, whenever used in this endorsement, shall mean the following:

   All premises leased or rented to the Named Insured, premises temporarily occupied by the Named Insured for a tradeshow or convention and/or equipment leased to the Named Insured.

4. Coverage provided to any Additional Insured as defined herein shall apply solely:

   **(a)** For Claims arising out of the Named Insured's occupancy of, or failure to maintain, the Designated Premises, but solely with respect to the Specified Products, Goods or Operations of the Named Insured and only if liability for such Claim is determined to be solely the negligence or responsibility of the Named Insured; and

   **(b)** For Occurrences at, on or upon that portion of the Designated Premises which is occupied by the Named Insured and taking place during the term of the Named Insured's lease/occupancy of such Designated Premises.

All other terms and conditions remain unchanged.

**MESM 1005 08 15**                                                                 **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) — CIVIL MONETARY PENALTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART — CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART — CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

**SUPPLEMENTARY PAYMENTS**

**A.** **HIPAA Civil Monetary Penalty Coverage:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as a Civil Monetary Penalty as a result of a HIPAA Civil Violation first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, arising out of any HIPAA Civil Violation committed or alleged to have been committed by the Insured or by any person for whose actions the Insured is legally responsible provided:

    **1.** such HIPAA Civil Violation:

        **a.** arises out of the conduct of the Insured's Professional Services; and

        **b.** is committed or alleged to have been committed during the Policy Period or on or after the Retroactive Date as stated in the Declarations; and

    **2.** prior to the effective date of this policy the Insured had no knowledge of such HIPAA Civil Violation or any fact, circumstance, situation or incident which may result in a HIPAA Civil Violation.

**Limits of Liability - HIPAA Civil Monetary Penalty**: The total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for each HIPAA Civil Violation first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to Each HIPAA Civil Violation. Subject to the foregoing, the total liability of the Company for the combined total of Civil Monetary Penalties and Legal Expenses for all HIPAA Civil Violations first made during the Policy Period or the Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated below as applicable to All HIPAA Civil Violations.

    **1.** $250,000      Each HIPAA Civil Violation

    **2.** $250,000      All HIPAA Civil Violations

The Insured shall give the Company written notice as stated in the Declarations within ten (10) days of the Insured receiving a notice of HIPAA Civil Violation and in any event such written notice shall be provided prior to the Insured incurring any legal fees or legal expenses related to such matter.

The Company shall have the right and duty to defend and investigate any HIPAA Civil Violation to which coverage under this Coverage Part applies. The Company may make such investigation and settlement of any HIPAA Civil Violation as it deems expedient. Legal Expenses incurred in defending and investigating any HIPAA Civil Violation shall be a part of and shall not be in addition to the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. Such Legal Expenses shall reduce the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 79 of 105 PageID #: 2870

Monetary Penalty Coverage and shall be applied against the Deductible. The Company shall have no obligation to pay any Civil Monetary Penalty or to defend or to continue to defend any HIPAA Civil Violation or to pay Legal Expenses for HIPAA Civil Violations after the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage have been exhausted.

Payments pursuant to this Section shall be in addition to the Limits of Liability stated in the Declarations.

**2.** Section Definitions is amended by the addition of the following:

**Civil Monetary Penalty** means a civil monetary penalty imposed by the Secretary of the United States Department of Health and Human Services, or his or her designee, under 42 U.S.C. §1320d-5 and 45 C.F.R. §160.404.

**Health Insurance Portability and Accountability Act ("HIPAA")** means the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191.

**HIPAA Civil Violation** means a notice received by the Insured for failure to comply with the HIPAA Standards for Privacy of Individually Identified Health Information (Privacy Rule) which protects the privacy of individual health information, including maintaining the confidentiality of information regarding medical services and limiting the release or use of such information in conformance with state or federal law, including any allegation that the Insured was negligent in hiring, training or supervising any Insured person who failed or is alleged to have failed to comply with the Privacy Rule.

**Legal Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any HIPAA Civil Violation for which coverage is afforded under this Coverage Part, including costs of investigation and costs of appeals; provided, however, Legal Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**3.** Section The Exclusions is amended by the addition of the following exclusions:

With respect to Supplementary Payments, HIPAA Civil Monetary Penalty Coverage, such coverage does not apply to any HIPAA Civil Violation:

**1.** based upon, arising out of, or in any way involving:

    **a.** any HIPAA Civil Violation or any claim, fact, circumstance, situation or incident which has or may result in a HIPAA Civil Violation that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

    **b.** any HIPAA Civil Violation, whenever occurring, which is logically or causally connected to another HIPAA Civil Violation by reason of any common fact, circumstance, situation, event or transaction that has been the subject of any notice given prior to the Policy Period under any other policy of insurance; or

**2.** based upon, arising out of, or in any way involving any litigation, demand, investigation, administrative or regulatory proceeding or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to the inception date of this policy, or the same or any substantially similar HIPAA Civil Violation or any fact, circumstance, situation or incident underlying or alleged therein.

**4.** Section Limits of Liability is amended by the addition of the following:

**Multiple Insureds, HIPAA Civil Violations and Protected Health Information Records Released:** The inclusion herein of more than one Insured in any HIPAA Civil Violation shall not operate to increase the Limits of Liability stated in Section Supplementary Payments, HIPAA Civil Monetary Penalty Coverage. More than one HIPAA Civil Violation arising out of a single release of protected health information or a series of related releases of protected health information shall be considered a single HIPAA Civil Violation. All such HIPAA Civil Violations, whenever made, shall be treated as a single HIPAA Civil Violation. Such single HIPAA Civil Violation, whenever made, shall be deemed to be first made on the date on which the earliest HIPAA Civil Violation arising out of such release of protected health information is made.

All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF CANCELLATION

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

In consideration of the premium paid, it is hereby understood and agreed that the second paragraph of Common Policy Conditions A., Cancellation, is deleted and replaced with the following:

This policy may be cancelled by the Company by mailing to the Named Insured, at the address stated in the Declarations written notice stating when, not less than 90 days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or deductible when due, including premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

*All other terms and conditions remain unchanged*

**MESM 2014 10 12**

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF THE INSURED B.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART – CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE
COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the Specified Medical Professions Professional Liability Coverage Part, Section the Insured B. is deleted and replaced as follows:

B.  any principal, partner, officer, director, Employee, Volunteer Worker, or Independent Contractor or any former principal, partner, officer, director, Employee, Volunteer Worker or Independent Contractor of the Named Insured, solely while acting on behalf of the Named Insured and within the scope of his/her duties as such;

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                         **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF THE INSURED G.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the Specified Medical Professions General Liability Insurance Coverage Part, Section the Insured G. is deleted and replaced as follows:

G. any Employee or Independent Contractor of the Named Insured, other than the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company, solely while acting within the scope of his/her duties as such;

provided, however, that coverage afforded to such Employee or Independent Contractor does not apply to:

1. Bodily Injury, Personal Injury or Advertising Injury:

    (i) to the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-Employee or co-Independent Contractor while in the course of his/her employment or performing duties related to the conduct of the Named Insured's business;

    (ii) to the spouse, child, parent, brother or sister of that co-Employee or co-Independent Contractor as a consequence of subparagraph 1.(i) hereinabove;

    (iii) for which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

    (iv) arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged in the business or occupation of providing professional health care services;

2. Property Damage to property:

    (i) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    the Named Insured or any Volunteer Worker, Employee or Independent Contractor of the Named Insured or any partner or member;

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                     **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GOOD SAMARITAN ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. Section DEFINITIONS, Professional Personal Injury, is amended by the addition of the following:

    **4.** An act, error or omission in rendering a Good Samaritan Act.

2. Section DEFINITIONS is amended by the addition of the following:

    **Good Samaritan Act** means emergency health care, emergency medical care, or emergency treatment provided to a patient without compensation or expectation of compensation at the scene of any emergency.

All other terms and conditions remain unchanged.

**MESM 2098 04 14**                                                                                       **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NOTICE OF CLAIM ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
   OPERTIONS) COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that Specified Medical Professions Professional Liability Coverage Part, Section INSURING AGREEMENT, is amended to include the following:

A Claim or Suit shall be considered to be first made against the Insured at the earlier of the following:

1.  When notice of Claim or suit is received by General Counsel or the Risk Management or Legal Department of the Insured; or,

2.  When the General Counsel or the Risk Management or Legal Department of the Insured knew about or should reasonably have known a circumstance was likely to result in a Claim or suit; or,

3.  When a Claim or suit is reported in writing directly to the Company or one of its agents.

It is further understood and agreed that Specified Medical Professions General Liability Insurance Coverage Part, Section Insuring Agreements is amended to include the following:

A Claim or Suit shall be considered to be first made against the Insured at the earlier of the following:

1.  When notice of Claim or suit is received by General Counsel or the Risk Management or Legal Department of the Insured; or,

2.  When the General Counsel or the Risk Management or Legal Department of the Insured knew about or should reasonably have known a circumstance was likely to result in a Claim or suit; or,

3.  When a Claim or suit is reported in writing directly to the Company or one of its agents.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                    **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTILIZATION, QUALITY ASSURANCE, ACCREDITATION COMMITTEE AND PEER REVIEW ACTITIVIES ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

> The coverage afforded by this Coverage Part extends to Claims made against an Insured arising out an act, error or omission in services rendered as a member of a formal accreditation or similar professional board or committee, utilization review committee, quality assurance committee, peer review committee, or standards review board or committee of which he/she is a member.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                  **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS MANAGEMENT EMERGENCY RESPONSE
## EXPENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

**Crisis Management Emergency Response Expense Reimbursement Limit:** **$25,000**

**2.** Section SUPPLEMENTARY PAYMENTS, Crisis Management Emergency Response Expense Reimbursement, is added as follows:

**SUPPLEMENTARY PAYMENTS**

**Crisis Management Emergency Response Expense Reimbursement:** In the event that:

    **a.** during the Policy Period, the Named Insured incurs Crisis Management Emergency Response Expenses with the prior written approval of the Company; and

    **b.** during the Policy Period or within six (6) months following the date the Crisis was initiated, the Named Insured submits a request for reimbursement of such Crisis Management Emergency Response Expenses by providing an itemized accounting of such Crisis Management Emergency Response Expenses, which is submitted in writing to the Company by completion of the Company's Crisis Management Emergency Response Expense Reimbursement Form which must be submitted to the Company addressed to Medical Professional Team, Markel Service Incorporated, 10 Parkway North, Deerfield, IL 60015 (Fax: (847) 572-6377);

the Company will reimburse the Named Insured for such Crisis Management Emergency Response Expenses up to the Crisis Management Emergency Response Expense Reimbursement Limit set forth in Item 1. of this endorsement.

Reimbursement to the Named Insured pursuant to this provision shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to the Deductible.

**3.** Section DEFINITIONS is amended by the addition of the following:

**Crisis** means the public announcement that an Incident occurred on the Named Insured's premises or at an event sponsored by the Named Insured.

**Crisis Management Emergency Response Expenses** mean those expense incurred by the Named Insured for services provided by a Crisis Management Firm. However, Crisis Management Emergency Response Expenses shall not include:

    **1.** Compensation, fees, benefits, overhead, charges or expense of any person or organization included in the definition of Insured;

    **2.** Any expenses that are payable on the Named Insured's behalf or reimbursable to the Named Insured under any other insurance, whether collectible or not;

**MESM 2093 01 14**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 87 of 105 PageID #: 2878

**3.** Claim adjustment costs incurred by the Named Insured, such as fees incurred by retaining a public adjuster or appraiser.

**Crisis Management Firm** means any service provider requested by the Named Insured and approved by the Company to provide Crisis management emergency response services. The Company's approval shall not be unreasonably withheld.

**Incident** means an accident or other event, including the accidental discharge of pollutants, resulting in death or Serious Bodily Injury to three (3) or more persons.

**Serious Bodily Injury** means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

All other terms and conditions remain unchanged.

**MESM 2093 01 14**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 88 of 105 PageID #: 2879



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## RISK MANAGEMENT SERVICES
## EXPENSE REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

**1.** The policy is amended by the addition of the following:

> **Risk Management Services Expense Reimbursement Limit:  $**40,000

**2.** Section SUPPLEMENTARY PAYMENTS, Risk Management Services Expense Reimbursement, is added as follows:

> **SUPPLEMENTARY PAYMENTS**
>
> **Risk Management Services Expense Reimbursement:  In the event that:**
>
> **a.** During the Policy Period, the Named Insured incurs Risk Management Services Expense with the prior written approval of the Company; and
>
> **b.** During the Policy Period or within six (6) months following the expiration or earlier cancellation or termination of this policy, the Named Insured submits a request for reimbursement of such Risk Management Services Expense by providing an itemized accounting of such Risk Management Services Expense, which is submitted in writing to the Company by completion of the Company's Risk Management Service Expense Reimbursement Form which must be submitted to the Company addressed to Medical Professional Team, Markel Service Incorporated, 10 Parkway North, Deerfield, IL 60015 (Fax: (847) 572-6377);
>
> The Company will reimburse the Named Insured for such Risk Management Services Expense up to the Risk Management Services Expense Reimbursement Limit set forth in Item 1. of this endorsement.
>
> Reimbursement to the Named Insured pursuant to this provision shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to the Deductible.

**3.** Section DEFINITIONS is amended by the addition of the following:

> **Risk Management Services Expense** means expense incurred with the prior written approval of the Company for risk management seminars, publications, risk management training, onsite risk consulting and training, risk management audit services or other risk management related services provided by a Risk Management Services Firm and related to the risks of professional and/or general liability, data privacy and security. However, Risk Management Services Expense shall not include:
>
> **1.** Compensation, fees, benefits, overhead, charges or expense of any person or organization included in the definition of Insured;
>
> **2.** Any expenses that are payable on the Named Insured's behalf or reimbursable to the Named Insured under any other insurance, whether collectible or not;
>
> **3.** Any amounts related to any existing or anticipated claim or suit, including but not limited to legal fees, fees of a public adjuster or appraiser, court costs, and expert witness fees;
>
> **4.** Meal and beverages expenses, and travel expenses including but not limited to airfare, transportation, and lodging.
>
> **Risk Management Services Firm** means any service provider requested by the Named Insured and approved by the Company to provide risk management services. The Company's approval shall not be unreasonably withheld.

All other terms and conditions remain unchanged.

Case 3:21-cv-00675     Document 56-7     Filed 01/31/22     Page 89 of 105 PageID #: 2880



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AGGREGATE POLICY LIMIT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
    COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
    OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.  Item 5. of the Declarations, Limits of Liability, is amended by the addition of the following:

    D.  Policy Aggregate:  $15,000,000

2.  The Specified Medical Professions Professional Liability Insurance Coverage Part is amended as follows:

    Section Limits of Liability is amended by the addition of the following:

    Limit of Liability - Policy Aggregate:  Notwithstanding the Limits of Liability applicable to this Coverage Part and any
    other purchased Coverage Part(s), the total liability of the Company under this policy for Damages shall not exceed
    the Policy Aggregate Limit of Liability as stated in Item 5.C. of the Declarations.

3.  The Specified Medical Professions General Liability Insurance Coverage Part is amended as follows:

    Section Limits of Liability is amended by the addition of the following:

    Limit of Liability - Policy Aggregate:  Notwithstanding the Limits of Liability applicable to this Coverage Part and any
    other purchased Coverage Part(s), the total liability of the Company under this policy for Damages shall not exceed
    the Policy Aggregate Limit of Liability as stated in Item 5.C. of the Declarations.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                          **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS:  CLAIM EXPENSES AND DAMAGES

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1: Section DEFINITIONS C., Claim Expenses, is deleted and replaced with the following:

C.  Claim Expenses means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:

1.  Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

2.  Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Claim Expenses also includes those attorney's fees as provided under the Prisoner Litigation Reform Act.

2. Section DEFINITIONS D., Damages, is deleted and replaced with the following:

D.  Damages means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:

1.  Multiplied portions of damages in excess of actual damages, including trebling of damages;

2.  Taxes, criminal or civil fines, or other penalties imposed by law;

3.  Sanctions;

4.  Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

5.  The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured; or

6.  The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                                        **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WISCONSIN RESTRICTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

LOCUM TENENS AND CONTRACT STAFFING PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
PHYSICIANS, SURGEONS, DENTISTS AND PODIATRISTS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY COVERAGE PART

In consideration of the premium paid, it is hereby understood and agreed that no coverage is provided for individual physicians or Certified Registered Nurse Anesthetists:

1. For whom the State of Wisconsin is his/her principal place of practice and who works more than 240 hours during the annual period July 1 through June 30 in the State of Wisconsin;

2. **a.** For whom the State of Wisconsin is his/her state of residence;

   **b.** For whom the State of Michigan is his/her principal place of practice;

   **c.** Who works more than 240 hours during the annual period of July 1 through June 30 in the State of Wisconsin, the State of Michigan or both states combined; and

   **d.** Performs more procedures in a hospital located in the State of Michigan that is an affiliate of a corporation organized under the laws of the State of Wisconsin and with its principal office and at least one hospital in the State of Wisconsin, than in any other hospital; or

3. For whom the State of Wisconsin is: (1) not his/her principal place of practice; or (2) for whom the State of Wisconsin is his/her principal place of practice and who works 240 or fewer hours during the annual period of July 1 through June 30 in the State of Wisconsin; and who elects to participate in the Wisconsin Health Care Liability and Injured Patients and Families Compensation Fund.

All other terms and conditions remain unchanged.

**MEIL 1235 04 14**                                                                   **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PATIENT COMPENSATION FUND RESTRICTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this coverage part shall not apply to any Claim because of Professional Personal Injury made against any insured who is a participant in the Patient Compensation Fund in the states of Indiana or Louisiana or in the Commonwealth of Pennsylvania.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                 **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITION OF CONTRACTS ENDORSMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium, paid, it is hereby understood and agreed:

In the event that a Named Insured enters into one or more new contracts during the policy period which require that the Named Insured provide Professional Services to a total additional inmate population in excess of 20,000 Average Daily Population, the Named Insured will provide the Company notice of such contract(s) and provide the Company with information needed to underwrite the additional risk associated with the contract(s). The Company reserves the right to charge additional premium on a pro rata basis for the additional risk associated with any such contract(s).

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                    **Page 1 of 1**




# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS LIABILITY SELF INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART

In consideration of the premium paid, it is hereby agreed that in the event that a Claim is made and coverage is afforded under this policy and any of the Designated Policies on the schedule below or any policy issued as a renewal or replacement thereof, the Named Insured's total retention under all applicable policies shall not exceed $500,000.

DESIGNATED POLICY

| Carrier | Policy Number |
|---|---|
| Evanston Insurance Company | SM910743 |

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                              **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF EXCLUSION K.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
    COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that Section The Exclusions K. is deleted and replaced with the following:

**K.** Any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft; provided, however, this exclusion shall not apply to any Claim arising out of the loading or unloading of any natural person receiving Professional Services;

All other terms and conditions remain unchanged.

**MESM 3007 10 12**                                                                                                                              **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SELF-INSURED RETENTION ENDORSEMENT – SPECIFIC CONTRACT

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
 COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
 OPERATIONS LIABILITY) COVERAGE PART **–** OCCURRENCE COVERAGE


In consideration of the premium paid, it is hereby understood and agreed that the policy is amended but only with respects
to the Valusia County Contract as follows:

1.  Item 5. of the Declarations, Coverage Part Deductible, is deleted and replaced as follows:

     5. SELF-INSURED RETENTION:
         A. For Professional Liability:
            Each Claim: $25,000

         C. For General Liability:
            1. For Coverage A (Bodily Injury and Property Damage Liability):
                Each Occurrence: $25,000
            2. For Coverage B (Personal Injury and Advertising Injury Liability):
                Each Person or Organization: $25,000

2.  Whenever used in the Specified Medical Professions Professional Liability Insurance Coverage Part and the Specified
    Medical Professions General Liability Insurance Coverage Part, the word "Deductible" is deleted and replaced with
    "Self-Insured Retention".

3.  Specified Medical Professions Professional Liability Insurance Conversation Part, Section Limits of Liability D.,
    Deductible, is deleted and replaced with the following:

     D. Self-Insured Retention:  The Self-Insured Retention amount stated in the Declarations shall be paid by the Named
    Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not
    Damages payments are made.

        Such amounts shall, upon written demand by the Company, be paid by the Named Insured, CCS Intermediate
    Holdings, LLC (the "Named Insured") within ten (10) days. The total payments requested from the Named Insured
    in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

        The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the
    Insured.

        At its sole discretion, the Company reserves the right to independently audit the Insured's claim files and records
    for any Claim that is within the Self-Insured Retention.

        Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses,
All other terms and conditions remain unchanged.

**Manuscript-1**      **Page 1 of 5**

which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured's right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured's inability to pay shall not relieve the Insured of its obligations hereunder.

4. Specified Medical Professions Professional Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

Defense, Investigation and Settlement of Claims:   It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, its own expense to defend, investigate and settle any Claim against any Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company's opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. providing any other reasonable information requested;

   c. providing fully itemized billing on a periodic basis; and

   d. cooperating with the Company and the Insured in resolving any and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

   Upon exhaustion of the Self-Insured Retention, the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

5. Specified Medical Professions Professional Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

   A. Claim Reporting Provision: It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give to the Company written notice as stated in the Notices item of the Declarations as soon as

All other terms and conditions remain unchanged.

practicable of any Claim:

1. in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

2. which the Insured's estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

3. which involves:

   a. Death;

   b. Brain or spinal injury;

   c. Amputation;

   d. Loss of use of arm, leg, sight or hearing;

   e. Severe burns;

   f. Serious loss of use of any bodily function

   g. Paralysis;

   h. Reflex Sympathy Dystrophy;

   j. Complex Regional Pain Syndrome;

   k. Multiple factures, multiple areas;

   l. Sexual molestation; or

   m. Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the Self-Insured Retention. Quarterly bordereaux reports containing the Claimant's name, the date of loss and information on the nature of the injury or allegations shall constitute Notice of Claim.

6. Specified Medical Professions General Liability Insurance Coverage Part, Section Limits of Liability F., Deductible, is deleted and replaced with the following:

   F. Self-Insured Retention: The Self-Insured Retention amount stated in the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

   Such amounts shall, upon written demand by the Company, be paid by Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Self-Insured Retention amount stated in the Declarations.

   The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Insured.

   At its sole discretion, the Company reserves the right to independently audit the Insured's claim files and records

All other terms and conditions remain unchanged.

for any Claim that is within the Self-Insured Retention.

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured's right to the protection afforded by this policy. Bankruptcy or insolvency of the Insured or of the Insured's estate or the Insured's inability to pay shall not relieve the Insured of its obligations hereunder.

7. Specified Medical Professions General Liability Insurance Coverage Part, Section Defense, Settlements and Claim Expenses is deleted and replaced with the following:

A. Defense, Investigation and Settlement of Claims:   It shall be the duty of the Named Insured, CCS Intermediate Holdings, LLC, at its own expense to defend, investigate and settle any Claim against an Insured seeking Damages to which this insurance applies which is within the Self-Insured Retention.

Notwithstanding the above, the Company shall have the option, but not the duty to associate with the Named Insured in the defense, investigation and settlement of any Claim arising out of a Malpractice, Professional Healthcare Services or Professional Personal Injury to which this Coverage Part applies which in the Company's opinion is likely to exceed the Self-Insured Retention. With respect to such Claim, which is subject in whole or in part to the Self-Insured Retention, the Company may at its option pay part of or all of the Self-Insured Retention including Damages and Claim Expenses on behalf of and for the account of the Insured to effect settlement of such Claim. Such amounts so paid by the Company shall be immediately reimbursed by the Named Insured. The determination by the Company as to the reasonableness of such Damages and Claims Expenses shall be conclusive on the Insured.

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in the Declarations have been exhausted by payment(s) of Damages.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a. providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b. providing any other reasonable information requested;

   c. providing fully itemized billing on a periodic basis; and

   d. cooperating with the Company and the Insured in resolving any discrepancies;

   and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as stated above, shall be included in Claim Expenses. Such Claim Expenses shall be in addition to the applicable Limits of Liability stated in the Declarations. Such Claim Expenses shall not reduce the Limits of Liability and shall be applied against the Self-Insured Retention.

   Upon exhaustion of the Self-Insured Retention the Named Insured will transfer all Claim related files and take all reasonable steps to transfer defense of such Claim to the Company.

All other terms and conditions remain unchanged.

8. Specified Medical Professions General Liability Insurance Coverage Part, Section Claims A., Claim Reporting Provision, is deleted and replaced with the following:

A. Claim Reporting Provision: It is a condition precedent to coverage afforded by this Coverage Part that the Named Insured shall give the Company written notice as stated in the Notices item of the Declarations as soon as practicable of any Claim:

1. in excess of the Self-Insured Retention first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised;

2. which the Insured's estimated amount of Damages and/or Claim Expense is or can reasonably be expected to be fifty percent (50%) or more of the amount of the Self-Insured Retention; or

3. which involves:

   a. Death;

   b. Brain or spinal injury;

   c. Amputation;

   d. Loss of use of arm, leg, sight or hearing;

   e. Severe burns;

   f. Serious loss of use of any bodily function

   g. Paralysis;

   h. Reflex Sympathy Dystrophy;

   j. Complex Regional Pain Syndrome;

   k. Multiple factures, multiple areas;

   l. Sexual molestation; or

   m. Potential class action

In the event suit is brought against the Insured, the Named Insured shall immediately forward to Markel Service, Incorporated, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Named Insured shall provide to Company a quarterly bordereaux of Claims, losses or incidents that might reasonably be expected to give rise to a Claim or loss within the self-insured retention. Quarterly bordereaux reports containing the Claimant's name, the date of loss and information on the nature of  the injury or allegations shall constitute Notice of Claim.
discrepancies;

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                   **Page 5 of 5**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PESTICIDE OR HERBICIDE APPLICATOR COVERAGE
## GENERAL LIABILITY COVERAGE ONLY

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
OPERATIONS LIABILITY) COVERAGE PART **–** OCCURRENCE COVERAGE

In consideration of the premium charged, it is hereby agreed that, solely with respect to the following operations:

Application of herbicides and pesticides to the greenhouse located at the Columbia Regional Medical Center by the
Manager of the Horticulture Program.

The Exclusions A.1. shall not apply to exclude coverage under the General Liability Insuring Agreement of this Policy if
the operations listed meet all of the standards of any stature, ordinance, regulation or license requirement of any federal,
state or local government or regulatory authority which applies to such operations.

The most the Insurer shall pay for all Loss and Defense Expenses from Claims for which coverage is provided under the
General Liability Insuring Agreement of this Policy and arising out of the listed operations above is $50,000 per Claim and
$100,000 in the aggregate for all Claims.

All other terms and conditions remain unchanged.

**Manuscript-1**

Case 3:21-cv-00675    Document 56-7    Filed 01/31/22    Page 102 of 105 PageID #: 2893



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL NOTICE OF CANCELLATION

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE
    COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED
    OPERATIONS LIABILITY) INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

In consideration of the premium paid, it is hereby understood and agreed that the policy will not be cancelled until 30 days written notice has been given by the party effecting such cancellation to the other party and to:

Montgomery County, Texas
Alan B Sadler Commissioners' Court Building
Purchasing Department
501 N Thompson, Suite 401
Conroe, TX   77301

Provided, however, that if such cancellation is due to non-payment of premium and/or deductible, ten (10) days written notice will be given.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                              **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## REPLACEMENT POLICY LIBERALIZATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS
SPECIFIED MEDICAL PROFESSIONS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART - CLAIMS MADE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART - OCCURRENCE COVERAGE

R.  REPLACEMENT POLICY LIBERALIZATION PROVISION

It is agreed that this Policy (together with all endorsements attached hereto, the "Replacement Policy") has been issued as a replacement to CCS Intermediate Holdings, LLC by the Evanston Insurance Company under the policy number SM904110 (such policy together will all endorsements attached thereto, the "Expiring Policy"). With respect to any Claim first made during the Policy Period of the Replacement Policy and reported to the Insurer pursuant to the terms of the relevant Coverage Section, the terms and conditions of either the Replacement Policy (in its entirety) or the Expiring Policy (in its entirety) that are more favorable to the Insured shall govern; provided that in all events, the retention amounts and limits of liability of the Replacement Policy will apply to all such Claims.

It is further agreed that the Replacement Policy will apply to any Claim based upon, arising out of, or in any way involving any:  1) Certified Acts of Terrorism; or, 2) Unmanned Aircraft.

All other terms and conditions remain unchanged.

**Manuscript-1**                                                                                                    **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS G.1.

This endorsement modifies insurance provided under the following:

SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY INSURANCE COVERAGE PART – CLAIMS MADE

In consideration of the premium paid, it is hereby understood and agreed that Section Definitions G.1. is deleted and replaced with the following:

1. Multiplied portions of damages in excess of actual damages, including trebling of damages;

All other terms and conditions remain unchanged.

**MESM 2094 08 15**                                                                                                   **Page 1 of 1**